# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRICKMAN INVESTMENTS, INC., *Individually and on Behalf of all others similarly situated,* | **CASE #: 1:07-cv-11086-DAB** |
| Plaintiff, | |
| vs. | |
| SECURITY CAPITAL ASSURANCE LTD, PAUL S. GIORDANO, DAVID SHEA, GOLDMAN, SACHS & CO, J.P. MORGAN SECURITIES INC., MERRILL, LYNCH, PIERCE, FENNER & SMITH INC., and XL INSURANCE LTD., | |
| Defendants. | |
| 2 WEST, INC., *On Behalf of Itself and all others similarly situated,* | **CASE #: 1:07-cv-11358-DAB** |
| Plaintiff, | |
| vs. | |
| SECURITY CAPITAL ASSURANCE LTD, XL INSURANCE, LTD, PAUL S. GIORDANO, and DAVID P. SHEA, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF RHODE ISLAND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL

ROBERT CLARKE, *Individually and on Behalf of all others similarly situated,*

                              Plaintiff,

              vs.

SECURITY CAPITAL ASSURANCE LTD, PAUL S. GIORDANO, DAVID P. SHEA, XL INSURANCE, LTD., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., GOLDMAN, SACHS & CO., and J.P. MORGAN SECURITIES INC.,

                              Defendants.

**CASE #: 1:08-cv-00158-UA**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................2

ARGUMENT....................................................................................................................4

I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED .......................................4

      A.    The Court Should Resolve The Consolidation Issue As A
            Prerequisite To The Determination Of Lead Plaintiff ............................................4

II.   THE COURT SHOULD APPOINT RHODE ISLAND
      AS LEAD PLAINTIFF........................................................................................................5

      A.    The Procedure Required By The PSLRA ...............................................................5

            1.    Rhode Island Is Willing To Serve As Class Representative.......................7

            2.    Rhode Island Is The Most Adequate Lead Plaintiff....................................7

                  a.    Rhode Island Is An Institutional Investor With The
                        Largest Financial Interest In The Relief Sought
                        By The Class................................................................................7

                  b.    Rhode Island Meets The Requirements Of
                        F.R.C.P. Rule 23. ........................................................................10

III.  THE COURT SHOULD APPROVE RHODE
      ISLAND'S CHOICE OF COUNSEL............................................................................12

CONCLUSION....................................................................................................................12

## TABLE OF AUTHORITIES

**CASES**

*Bowman v. Legato Sys.*,
    195 F.R.D. 655 (N.D. Cal. 2000)......................................................................9

*Gen. Tel. Co. v. Falcon*,
    457 U.S. 147 (1982), *aff'd*,
    815 F.2d 317 (5th Cir. 1987) ........................................................................11

*Gluck v. CellStar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) .............................................................9, 10

*Greebel v. FTP Software, Inc.*,
    939 F. Supp. 57 (D. Mass. 1996) ...................................................................9

*In re Baan Co. Sec. Litig.*,
    186 F.R.D. 214 (D.D.C. 1999).......................................................................9

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001), *aff'd*,
    404 F.3d 173 (3d Cir. 2005)...........................................................................8

*In re Donnkenny Inc. Sec. Litig.*,
    171 F.R.D. 156 (S.D.N.Y. 1997) .................................................................12

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992)..........................................................................12

*In re NASDAQ Market-Makers Antitrust Litig.*,
    172 F.R.D. 119 (S.D.N.Y. 1997) .............................................................11, 12

*In re Network Assocs. Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...........................................................9

*In re Oxford Health Plans, Inc., Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ...................................................................11

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001)..........................................................2, 9

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990)..........................................................................5

*Mitchell v. Complete Mgmt., Inc., Sec. Litig.*,
   No. 99-CV-1454, 1999 WL 728678 (S.D.N.Y. Sept. 17, 1999) ............................4

*Primavera Familienstiftung v. Askin*,
   173 F.R.D. 115 (S.D.N.Y. 1997) ...............................................................5

*Ravens v. Iftikar*,
   174 F.R.D. 651 (N.D. Cal. 1997).................................................................9

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993).....................................................................11

*Schulman v. Lumenis, Ltd.*,
   No. 02 Civ. 1989 (DAB), 2003 WL 21415287 (S.D.N.Y. June 18, 2003)..........8, 10

*Smith v. Suprema Specialties, Inc.*,
   206 F. Supp. 2d 627 (D.N.J. 2002) ..............................................................2

*Vladimir v. Bioenvision, Inc.*,
   No. 07 Civ. 6416 (SHS) (AJP), 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) ........8

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003) ...............................................................10

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ...............................................................10

## STATUTES

15 U.S.C. § 77z-1(a)(3)(A)(i)(II)................................................................7

15 U.S.C. § 77z-1(a)(3)(B) ......................................................................1

15 U.S.C. § 77z-1(a)(3)(B)(i) ...................................................................8

15 U.S.C. § 77z-1(a)(3)(B)(ii) ..............................................................4, 5, 6

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) ..............................................................6

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa)..........................................................7

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).............................................................6

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).......................................................12

15 U.S.C. § 78u-4(a)(1) ...................................................................................5

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ......................................................................7

15 U.S.C. § 78u-4(a)(3)(B) ...............................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(i) ...........................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(ii) ...................................................................4, 5, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ....................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) .............................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ...................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ...........................................................12

Fed. R. Civ. P. 42(a) .........................................................................................4

H.R. Conf. Rep. No. 104-369 (1995), reprinted in
1995 U.S.C.C.A.N. 730 .....................................................................................8

S. Rep. No. 104-98 (1995), reprinted in
1995 U.S.C.C.A.N. 679 ....................................................................................10

Elliot J. Weiss & John S. Beckerman,
*Let The Money Do The Monitoring: How Institutional Investors Can Reduce
Costs In Securities Class Actions*, 104 Yale L.J. 2053 (1995) ......................10

## PRELIMINARY STATEMENT

Presently pending before the Court are three securities class action lawsuits (the "Actions") brought on behalf of all persons or entities (the "Class") who purchased or otherwise acquired the securities of Security Capital Assurance, Ltd. ("Security Capital" or the "Company") between April 23, 2007 and December 10, 2007 (the "Class Period"), including those who purchased the common stock of Security Capital pursuant and/or traceable to the Company's secondary public offering ("SPO") on June 6, 2007.  Plaintiffs in the Actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated under Section 10(b), and Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), against Defendants Security Capital, Paul S. Giordano, David Shea, Goldman, Sachs & Co., J.P. Morgan Securities, Inc., Merrill, Lynch, Pierce, Fenner & Smith Inc., and XL Insurance Ltd.

Employees' Retirement System of the State of Rhode Island ("Rhode Island") lost over $4.2 million as a result of Defendants' alleged fraud in connection with its purchases of Security Capital securities during the Class Period, including purchases on the SPO.  Rhode Island respectfully submits this memorandum of law in support of its motion:  (a) to consolidate the above-captioned actions; (b) for its appointment as lead plaintiff, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B) and 15 U.S.C. § 77z-1(a)(3)(B); and (c) for approval of its selection of Bernstein Liebhard & Lifshitz, LLP ("Bernstein Liebhard") as lead counsel.

Rhode Island believes that it has the largest financial interest in the outcome of the case. As such, Rhode Island meets the requirements of the PSLRA for appointment as lead plaintiff. Moreover, Rhode Island satisfies the requirements of Rule 23 of the Federal Rules of Civil

Procedure in that its claims are typical of the claims of the Class, and it will fairly and adequately represent the interests of the Class.

Rhode Island is precisely the type of institutional investor envisioned by Congress to serve as lead plaintiffs when it enacted the PSLRA. The PSLRA provides for the Court to appoint as lead plaintiff the movant that has both the largest financial interest in the litigation and has made a *prima facie* showing that they are adequate class representatives under Rule 23 of the Federal Rules of Civil Procedure. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 632 (D.N.J. 2002) (holding that the movant has the burden to show that it has a significant financial interest and that it is adequate). Rhode Island is an institutional investor that satisfies both of these requirements.

## STATEMENT OF FACTS

Security Capital is a Bermuda-domiciled holding company whose operating subsidiaries provide credit enhancement and protection products to the public finance and structured finance markets throughout the United States and internationally. Plaintiffs allege that the Company failed to disclose and misrepresented the following material adverse facts which were known to Defendants or recklessly disregarded by them: (1) that the Company failed to fully disclose the extent of its exposure to collateralized debt obligations ("CDOs") and other residential mortgage-backed securities ("RMBS"); (2) that the Company failed to adequately reserve for losses as conditions in the housing and credit markets deteriorated; and (3) that the Company improperly valued its credit default swaps.

2

On or about May 25, 2007, Security Capital filed a Form S-1/A Registration Statement (the "Registration Statement") with the Securities and Exchange Commission ("SEC") for the Secondary Offering. On or about June 6, 2007, the Prospectus (the "Prospectus") with respect to the Secondary Offering, which forms part of the Registration Statement, became effective and more than 9.6 million shares of Security Capital common stock were sold to the public at $31.00 per share, thereby raising more than $300 million.

On July 23, 2007, Security Capital reported its second quarter 2007 financial and operational results. For the quarter, the Company reported net income of $25.9 million, or $0.40 per share, compared to $36.4 million, or $0.79 per share, reported in the second quarter of 2006. The quarterly decline in net income was principally due to a decline in refunding activity, and a significant increase in losses on derivative instruments. On this news, the Company's shares declined $4.38 per share, or 15.19%, to close on July 24, 2007 at $24.26 per share, on unusually heavy trading volume.

On October 25, 2007, the Company reported its third quarter 2007 financial and operational results. For the quarter, the Company reported a net loss of $89.9 million, or $1.40 per share, compared to net income of $28.4 million, or $0.49 per share, reported in the third quarter of 2006. This quarterly loss was due to a $143 million mark-to-market loss. On this news, the Company's shares declined an additional $1.20 per share, or 8.3%, to close on October 25, 2007 at $13.25 per share, on heavy trading volume.

Then on December 11, 2007, *Fortune* published an article suggesting that Security Capital may be facing ratings downgrades. On this news, the Company's shares declined an

3

additional $1.23 per share, or 15%, to close on December 11, 2007 at $6.97 per share, on

unusually heavy trading volume.  The following day, Fitch Ratings put Security Capital on

ratings watch "negative," which caused the Company's shares to decline an additional $1.52 per

share, or 21.8%, to close on December 12, 2007 at $5.45 per share.  Finally, on December 13,

2007, the Company issued a press release responding to the Fitch Ratings report in an attempt to

reassure investors of its solvency.  On this news, the Company's shares declined an additional

$1.22 per share, or 22.4%, to close on December 13, 2007 at $4.23 per share, on unusually heavy

trading volume.

## ARGUMENT

### I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting

substantially the same claim or claims arising under this [sub-]chapter has been filed," the Court

shall not make the determination of the most adequate plaintiff until "after the decision on the

motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii) and 15 U.S.C. § 77z-

1(a)(3)(B)(ii).  Thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff

for the consolidated actions."  *Id.*

### A.    The Court Should Resolve The Consolidation Issue As A Prerequisite To The Determination Of Lead Plaintiff

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate

when the actions involve common questions of law or fact.  *See* Fed. R. Civ. P. 42(a).

Consolidation is particularly appropriate in securities class action litigation.  *See Mitchell v.*

*Complete Mgmt., Inc., Sec. Litig.*, No. 99 Civ. 1454 (DAB), 1999 WL 728678, at *1 (S.D.N.Y.

Sept. 17, 1999) ("In securities actions where the complaints are based on the same 'public

statements and reports,' consolidation is appropriate if there are common questions of law and fact . . . ") (citation omitted); *see also Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997).

The complaints filed in the Actions are substantially similar and arise from the same set of facts and conduct. As a result, the Court should consolidate the aforementioned cases, and any others filed subsequent to this motion. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990).

Once the Court decides the consolidation motion, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." Section 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii) and Section 27(a)(3)(B)(ii), 15 U.S.C. § 77z-1(a)(3)(B)(ii). As Rhode Island has an interest in moving the Actions forward, it respectfully urges the Court to resolve the consolidation motion as soon as practicable. A prompt determination is reasonable and warranted under Rule 42(a), especially given the common questions of law and fact presented by the related actions now pending in this district.

## II.    THE COURT SHOULD APPOINT RHODE ISLAND AS LEAD PLAINTIFF

### A.    The Procedure Required By The PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act and Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 21D(a)(1) and (a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B) and Section 27(a)(3)(B)(ii), 15 U.S.C. §§ 77z-1(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. Section 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii) and Section 27(a)(3)(B)(ii), 15 U.S.C. § 77z-1(a)(3)(B)(ii). The PSLRA requires the court to consider within 90 days all motions that were filed within 60 days after publication of that notice made by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. Sections 21D(a)(3)(A)(i)(II) and (a)(3)(B)(i), 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i) and Sections 27(a)(3)(A)(i)(II) and (a)(3)(B)(i), 15 U.S.C. §§ 77z-1(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> i) has either filed the complaint or made a motion in response to a notice;
> ii) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> iii) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and Section 27(a)(3)(B)(iii)(I), 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Section 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) and Section 27(a)(3)(B)(iii)(II), 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

As set forth below, Rhode Island satisfies the foregoing criteria and it is not aware of any unique defenses that Defendants could raise against it. Therefore, Rhode Island is entitled to the

presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Actions.

1.    <strong><u>Rhode Island Is Willing To Serve As Class Representative</u></strong>

On December 7, 2007, counsel caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A)(i) and Section 27(a)(3)(A)(i), which announced that a securities class action had been filed against, among others, Security Capital, and which advised putative class members that they had until February 5, 2008 to file a motion to seek appointment as a lead plaintiff in the action.[1]  Rhode Island has reviewed one of the complaints filed in the Actions and has timely filed its motion pursuant to the Notice.  In doing so, Rhode Island has attached its certification attesting to its willingness to serve as representative of the Class and provide testimony at deposition and trial, if necessary.  *See* Seidman Decl. at Ex. 1.  Accordingly, Rhode Island satisfies the first requirement to serve as lead plaintiff for the Class.  Section 21D(a)(3)(B)(iii)(I)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) and Section 27(a)(3)(B)(iii)(I)(aa), 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa).

2.    <strong><u>Rhode Island Is The Most Adequate Lead Plaintiff</u></strong>

a.    <strong><u>Rhode Island Is An Institutional Investor With The<br>Largest Financial Interest In The Relief Sought By The Class</u></strong>

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of notice that the action has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) and 15 U.S.C. § 77z-1(a)(3)(A)(i)(II).  Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court

---

[1]  The first action against Security Capital was filed on December 7, 2007.  On that date, the Notice was published over *Business Wire*.  *See* Seidman Decl. Ex. 3.

7

determines to be most capable of adequately representing the interests of class members . . . ." 15

U.S.C. § 78u-4(a)(3)(B)(i) and 15 U.S.C. § 77z-1(a)(3)(B)(i).

The legislative history of the PSLRA demonstrates that it was intended to encourage

institutional investors, such as Rhode Island, to serve as lead plaintiff.  The explanatory report

accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that
> institutional investors will serve as lead plaintiffs by requiring courts to
> presume that the member of the purported class with the largest financial
> stake in the relief sought is the "most adequate plaintiff."
>
> * * *
>
> The Conference Committee believes that . . . in many cases the
> beneficiaries of pension funds -- small investors -- ultimately have the
> greatest stake in the outcome of the lawsuit.  Cumulatively, these small
> investors represent a single large investor interest.  Institutional investors
> and other class members with large amounts at stake will represent the
> interests of the plaintiff class more effectively than class members with
> small amounts at stake.

H.R. CONF. REP. NO. 104-369, at 34 (1995), reprinted in, 1995 U.S.C.C.A.N. 730, 733.

This Court has noted a Congressional preference to appoint institutional investors.  *See*

*Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416 (SHS) (AJP), 2007 WL 4526532, at *3

(S.D.N.Y. Dec. 21, 2007) ("Congress decided that the PSLRA's objectives are best achieved

when lead plaintiffs are institutional investors or others with large holdings at stake whose

interests will be most strongly aligned with those of the class members"); *Schulman v. Lumenis,*

*Ltd.*, No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (one purpose

behind the PSLRA is "to ensure that parties with significant holdings in issuers, whose interests

are more strongly aligned with the class of shareholders, will participate in the litigation and

exercise control over the selection and actions of plaintiff's counsel") (internal quotations and

citations omitted).  "Congress believed that this could best be achieved by encouraging

8

institutional investors to serve as lead plaintiffs." *Id. See also In re Cendant Corp. Litig.*, 264 F.3d 201, 244 (3d Cir. 2001), *aff'd*, 404 F.3d 173 (3d Cir. 2005) (Congress "anticipated and intended that [institutional investors] would serve as lead plaintiffs.")[2]

Indeed, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996). Furthermore, Congress believed that "increasing the role of institutional investors in class actions [would] ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999) (citations omitted); *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) (stating that Congress wanted to encourage large, sophisticated institutional investors to direct securities class actions, thereby supplanting the prior regime of "figurehead plaintiffs who exercise no meaningful supervision of litigation"). Congress reasoned that the empowerment of institutional investors would result in the appointment of lead plaintiffs that can best prosecute the claims and are best able to negotiate with and oversee counsel. *See Razorfish*, 143 F. Supp. 2d at 309 (stating that Congress intended that "institutional plaintiffs with expertise in the securities market and real financial interest in the integrity of the market would control the litigation . . ."); *Gluck*, 976 F. Supp. at 548 ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors").

---

[2] *See also Bowman v. Legato Sys.*, 195 F.R.D. 655, 657 (N.D. Cal. 2000) (institutional investors are "exactly the type of lead plaintiff envisioned by Congress when it instituted the [PSLRA] lead plaintiff requirements . . ."); *In re Network Assocs. Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) ("Congress expected that the lead plaintiff would normally be an institutional investor"); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors").

This presumption is rooted in Congress' belief that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts." S. REP. NO. 104-98, at 11 (1995), reprinted in, 1995 U.S.C.C.A.N. 679, 690.  In reaching this conclusion, Congress reasoned that:

> Institutions' large stakes give them an incentive to monitor, and institutions have or readily could develop the expertise necessary to assess whether plaintiffs' attorneys are acting as faithful champions for the plaintiff class.

Elliot J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995) ("Weiss & Beckerman").  *See also* S. REP. NO. 104-98, at 11 n.32 (noting that Weiss & Beckerman provided "the basis for the most adequate plaintiff provision").

Rhode Island is ideally suited for the role as lead plaintiff.  Rhode Island lost over $4.2 million during the Class Period.  *See* Seidman Decl. Ex. 2.  As a large institutional investor with significant resources dedicated to overseeing and supervising the prosecution of the litigation, Rhode Island will be able to actively represent the class and "drive the litigation" to ensure that the Class obtains the best recovery possible and implement corporate governance changes to correct the environment which allowed this fraud to take place and to prevent a recurrence ever again. *See Gluck*, 976 F. Supp. at 549.

### b.    Rhode Island Meets The Requirements Of F.R.C.P. Rule 23

Equally important, Rhode Island has affirmatively shown that it satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure, which are the provisions of Rule 23 relevant to the appointment of lead plaintiff under the PSLRA.  *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Schulman*, 2003 WL 21415287, at *3. *See also Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y.

2001) (considering only typicality and adequacy on a motion for consolidation and for designation of lead plaintiff and lead counsel).

Rhode Island's certification affirmatively establishes that it meets the typicality requirement of Rule 23 because it: (i) suffered the same injuries as the absent class members; (ii) suffered as a result of the same course of conduct by Defendants; and (iii) has the same claims as other Class members based on the same legal issues. *See Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *see also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which other class members' claims and injuries arise"). Rule 23 does not require that the named plaintiffs be identically situated with all class members. It is enough if their situations share a common issue of law or fact. *See In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 127 (S.D.N.Y. 1997). A finding of commonality frequently supports a finding of typicality. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982), *aff'd*, 815 F.2d 317 (5th Cir. 1987) (noting how the commonality and typicality requirements "merge"). Here, the questions of law and fact common to the members of the Class and which may affect individual Class members include the following:

- whether the federal securities laws were violated by Defendants' acts;
- whether statements made by Defendants to the investing public during the Class Period contained material misrepresentations concerning the facts about the business, operations and financial statements of Security Capital;
- whether Defendants acted knowingly or recklessly in issuing false and misleading statements; and
- whether the members of the Class sustained damages and, if so, what is the proper measure of damages.

These questions apply equally to Rhode Island as to all members of the purported Class. Similar to all of the other members of the Class, Rhode Island purchased shares of Security

11

Capital securities at prices materially distorted as a result of Defendants' misrepresentations, including shares on the SPO. Because Rhode Island's claims are based on the same legal theories and "arise from the same course of conduct that gives rise to the claims of other Class members," the typicality requirement is satisfied. *See NASDAQ Market-Makers*, 172 F.R.D. at 126; *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Further, Rhode Island is uniquely able to fulfill the duties and responsibilities required to serve as lead plaintiff. Specifically, Rhode Island will be diligent in leading the litigation, including supervising lead counsel and directing litigation strategy and any settlement discussions to obtain the largest recovery for the Class.

## III.    THE COURT SHOULD APPROVE RHODE ISLAND'S CHOICE OF COUNSEL

Pursuant to the PSLRA, the proposed lead plaintiffs shall, subject to court approval, select and retain counsel to represent the Class. *See In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997). The Court should not disturb the lead plaintiffs' choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa). In that regard, Rhode Island requests the appointment of the law firm of Bernstein Liebhard to serve as lead counsel in this case. Bernstein Liebhard has extensive experience in successfully prosecuting securities fraud actions, has frequently been appointed as lead counsel since the passage of the PSLRA, and has frequently appeared in major actions before this and other courts throughout the country. *See* Bernstein Liebhard's firm resume, attached as Ex. 4 to the Seidman Decl.

### CONCLUSION

For the foregoing reasons, Rhode Island respectfully requests that this Court: (1) consolidate the captioned, and all subsequently-filed, related actions; (2) appoint Rhode Island as

12

lead plaintiff in the captioned, and all subsequently-filed, related actions; and (3) approve Rhode Island's selection of Bernstein Liebhard as lead counsel.

Dated: February 5, 2008

Respectfully submitted,

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**

/s/
_____

Sandy A. Liebhard (SL-0835)
Joseph R. Seidman, Jr. (JS-9260)
10 East 40th Street, 22nd Floor
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

**_Counsel for Rhode Island and Proposed
Lead Counsel for the Class_**

13

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served upon the following counsel of record in the consolidated actions filed in this Court, First Class Mail prepaid this 5th day of February, 2008:

*Attorneys for Plaintiffs*:

**Samuel H. Rudman**
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road,      .
Suite 200
Melville, NY 11747
Tel: 631/367-7100
Fax: 631/367-1173

**Evan J. Smith**
Brodsky & Smith, L.L.C.
240 Mineola Blvd.,
Mineola, NY 11501
Tel: 516/741-4977

**Richard A. Speirs**
Zwerling, Schachter & Zwerling
41 Madison Avenue
New York, NY 10010
Tel: 212/223-3900
Fax: 212/371-5969

/s/
_____
JOSEPH R. SEIDMAN, JR.

14537v1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BRICKMAN INVESTMENTS, INC., *Individually and on Behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>SECURITY CAPITAL ASSURANCE LTD, PAUL S. GIORDANO, DAVID SHEA, GOLDMAN, SACHS & CO, J.P. MORGAN SECURITIES INC., MERRILL, LYNCH, PIERCE, FENNER & SMITH INC., and XL INSURANCE LTD.,<br><br>Defendants. | **CASE #: 1:07-cv-11086-DAB** |
| 2 WEST, INC., *On Behalf of Itself and all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>SECURITY CAPITAL ASSURANCE LTD, XL INSURANCE, LTD, PAUL S. GIORDANO, and DAVID P. SHEA,<br><br>Defendants. | **CASE #: 1:07-cv-11358-DAB** |

## [PROPOSED] ORDER CONSOLIDATING ACTIONS, APPOINTING EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF RHODE ISLAND AS LEAD PLAINTIFF, AND APPROVING ITS SELECTION OF LEAD COUNSEL

14388v1

**CASE #: 1:08-cv-00158-UA**

ROBERT CLARKE, *Individually and on Behalf of all others similarly situated,*

                            Plaintiff,

          vs.

SECURITY CAPITAL ASSURANCE LTD, PAUL S. GIORDANO, DAVID P. SHEA, XL INSURANCE, LTD., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., GOLDMAN, SACHS & CO., and J.P. MORGAN SECURITIES INC.,

                            Defendants.

14388v1

Having considered the Motion of Employees' Retirement System of the State of Rhode Island ("Rhode Island") to consolidate actions, be appointed as lead plaintiff, and for approval of selection of lead counsel, the memorandum of law and declaration in support thereof, and good cause appearing,

IT IS HEREBY ORDERED THAT:

1.      The captioned actions are consolidated for all purposes (the "Consolidated Action"). This order (the "Order") shall apply to the Consolidated Action and to each case that relates to the same subject matter that is subsequently filed in this Court or is transferred to this Court and is consolidated with the Consolidated Action.

2.      A Master File is established for this proceeding. The Master File shall be Civil Action No.: 07-CV-11086 (DAB). The Clerk shall file all pleadings in the Master File and note such filings on the Master Docket.

3.      An original of this Order shall be filed by the Clerk in the Master File.

4.      The Clerk shall mail a copy of this Order to counsel of record in the Consolidated Action.

5.      Every pleading filed in the Consolidated Action shall have the following caption:

---

IN RE SECURITY CAPITAL ASSURANCE LTD.    Civ No. 07-CV-11086 (DAB)
SECURITIES LITIGATION

---

6.      The Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case that might properly be consolidated as part of the Consolidated Action.

7.    When a case that arises out of the same subject matter of the Consolidated Action is hereinafter filed in this Court or transferred from another Court, the Clerk of this Court shall

      a.    File a copy of this Order in the separate file for such action;

      b.    Mail a copy of this Order to the attorneys for the plaintiff(s) in the newly-filed or transferred case and to any new defendant(s) in the newly-filed or transferred case; and

      c.    Make the appropriate entry in the Master Docket for the Consolidated Action.

8.    Each new case that arises out of the subject matter of the Consolidated Action, which is filed in this Court or transferred to this Court, shall be consolidated with the Consolidated Action and this Order shall apply thereto, unless a party objects to consolidation, as provided for herein, or any provision of this Order, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, by filing an application for relief and this Court deems it appropriate to grant such application.  Nothing in the foregoing shall be construed as a waiver of Defendants' right to object to consolidation of any subsequently-filed or transferred related action.

9.    Rhode Island is appointed to serve as lead plaintiff in the captioned actions and any related action subsequently transferred to or filed in this Court, pursuant to Section 21D(a)(3)(B), 15 U.S.C. § 78u-4 of the Securities Exchange Act of 1934 and Section 27(a)(3)(B), 15 U.S.C. § 77z-1 of the Securities Act of 1933.

10.    The law firm of Bernstein Liebhard & Lifshitz, LLP is hereby appointed lead counsel for the Class.  Lead counsel shall provide general supervision of the activities of

2

plaintiffs' counsel and shall ensure that all work performed by plaintiffs' counsel is neither
duplicative nor unproductive.  Lead counsel shall have the following responsibilities and duties
to perform or delegate as appropriate to:

    a.    brief and argue motions;

    b.    initiate and conduct discovery, including, without limitation, coordination
of discovery with defendants' counsel, the preparation of written
interrogatories, requests for admissions, and requests for production of
documents;

    c.    direct and coordinate the examination of witnesses in depositions;

    d.    act as spokesperson at pretrial conferences;

    e.    call and chair meetings of plaintiffs' counsel as appropriate or necessary
from time to time;

    f.    initiate and conduct any settlement negotiations with counsel for
defendants;

    g.    provide general coordination of the activities of plaintiffs' counsel and to
delegate work responsibilities to selected counsel as may be required in
such a manner as to lead to the orderly and efficient prosecution of this
litigation and to avoid duplication or unproductive effort;

    h.    consult with and employ experts;

    i.    collect time reports of all attorneys on behalf of plaintiffs and to determine
if the time is being spent appropriately and for the benefit of plaintiffs; and

    j.    perform such other duties as may be expressly authorized by further order

of this Court.

11.    Rhode Island shall cause a Consolidated Amended Complaint to be filed with the Court and served on defendants' counsel within sixty (60) days of the date of entry of the Order.

12.    Defendants shall have no obligation to file any answer or otherwise responsive papers to any of the pending individual complaints hereby consolidated other than the Consolidated Complaint.

IT IS SO ORDERED.

DATED:_____          _____

United States District Court Judge

4

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served upon the following counsel of record in the consolidated actions filed in this Court, First Class Mail prepaid this 5th day of February, 2008:

*Attorneys for Plaintiffs*:

**Samuel H. Rudman**
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road,
Suite 200
Melville, NY 11747
Tel: 631/367-7100
Fax: 631/367-1173

**Richard A. Speirs**
Zwerling, Schachter & Zwerling
41 Madison Avenue
New York, NY 10010
Tel: 212/223-3900
Fax: 212/371-5969

**Evan J. Smith**
Brodsky & Smith, L.L.C.
240 Mineola Blvd.,
Mineola, NY 11501
Tel: 516/741-4977

/s/
_____
JOSEPH R. SEIDMAN, JR.

14537v1