UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRICKMAN INVESTMENTS, INC., *Individually and on Behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>SECURITY CAPITAL ASSURANCE LTD, PAUL S. GIORDANO, DAVID SHEA, GOLDMAN, SACHS & CO, J.P. MORGAN SECURITIES INC., MERRILL, LYNCH, PIERCE, FENNER & SMITH INC., and XL INSURANCE LTD.,<br><br>Defendants. | CASE #: 1:07-cv-11086-DAB |
| 2 WEST, INC., *On Behalf of Itself and all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>SECURITY CAPITAL ASSURANCE LTD, XL INSURANCE, LTD, PAUL S. GIORDANO, and DAVID P. SHEA,<br><br>Defendants. | CASE #: 1:07-cv-11358-DAB |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF RHODE ISLAND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**

14617v1

| | |
|---|---|
| ROBERT CLARKE, *Individually and on Behalf of all others similarly situated*,<br><br>        Plaintiff,<br><br>    vs.<br><br>SECURITY CAPITAL ASSURANCE LTD, PAUL S. GIORDANO, DAVID P. SHEA, XL INSURANCE, LTD., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., GOLDMAN, SACHS & CO., and J.P. MORGAN SECURITIES INC.,<br><br>        Defendants. | **CASE #: 1:08-cv-00158-UA** |

14617v1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ..........................................................................................................1

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT.................................................................................................................3

I.      RHODE ISLAND HAS THE LARGEST FINANCIAL INTEREST................................3

II.     HGK IS SUBJECT TO UNIQUE DEFENSES UNDER RULE 23 ...................................4

III.    COURTS REGULARLY REJECT NICHE PLAINTIFFS.................................6

IV.     PUBLIC PENSION FUNDS VERSUS INVESTMENT ADVISORS ..............................8

CONCLUSION................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Albert Fadem Trust v. WorldCom, Inc.*,
   No. 02 Civ. 3288, 2002 WL 31059859 (S.D.N.Y. Aug. 15, 2002) ...........................................6

*Blau v. Harrison*,
   No Civ. 04-C-6592 (JH), 2006 WL 850959 (N.D. Ill. Mar. 24, 2006).....................................8

*Burke v. Ruttenberg*,
   102 F. Supp. 2d 1280 (N.D. Ala. 2000)................................................................................9

*Constance Sczesny Trust v. KPMG LLP*,
   223 F.R.D. 319 (S.D.N.Y. 2004) ..........................................................................................8

*Gesenhues v. Checchi*,
   No. 05 Civ. 10653, 2006 WL 1169673 (S.D.N.Y. May 3, 2006)...........................................4

*Glauser v. EVCI Ctr. Colls. Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) ......................................................................................7, 8

*Gluck v. Cellstar Corp.*,
   976 F. Supp. 542 (N.D. Tex. 1997) ....................................................................................10

*Hevesi v. Citigroup*,
   366 F.3d 70 (2d Cir. 2004)....................................................................................................7

*In re Bank One S'holders Class Actions*,
   96 F. Supp. 2d 780 (N.D. Ill. 2000) .....................................................................................6

*In re Cardinal Health, Inc. Sec. Litig.*,
   226 F.R.D. 298 (S.D. Ohio 2005).....................................................................................6, 9

*In re Cendant Corp. Litig.*,
   182 F.R.D. 476 (D.N.J. 1998)...............................................................................................8

*In re Conseco, Inc. Sec. Litig.*,
   120 F. Supp. 2d 729 (S.D. Ind. 2000) ..................................................................................8

*In re Delphi Corp. Sec., Derivative & "Erisa" Litig.*,
   458 F. Supp. 2d 455 (E.D. Mich. 2006)................................................................................7

*In re Enron Corp. Sec. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002)..................................................................7

*In re Microstrategy Inc. Sec. Litig.*,
    110 F. Supp. 2d 427 (E.D. Va. 2000) ..........................................................6

*In re NeoPharm, Inc. Sec. Litig.*,
    No. 02-C-2976 (JHL), 2004 WL 742084 (N.D. Ill. Apr. 7, 2004) ..............8

*In re Peregrine Sys., Inc. Sec. Litig.*,
    No. 02 CV 870-J (RBB), 2002 WL 32769239 (S.D. Cal. Oct. 15, 2002) ................5

*In re Stonepath Group, Inc. Sec. Litig.*,
    Civ. No. 04-4515, slip op. (E.D. Pa. Jan. 18, 2005) ..................................5

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
    209 F.R.D. 353 (S.D.N.Y. 2002)..................................................................5

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    225 F.R.D. 508 (E.D. Pa. 2004)...................................................................9

*In re Williams Securities Litigation*,
    No. 02-CV-72 (N.D. Okla. filed Jan. 29, 2002) .....................................3,8

*Legion Partners, LLP v. Willbros Group, Inc., et al.*,
    No. Civ. 05-1778 (S.D. Tex. Oct. 20, 2005).................................................6

*Olsen v. N.Y. Comm. Bancorp, Inc.*,
    233 F.R.D. 101 (E.D.N.Y. 2005) ..................................................................4

*Sakhrani v. Brightpoint, Inc.*,
    78 F. Supp. 2d 845 (S.D. Ind. 1999) ...........................................................9

*Smajlaj v. Brocade Commc'n Sys., Inc.*,
    No. 3:05-CV-02042-CRB (N.D. Cal. Jan. 12, 2006) ..................................5

*Smith v. Suprema Specialties, Inc.*,
    206 F. Supp. 2d 627 (D.N.J. 2002)..............................................................9

*Vanamringe v. Royal Group Techs. Ltd.*,
    237 F.R.D. 55 (S.D.N.Y. 2006) ...................................................................4

**STATUTES**

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) ...................................................................................2, 3

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II) ....................................................................................4

15 U.S.C. § 77z-1(a)(3)(B)(iv) ..........................................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .................................................................................2, 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ....................................................................................4

15 U.S.C. § 78u-4(a)(3)(B)(iv) ......................................................................................2, 6

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in*
1995 U.S.C.C.A.N. 730 .....................................................................................................9

## INTRODUCTION

Class member Employees' Retirement System of the State of Rhode Island ("Rhode Island") is an institutional investor which suffered the largest loss in Security Capital Assurance Ltd. ("Security Capital") of the lead plaintiff candidates.  Thus, Rhode Island respectfully submits this memorandum in opposition to the competing motions to appoint lead plaintiff and approve lead counsel that are pending before this Court,[1] and in further support of its motion for consolidation,[2] appointment as lead plaintiff and for approval of its selection of Bernstein Liebhard & Lifshitz, LLP ("Bernstein Liebhard") as lead counsel for the class.

## PRELIMINARY STATEMENT

Rhode Island should be appointed as lead plaintiff and its selection of lead counsel should be approved.  Unlike the competing movants, which lack the largest financial interest in the outcome of the litigation, Rhode Island satisfies the requirements of the Private Securities Litigation Reform Act ("PSLRA") and Fed. R. Civ. P. 23(a)(3) and (4).[3]  Rhode Island, having suffered a loss of over $4.2 million, represents the largest financial interest in the outcome of the litigation, asserts claims that are typical of the class and has no interests that are antagonistic to the members of the class.  Thus, Rhode Island is presumptively the most adequate class member

---

[1]  Motions for appointment as lead plaintiff were also made by: (i) United Food & Commercial Workers Union Local 655, AFL-CIO, Food Employers Joint Pension Plan and District No. 9, I.A. of M. & A.W. Pension Trust ("UFCW and District 9"); and (ii) HGK Asset Management, Inc. ("HGK").

[2]  Rhode Island respectfully refers the Court to its opening memorandum for the arguments in favor of consolidating the related actions.

[3]  As discussed below, HGK also suffers from Rule 23 impediments.

to serve as lead plaintiff in these actions. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. §

78u-4(a)(3)(B)(iii)(I).

Besides lacking the largest financial interest, HGK is subject to unique defenses under

Fed. R. Civ. P. 23 because it is unclear whether HGK has authority to litigate this action on

behalf of its clients. Courts have repeatedly held that investment managers must *prove* – not

merely *assert* in a certification – their authority to litigate federal securities claims on behalf of

their clients, who are the real injured parties. *See infra* at 4-6. If HGK's authority is lacking or

unclear, it could threaten the viability of the case at the class certification stage. Accordingly,

Rhode Island requests a copy of HGK's investment agreement to determine whether it has

standing to litigate on behalf its clients. The PSLRA specifically provides for limited discovery

on the issue of the adequacy of the presumed lead plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iv);

15 U.S.C. § 78u-4(a)(3)(B)(iv).

Moreover, HGK's attempt to carve out a sub-class to represent as co-lead plaintiff has

been repeatedly rejected by courts. HGK seeks to represent a sub-class of investors who

acquired 6.880 12/31/49-17 Security Assurance Capital Assurance Ltd. securities ("6.880

Bonds") pursuant or traceable to the registration statement that was filed in connection with the

Offer to Exchange on November 19, 2007 (the "Bondholder Class"). The overwhelming

majority of courts, including the Second Circuit Court of Appeals and this Court, have rejected

the argument that co-lead plaintiffs are needed to represent every possible security; rather, the

PSLRA provides that the investor with the largest financial interest be appointed lead plaintiff

for all affected securities, and the issue of whether additional class representatives are required is

determined at the class certification stage. Indeed, HGK knows this well as this Court in

2

*WorldCom* appointed HGK as a class representative for bondholders – after HGK filed an

unsuccessful motion for lead plaintiff, after the Court held it was unnecessary to have a

representative from each security to serve as a sub-class lead plaintiff, and after HGK was named

in the amended complaint as an additional named plaintiff.[4]

In addition, HGK is an investment advisor, which are notorious for pulling out of

securities class actions at the class certification or discovery stage. *See infra* at 8-10.  Indeed,

HGK withdrew without explanation from the *In re Williams Securities Litigation*, No. 02-CV-72

(N.D. Okla. filed Jan. 29, 2002) action after serving two years as lead plaintiff. *See* Ex. A.

In stark contrast, Rhode Island is precisely the type of institutional investor mentioned by

the PSLRA – a public pension fund – and is not hampered by any of these problems.

Accordingly, for all these reasons, Rhode Island should be appointed as sole lead

plaintiff.

## ARGUMENT

## I.    RHODE ISLAND HAS THE LARGEST FINANCIAL INTEREST

The PSLRA provides that there is a "rebuttable presumption . . . that the most adequate

plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the

relief sought by the class." *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I).  Here, Rhode Island suffered the largest loss of any moving party in this

litigation, over $4.2 million, on its transactions in Security Capital, well above HGK's reported

---

[4]  A "lead plaintiff" and an "additional named plaintiff" are very different.  A lead plaintiff is the
person or entity that runs the litigation – Congress created the lead plaintiff provision of the
PSLRA to end what it perceived as lawyer-driven securities class actions.  An additional named
plaintiff, in contrast, is a class member named in the operative amended complaint that
purchased a type of security not bought by the lead plaintiff.  Such additional named plaintiffs
are included for standing purposes and often serve as class representatives at that stage of the
case.

loss of $2.6 million from the 6.880 Bonds, and about seven times greater than UFCW and

District 9's reported losses of $652,730.[5]

It is axiomatic that the investor or investor group with the largest financial interest is

entitled to the presumption of being the most adequate plaintiff – and being appointed the lead

plaintiff. *Vanamringe v. Royal Group Techs. Ltd.*, 237 F.R.D. 55, 58 (S.D.N.Y. 2006);

*Gesenhues v. Checchi*, No. 05 Civ. 10653, 2006 WL 1169673, at *3 (S.D.N.Y. May 3, 2006).

The PSLRA's presumption that the most adequate plaintiff is the "person or group of

persons" with the largest financial interest may be rebutted only upon *proof* by a class member

that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests

of the class" or "is subject to unique defenses that render such plaintiffs incapable of adequately

representing the class." *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II); 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II).  The competing movants cannot rebut this presumption.

As set forth in its opening motion to be appointed lead plaintiff, Rhode Island satisfies the

PSLRA, is not aware of any unique defenses that defendants could raise against it and, thus, is

entitled to the presumption that it is the most adequate plaintiff for the class.  Therefore, Rhode

Island should be appointed lead plaintiff.

## II.    HGK IS SUBJECT TO UNIQUE DEFENSES UNDER RULE 23

Courts have held, in certain circumstances, that investment funds such as HGK are poor

choices to serve as lead plaintiff. In *Olsen v. New York Community Bancorp, Inc.*, 233 F.R.D.

101, 108 (E.D.N.Y. 2005), the court appointed an investment advisor as lead plaintiff only

because the advisor's funds' "respective shareholders have each entered into a contract . . .

---

[5] *See infra* for arguments against carving out a sub-class of 6.880 Bond investors.

4

*explicitly* authorizing [the advisor] to control all investments *and to commence litigation* on behalf of the funds." (Emphasis added). *See also In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 358 (S.D.N.Y. 2002) (rejecting investment advisor as lead plaintiff where, although it "suffer[ed] some pecuniary loss, it was almost purely in a representative capacity, rather than as an investor").

*In re Peregrine Systems, Inc. Securities Litigation*, No. 02 CV 870-J (RBB), 2002 WL 32769239, at *14-*15 (S.D. Cal. Oct. 15, 2002) is instructive. In *Peregrine*, the court rejected three investment advisers in favor of a public pension fund *with smaller losses*. *Id.* First, the court rejected Needham Growth Fund because it provided "no *substantive* argument regarding its standing to initiate and manage litigation on behalf of its investors". *Id.* at 15. (Emphasis added). Second, it rejected Stoneridge Investment Partners, LLC because "it has not submitted any *evidence* that it received permission to move on its clients' behalf." *Id.* (Emphasis added).[6]

Scores of other courts have agreed with this reasoning. *See, e.g., Smajlaj v. Brocade Commc'n Sys., Inc.*, No. 3:05-CV-02042-CRB (N.D. Cal. Jan. 12, 2006) (attached as Ex. B) (court rejected hedge fund lead plaintiff where its authority to litigate was unclear after submission of investment agreement); *In re Stonepath Group, Inc.*, No. Civ. No. 04-4515, slip op. at 4 n.4 (E.D. Pa. Jan. 18, 2005) (attached as Ex. C) (court appointed investment adviser after it produced its investment agreement *proving* its authority to litigate on behalf of its clients); *Legion Partners, LLP v. Willbros Group, Inc., et al.*, No. Civ. 05-1778 (S.D. Tex. Oct. 20, 2005)

---

[6] The court rejected investment advisor Societe Generale for the same reason. *Id.*

5

(attached as Ex. D) (court appointed investment adviser after submission *proving* authority to litigate on behalf of clients).[7]

As mentioned, discovery may be had on the issue of the adequacy of the presumed lead plaintiff upon a showing of a reasonable basis for a finding that the presumptively most adequate plaintiff cannot adequately represent the class. 15 U.S.C. § 77z-1(a)(3)(B)(iv); 15 U.S.C. § 78u-4(a)(3)(B)(iv). Here, Rhode Island has demonstrated a reasonable basis for such discovery: HGK has not *proven* its authority to litigate this action on behalf of its clients. As discussed below, courts have repeatedly held that proposed lead plaintiffs must provide *evidence* for their attorney-in-fact status. It is a fundamental question of standing.

## III.    COURTS REGULARLY REJECT NICHE PLAINTIFFS

The overwhelming majority of courts, including this Court, have repeatedly rejected "niche" plaintiffs as contrary to the PSLRA. In the seminal *WorldCom* litigation, this Court appointed one lead plaintiff to represent stockholders and bondholders:

> This Order shall apply to each class action assigned to the undersigned alleging claims similar to those set forth in these actions, whether brought on behalf of holders of WorldCom stocks, bonds, or any other securities, so long as WorldCom is named as a defendant in the action . . . .
>
> The New York State Common Retirement Fund is appointed Lead Plaintiff.

*Albert Fadem Trust v. WorldCom, Inc.*, No. 02 Civ. 3288, 2002 WL 31059859, at \*2, \*3 (S.D.N.Y. Aug. 15, 2002). As discussed above, HGK is well aware of *WorldCom* because in

---

[7]    *See also In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000) (hedge fund lead plaintiff candidate that was not simply a buyer for its own account rejected as lead plaintiff in favor of pension funds); *cf. In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) (despite sizable loss, private fund not appointed due to its "method of doing business"); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 311 (S.D. Ohio 2005) (holding that the class "may not be best served by the[] additional complications" afflicting private investment firm with "complex corporate structure").

that action it filed a motion for lead plaintiff, was an additional named plaintiff in the amended

complaint, and was subsequently certified as class representative for *bondholders* – the same

sub-class it seeks to represent as co-lead plaintiff here. *See Hevesi v. Citigroup*, 366 F.3d 70, 74

(2d Cir. 2004).

Courts in other major securities class actions have also appointed one lead plaintiff to

represent investors in different securities. *See, e.g.*, *In re Delphi Corp. Sec., Derivative &*

*"Erisa" Litig.*, 458 F. Supp. 2d 455, 461 (E.D. Mich. 2006) (rejecting proposed preferred

securityholder niche lead plaintiff); *In re Dynegy, Inc. Sec. Litig.*, Master File No. H-02-1571

(S.D. Tex. filed Jan. 30, 2004) (Regents of the University of California, whose losses related

solely to common stock transactions, was appointed lead plaintiff to represent the interests of all

investors, including note and stock purchasers, for a two and half year class period); *In re Enron*

*Corp. Sec. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) (rejecting arguments by preferred

stockholders, bondholders and other securities holders that separate classes and separate lead

counsel were required for each type of security and noting that for purposes of efficiency and

fairness to all litigants, "the litigation should proceed as a unified class with a strong Lead

Plaintiff, at least until the time for class certification"); *In re Waste Mgmt., Inc. Sec. Litig.*,

Master File No. H-99-2183 (S.D. Tex. filed July 14, 2000) (one lead plaintiff appointed for bond

and stock purchasers, as well as optionsholders and investors who received shares on two

mergers).

In *Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y.

2006), this Court rejected a co-lead plaintiff proposal:

> The Kahn Group's proposal contravenes the very purpose of the PSLRA-to
> place securities class actions in the hands of the investor (ideally a

> sophisticated institutional investor) with the largest amount at stake in the
> outcome of the case . . . . In fact, the majority of courts to consider the
> appointment of small, "niche" investors as co-Lead Plaintiff have rejected it....
> Moreover, rather than better serving the interests of individual class members, the
> appointment of a co-Lead Plaintiff would only serve to fracture the leadership and
> drive up attorneys fees.

These factors apply here. Appointing HGK as a co-lead plaintiff to represent those who bought

the 6.880 Bonds is unnecessary, would "contravene[] the very purpose of the PSLRA[,]" and any

co-lead plaintiff structure would "fracture the leadership and drive up attorneys fees." *Id.* at

187.[8]

## IV.    PUBLIC PENSION FUNDS VERSUS INVESTMENT ADVISORS

As mentioned above, after serving the class for two years in the *Williams* litigation, HGK

abruptly withdrew – and without explanation. *See* Ex. A. The class here does not need an entity

like HGK in a leadership position.

Indeed, investment advisers and asset managers, like HGK, are famous for pulling out of

securities class actions at a later stage of the litigation. *See, e.g., Blau v. Harrison*, No. Civ. 04-

C-6592 (JH), 2006 WL 850959, at *1 n.1 (N.D. Ill. Mar. 24, 2006) (American Growth Fund

withdrew as lead plaintiff); *In re NeoPharm, Inc. Sec. Litig.*, No. 02-C-2976 (JHL), 2004 WL

742084, at *1 (N.D. Ill. Apr. 7, 2004) (Larson Capital Management inexplicably withdrew at

class certification stage); *In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729, 733 (S.D. Ind.

2000) (court refused to appoint Thales Management Fund, L.P. because, *inter alia*, "in a case

---

[8]  *See also Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y. 2004) (where
the claims of both shareholders and option holders were predicated on the same misstatements,
the interests of option investors and shareholders were held not to be sufficiently differentiated
so as to require the appointment of a "niche" lead plaintiff); *In re Cendant Corp. Litig.*, 182
F.R.D. 476, 480 (D.N.J. 1998) (emphasizing that "what matters . . . is that the claims of every
member or constituent group . . . arise from the same [statements]" and, therefore, refusing to
appoint separate lead plaintiffs and counsel for separate groups of investors).

where Thales was appointed lead plaintiff, it subsequently withdrew without explanation");

*Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 848 (S.D. Ind. 1999) (after being noticed for a

deposition, L.A.L.W., Inc. moved to withdraw as lead plaintiff).

Rhode Island suffers from none of the concerns plaguing HGK. As a public pension

fund, Rhode Island is a straightforward, paradigm lead plaintiff, and is the best choice for the

class here. The legislative history of the PSLRA demonstrates that it was intended to encourage

institutional investors – *particularly* public pension funds such as Rhode Island – to serve as lead

plaintiff. The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee believes . . . that with *pension funds* accounting for
> $4.5 trillion or nearly half of the institutional assets, [and] in many cases the
> beneficiaries of *pension funds* - small investors - ultimately have the greatest
> stake in the outcome of the lawsuit. Cumulatively, these small investors represent
> a single large investor interest. Institutional investors and other class members
> with large amounts at stake will represent the interests of the plaintiff class more
> effectively than class members with small amounts at stake.

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733.

(Emphasis added).

Courts around the country have noted the preference for public pension funds. *See, e.g.*,

*Cardinal Health*, 226 F.R.D. at 311 (noting the PSLRA's preference for public pension funds);

*In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (fact that proposed

lead plaintiff was a pension fund tipped scales in its favor); *Smith v. Suprema Specialties, Inc.*,

206 F. Supp. 2d 627, 639 (D.N.J. 2002) (appointing fund as lead plaintiff in part because of its

status as a public pension fund); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1331 (N.D. Ala.

2000) (appointing public pension fund over unrelated group).

Accordingly, Rhode Island, as a public pension fund, is ideally suited to serve as sole

lead plaintiff. As a large institutional investor with significant resources dedicated to overseeing

9

and supervising the prosecution of the litigation, Rhode Island will be able to actively represent

the class and "drive the litigation" to ensure that the class obtains the best recovery possible and

implement corporate governance changes to correct the environment which allowed this fraud to

take place and to prevent a recurrence ever again. *See Gluck v. Cellstar Corp.*, 976 F. Supp. 542,

549 (N.D. Tex. 1997).  (Citation omitted).

## CONCLUSION

For the foregoing reasons and the reasons given in its opening motion, Rhode Island

respectfully requests that this Court:  (1) consolidate the captioned, and all subsequently-filed,

related actions; (2) appoint Rhode Island as lead plaintiff in the captioned, and all subsequently-

filed, related actions; and (3) approve Rhode Island's selection of Bernstein Liebhard as lead

counsel.

Dated: February 25, 2008

Respectfully submitted,

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**

/s/

Sandy A. Liebhard (SL-0835)
Joseph R. Seidman, Jr. (JS-9260)
10 East 40th Street, 22nd Floor
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

***Counsel for Rhode Island and Proposed
Lead Counsel for the Class***

10

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served upon the following

counsel of record in the consolidated actions filed in this Court, First Class Mail prepaid this 25th

day of February, 2008:

*Attorneys for Plaintiffs*:

**Samuel H. Rudman**
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road,
Suite 200
Melville, NY 11747
Tel: 631/367-7100
Fax: 631/367-1173

**Evan J. Smith**
Brodsky & Smith, L.L.C.
240 Mineola Blvd.,
Mineola, NY 11501
Tel: 516/741-4977

**Richard A. Speirs**
Zwerling, Schachter & Zwerling
41 Madison Avenue
New York, NY 10010
Tel: 212/223-3900
Fax: 212/371-5969

/s/

_____
JOSEPH R. SEIDMAN, JR.

14537v1

EXHIBIT A

AUG. 30. 2004  3:56PM    SCHOE___LD & SPORN 212 267 8137                              NO. 2780

FILED
AUG 3 0 2004
Phil Lombardi, Clerk
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

IN RE WILLIAMS SECURITIES LITIGATION            )        Case No. 02-CV-72-H(M)
                                                )           Lead Case
**This Document Relates to: WMB Subclass**      )
                                                )        Judge Sven Erik Holmes

## MOTION AND MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF HGK ASSET MANAGEMENT WITHDRAWAL AND CO-LEAD COUNSEL SCHOENGOLD & SPORN, P.C. WITHDRAWAL

For reasons unrelated to the merits of the litigation, HGK Asset Management, Inc.

("HGK") has decided that it no longer wishes to assume the responsibilities of Lead Plaintiff in

this litigation and thus, seeks an order modifying this Court's Order dated July 8, 2002 appointing

Lead Plaintiff and Lead Counsel, so as to permit HGK's and its counsel Schoengold & Sporn,

P.C. ("Schoengold") to withdraw from the case as Lead Plaintiff and Co-Lead Counsel

respectively.

Federal Rule of Civil Procedure 21 provides that "parties may be dropped or added by

order of the court on motion of any party or of its own initiative at any stage of the action and on

such terms as are just." Courts have routinely applied this rule so as to permit any Lead Plaintiff

who no longer wishes to undertake the responsibilities of lead plaintiff to withdraw. *See In Re*

*NeoPharm, Inc. Securities Litigation*, 2004 U.S. Dist. 5814 (N. D. Ill. April 8, 2004) (in granting

withdrawal of lead plaintiff for unelaborated reasons, the court found "certainly there is nothing

extraordinary about this request, and removing Larson Capital Asset Management as lead plaintiff

is the appropriate and just approach if it does not wish to represent the class); *In Re Initial Public*

*Offering Securities Litigation*, 2004 Lexis No. 16879 (S.D.N.Y. Aug. 24, 2004) (court granted

AUG. 30. 2004  3:56PM    SCHOEN GLD & SPORN 212 267 8137    NO. 2780   P. 3

withdrawal of Lead Plaintiff for personal reasons); *In Re Bank One Securities Litigation*, 2002

U.S. Dist. Lexis 8709 (N. D. Ill. May 9, 2002) (court granted oral motion of lead plaintiff to

withdraw); *In Re Insurance Management Solutions Group Inc. Securities Litigation*, 206 F.R.D.

514 (M.D. Fla. 2002); *In Re Microstrategy Inc. Securities Litigation*, 110 F. Supp. 2d 427 (E.D.

Va. 2000).

Having determined that it no longer wishes to function as Lead Plaintiff in this litigation,

HGK moves to withdraw as Lead Plaintiff and to have its counsel Schoengold withdraw as co-

lead counsel.

Dated: August 30, 2004

Respectfully submitted,

*Joel P. Leutner* / with permission

SAMUEL P. SPORN NYBA #4444
JOEL P. LAITMAN NYBA #8177
CHRISTOPHER LOMETTI NYBA #9124
JAY P. SALTZMAN NYBA #7335
FRANK R. SCHIRRIPA NYBA #1960
**SCHOENGOLD & SPORN, P.C.**
19 Fulton Street, Suite 406
New York, NY 10038
Telephone: (212) 964-0046
Facsimile: (212) 267-8137

*Co-Lead Counsel for the WMB Subclass*
*and Attorneys for HGK Asset Management,*
*Inc.*


ROBERT BURTON, OBA #14195
**SEYMOUR LAW FIRM**
100 West 5th Street, Suite 550
Tulsa, Oklahoma 74103
Telephone: (918) 583-5791
Facsimile: (918) 583-9251

*Co-Lead Counsel for the WMB Subclass*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE WILLIAMS SECURITIES LITIGATION | ) | Case No. 02-CV-72-H(M) |
| | ) | Lead Case |
| This Document Relates to: WMB Subclass | ) | |
| | ) | Judge Sven Erik Holmes |

## AFFIDAVIT OF JEFFREY T. HARRIS IN SUPPORT OF WITHDRAWAL OF LEAD PLAINTIFF AND ITS COUNSEL

STATE OF NEW JERSEY  :

COUNTY OF HUDSON  :

JEFFREY T. HARRIS, being duly sworn and deposed, says:

1.    I am the Chief Executive Officer of HGK Asset Management, Inc. ("HGK"), and am familiar with HGK's involvement as Lead Plaintiff in this litigation.

2.    For reasons unrelated to the merits of the litigation, HGK no longer wishes to assume the responsibilities of Lead Plaintiff in this litigation.

3.    HGK therefore requests the Court grant HGK's Motion to Withdraw as lead plaintiff and to have its designated counsel Schoengold & Sporn, P.C. ("Schoengold") withdraw as co-lead counsel.

Jeffrey T. Harris

Sworn to before me, this
30  day of August, 2004.

Notary Public

EXHIBIT B

1

2

3

4

5

6

7

8

9

10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  PRENA SMAJLAJ, individually and on behalf of others similarly situated, | No. C 05-02042 CRB |
| 12 | **CLASS ACTION** |
| 13        Plaintiff, | **ORDER APPOINTING LEAD** |
| 14    v. | **PLAINTIFF** |
| 15  BROCADE COMMUNICATIONS SYSTEMS INC., et al, | |
| 16        Defendants. | |
| 17 _____/ | |

18        Now before the Court in this securities class action are competing Motions to Appoint

19  Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

20  After carefully considering the briefs of the applicants, including two rounds of supplemental

21  briefing, and with the benefit of two oral arguments, the Court hereby APPOINTS Arkansas

22  Public Employees' Retirement System as Lead Plaintiff.  Accordingly, the Court

23  DESIGNATES Nix, Patterson & Roach LLP and Patton, Roberts, McWilliams & Capshaw

24  LLP as Co-Lead Counsel, and Kaplan Fox & Kilsheimer LLP as Liaison Counsel to the

25  putative class.

26                                        **BACKGROUND**

27        Plaintiffs allege that Brocade Communications, the corporate defendant in this action,

28  made several material misstatements and failed to disclose improper accounting practices and

guidelines for granting stock-based compensation.  According to plaintiffs, these faulty

United States District Court

For the Northern District of California

1   practices resulted in corporate defendant restating its financial statements twice and an

2   announcement that stock-based compensation would be recorded.  These three

3   announcements each resulted in the share prices falling immediately thereafter.  The class

4   period has been defined as February 21, 2001 to May 15, 2005.

5       The following putative plaintiffs have moved to be appointed Lead Plaintiff: (1)

6   Intrepid Capital Management ("Intrepid"); (2) Arkansas Public Employees Retirement

7   System ("APERS"); (3) Oklahoma Firefighter Pension & Retirement System ("Oklahoma

8   Firefighters"); (4) John Geary, III and Justin Kaplan ("Geary Group"); and (5) Giulio

9   Cessario.

10      The Court held oral argument on the designation of a lead plaintiff on August 26,

11  2005, and October 7, 2005, and both times permitted supplemental briefing in order to gather

12  more information about Intrepid Capital Management's standing, structure, transparency and

13  authority to serve as Lead Plaintiff.  The Court also permitted limited discovery concerning

14  Intrepid, including a deposition of its corporate representative.

**DISCUSSION**

15

16  **I.    Lead Plaintiff Designation**

17      **A.    Legal Standard**

18      The PSLRA provides that the Court "shall appoint as lead plaintiff the member or

19  members of the purported plaintiff class that the court determines to be most capable of

20  adequately representing the interests of class members (hereafter in this paragraph referred to

21  as the 'most adequate plaintiff') in accordance with this subparagraph." 15 U.S.C. § 78u-

22  4(a)(3)(B)(I).  The Act creates a rebuttable presumption as to who is the most adequate

23  plaintiff:

24          Subject to subclause (II), for purposes of clause (I), the court shall adopt a

25          presumption that the most adequate plaintiff in any private action arising under

26          this chapter is the person or group of persons that--

27          (aa) has either filed the complaint or made a motion in response to a notice

28          under subparagraph (A)(I);

2

1        (bb) in the determination of the court, has the largest financial interest in the

2        relief sought by the class; and

3        (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of

4        Civil Procedure.

5  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption "may be rebutted only upon proof by a

6  member of the purported plaintiff class that the presumptively most adequate plaintiff (aa)

7  will not fairly and adequately protect the interests of the class; or (bb) is subject to unique

8  defenses that render such plaintiff incapable of adequately representing the class." 78u-

9  4(a)(3)(B)(iii)(I).

10      In addition to inquiring into which plaintiff has the greatest financial interest, the

11  Court must also find that the lead plaintiff "satisfies the requirements of Rule 23 of the

12  Federal Rules of Civil Procedure."  The only Rule 23 factors that are relevant are typicality

13  and adequacy of representation.  In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42,

14  49 (S.D.N.Y. 1998).  The typicality requirement is satisfied when: "(1) the claims of the

15  proposed lead plaintiff arise from the same course of conduct that gives rise to the other

16  purported class members' claims, (2) the claims are based on the same legal theory, and (3)

17  the purported class members and proposed lead plaintiff were injured by the same conduct."

18  In re Applied Signal Tech., Inc. Sec. Litig., 2005 WL 1656886, *3 (N.D. Cal. 2005).

19  Adequacy is met where the proposed lead plaintiff has no interests antagonistic to the

20  proposed class, and when they have retained capable counsel.  Id.

21    **B.**    **Presumptive Lead Plaintiff**

22      Pursuant to the requirements of the PSLRA, the Court finds that Intrepid Capital

23  Management, with a purported loss of $5,162,982, has the greatest financial interest in the

24  relief sought by the class.  As a result, Intrepid benefits from a rebuttable presumption that it

25  is the most adequate lead plaintiff.  The other movants, particularly APERS and Oklahoma

26  Firefighters, challenge this presumption based on assertions that Intrepid, a hedge fund

27  management company, does not have standing, will not fairly and adequately protect the

28  interests of the class, and will be subject to unique defenses.

3

United States District Court

For the Northern District of California

1      **C.    Adequacy and Typicality**

2          The Court, in appointing a Lead Plaintiff, acts as the gatekeeper for absent class

3      members. In that role, the Court must ensure that this action will be litigated as effectively

4      and efficiently as possible, and that there will be as few procedural or tangential impediments

5      as possible. The Court is not convinced that Intrepid is an adequate representative for the

6      putative class.

7          The Court has struggled, despite several rounds of briefing and two oral arguments, to

8      determine the precise corporate structure of Intrepid Capital Management, which of its hedge

9      funds actually held stock in corporate defendant, who manages which hedge funds, and who,

10     if anyone, has authority and permission from limited partners to proceed with this litigation.

11         In particular, the Court is concerned about an apparent reluctance by Intrepid to turn

12     over documentation of its authority to litigate this matter to the Court, as well as the

13     continuous "new" revelations that appear to expose the somewhat complicated and intricate

14     structure of the company. Despite declarations to the contrary, it is now apparent that there

15     are two different management companies for three different hedge funds, yet only one of the

16     management companies has applied to be lead plaintiff. While this type of structure may be

17     common in the hedge fund industry, it is certainly atypical of the class as a whole. It also

18     raises additional concerns about Intrepid's standing to be lead plaintiff, even setting aside the

19     proposed substitution of the real parties in interest that was briefed in the most recent round

20     of submissions. Because it is unclear which funds held Brocade stock, whether Intrepid

21     Capital Management has authority to act on behalf of those funds, and whether any other

22     Intrepid management companies would need to authorize this suit and the production of any

23     documents, Intrepid is likely to face unique defenses. For example, to the extent that an

24     offshore fund under Intrepid's management would be a lead plaintiff, it is not subject to

25     United States tax laws and would therefore have a different set of motivating concerns if and

26     when settlement negotiations occurred. Moreover, it is not clear from the pleadings that

27     Intrepid has authorization from its limited partners to turn over documents that may become

28     relevant and important in this litigation.

4

1    In sum, there are too many questions surrounding Intrepid's standing, authority,

2    transparency, and structure that may give rise to unique defenses and are atypical of the class

3    as a whole. Taken together, these concerns lead the Court to conclude that Intrepid will not

4    adequately represent the interests of the plaintiff class. As a result, the presumption in favor

5    of Intrepid is overcome, and the Court moves to the next largest financial stake in the

6    outcome of the matter.[1]

7    **D.    APERS**

8    APERS and Oklahoma Firefighters both suffered losses of approximately $1.5

9    million, but Oklahoma Firefighters has agreed to support the application of APERS to be

10    Lead Plaintiff. APERS, therefore, is presumptively the adequate plaintiff subject to rebuttal.

11    The Geary Group, a group of two unrelated individuals who can not qualify as a "group"

12    under the PSLRA, claims that APERS' losses are actually only $1.2 million. The Court is

13    not persuaded by the Geary Group argument since it does not present adequate proof that

14    APERS' loss calculation is incorrect. The Court concludes that APERS is a large pension

15    fund in Arkansas that is typical of other class members and will adequately and properly

16    represent the class in this matter.

17    //

18

19    //

20

21    //

22

23    //

24

25    //

26

27    [1]The Court additionally notes that the decision regarding Intrepid did not result from any
conclusions regarding substituting real parties in interest after the 60-day filing period or because of the
28    unique investing strategies of hedge funds, including short selling. These concerns did not factor into
the Court's conclusion.

**CONCLUSION**

For the foregoing reasons, the Court concludes that the presumption in favor of Intrepid Capital Management is rebutted.  The Court therefore APPOINTS Arkansas Public Employees' Retirement System as Lead Plaintiff.  Accordingly, the Court APPROVES the designation of Nix, Patterson & Roach LLP and Patton, Roberts, McWilliams & Capshaw LLP as Co-Lead Counsel, and Kaplan Fox & Kilsheimer LLP as Liaison Counsel.  Counsel for APERS shall file a consolidated amended complaint by March 3, 2006.

**IT IS SO ORDERED.**

Dated: January 12, 2006

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2005\2042\orderreleadplaintiff.wpd

6

EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  STONEPATH GROUP, INC. :    CIVIL ACTION.
SECURITIES LITIGATION        :    NO. 04-4515

### ORDER

AND NOW, this 18th day of January, 2005, upon
consideration of Globis Capital Partners LP's ("Globis
Capital"'s) motion for appointment as lead plaintiff (docket
entry # 10), United Food & Commercial Workers Union Local 655,
AFL-CIO, Food Employers Joint Pension Plan's ("UFCW"'s) motion
for appointment as lead plaintiff (docket entry # 11), the Kuch
Group's motion for appointment as lead plaintiff (docket entry #
12), Globis Capital's memorandum in further support of its
motion, UFCW's opposition to competition motions for appointment
of lead plaintiff, Globis Capital's unopposed motion for leave to
file reply memorandum (docket entry # 24), Globis Capital's reply
memorandum, UFCW's unopposed motion for leave to file reply
memorandum (docket entry # 25), UFCW's reply memorandum, the Kuch
Group's response to our Order of December 23, 2004, Globis
Capital's epistolary report of December 30, 2004, and the
responses of Globis Capital and UFCW to our Order of January 14,
2005, and the Court finding that:

(a)  Globis Capital and UFCW have each moved for their
appointment as lead plaintiff in this case[1];

---

[1] The Kuch Group has also moved for its appointment as lead
plaintiff, but its response to our Order of December 23, 2004
states that it "does not oppose" our selection of either Globis
Capital or the Union Pension Plan as the lead plaintiff.  Thus,
we shall deny the Kuch Group's motion.

(b)  We must "appoint as lead plaintiff the member or members of the purported plaintiff class that [we] determine[] to be most capable of adequately representing the interests of class members," 15 U.S.C. § 78u-4(a)(3)(B)(i) (2004);

(c)  A rebuttable presumption arises that a movant is the most adequate plaintiff if that movant "(aa) has either filed the complaint or made a motion [to be appointed lead plaintiff][2]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (2004) (footnote added);

(d)  Another member of the putative plaintiff class may rebut this presumption by submitting "proof . . . that the presumptively most adequate plaintiff . . . (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (2004) -- that is, by showing that the presumptively most adequate plaintiff does not satisfy the requirements of Rule 23, see also Fed. R. Civ. P. 23(a)(3), (4) (requiring that representative plaintiff demonstrate "typicality" and "adequacy");

---

[2] In this case, both Globis Capital and UFCW have moved for appointment as lead plaintiff, so they have both satisfied the requirement of item (aa).

2

(e)  Recognizing that "the statute thus simultaneously appears to make 'typicality' and 'adequacy' both part of the threshold identification of the presumptive lead plaintiff <u>and</u> the sole means of rebutting the lead plaintiff presumption," our Court of Appeals has clarified that "[t]he initial inquiry (i.e., the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a <u>prima facie</u> showing of typicality and adequacy" and that "arguments by members of the purported plaintiff class as to why [the movant with the largest financial losses] does not [satisfy the typicality and adequacy requirements] should be considered <u>only</u> in the context of assessing whether the presumption has been rebutted," <u>In re Cendant Corp. Litigation</u>, 264 F.3d 201, 263-64 (3d Cir. 2001);

(f)  UFCW alleges that it sustained a $96,565.89 loss on transactions in Stonepath shares, and Globis Capital does not challenge that calculation;

(g)  Globis Capital alleges that it lost $343,693.50 on Stonepath transactions, but UFCW insists that that figure overstates Globis Capital's loss because Globis Capital is an investment advisor, not an investor itself, and its loss calculation includes the losses of all of its clients, not only its own loss, <u>see</u> <u>Smith v. Suprema Specialties</u>, 206 F. Supp. 2d 627, 634-35 (D.N.J. 2002) (holding that StoneRidge Investment was not the most adequate plaintiff because its provision of separate account management services for the actual owners of securities

3

precluded its treatment as a "single person," especially when the actual owners did not authorize it to file suit on their behalf)[3];

    (h)  UFCW's entire argument assumes that Globis Capital did not own shares of Stonepath for its own benefit, but Paul Packer, the managing member of Globis Capital's general partner, has declared under penalty of perjury that Globis Capital is, in fact, "the beneficial owner of all the StonePath Group, Inc. . . . common stock shares described in Globis LP=s [sic] certification," Packer Decl. of Dec. 6, 2004, ¶ 2[4];

---

[3] We have reviewed the published decisions on which UFCW relies to challenge Globis Capital's alleged loss, but they are inapposite.  In In re Network Assocs. Sec. Litig., 76 F. Supp. 2d 1017 (N.D. Cal. 1999), the court denied "ING Investment Management"'s request to be appointed lead plaintiff in part because there was, "really, no such entity," see id. at 1027, but there is no dispute here that Globis Capital is an entity that actually exists.  In In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig., 209 F.R.D. 353 (S.D.N.Y. 2002), the court denied BPI's motion to be appointed lead plaintiff because it "failed to meet [its] burden of showing that BPI would be a proper representative," as required by Fed. R. Civ. P. 23(a)(4), see id. at 357-58, but the court did not hold that BPI could not be appointed lead plaintiff because an investment advisor cannot aggregate its clients' losses for purposes of determining whether the advisor is the most adequate plaintiff.

[4] As evidence that Packer has authority to bring this suit on behalf of Globis Capital, Globis Capital submitted the portions of its Limited Partnership Agreement (the "Agreement") describing the general partner's authority.  UFCW attempts to twist this limited submission into evidence that Globis Capital must be hiding something in the omitted portions of the Agreement, but we have reviewed the entire Agreement in camera and it only confirms the breadth of Packer's authority.  Even if we were to ignore the Agreement totally, however, Packer's Declaration of December 6, 2004 is independent (and sufficient) evidence from which we can find, for these purposes, that Globis Capital was the actual beneficial owner of the Stonepath shares in question.  UFCW has spilled much ink in its efforts to obscure this fact, but it has not submitted any evidence that Globis

4

(i)  Because UFCW has not submitted any evidence that would cause us to doubt Packer's declaration, it is not "genuinely contestable" that Globis Capital was the actual owner of the relevant Stonepath shares, see Cendant, 264 F.3d at 262;

(j)  As the actual owner, and in view of the limited partners' authorization of the general partner to bring this suit on their behalf, see Agreement § 2.02(p), (q), (r), Globis Capital did not require additional authority to commence this litigation;

(k)  Thus, UFCW's challenge to the computation of Globis Capital's alleged loss is without merit, and Globis Capital "has the largest financial interest in the relief sought by the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) (2004);

(l)  The final factor that we must consider before identifying the most adequate plaintiff is whether Globis Capital "otherwise satisfies the requirements of Rule 23," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) (2004); see also Cendant, 264 F.3d at 263 (explaining that "[t]he two provisions of that Rule that are relevant to this issue are 23(a)(3) and 23(a)(4)"); Fed. R. Civ. P. 23(a)(3) (typicality requirement); Fed R. Civ. P. 23(a)(4) (adequacy requirement)[5];

---

Capital was not the beneficial owner of the Stonepath shares.

[5]  At this stage of the analysis, we "will not consider . . . any arguments by other members of the putative class," instead addressing those allegations when "assessing whether the lead plaintiff presumption has been rebutted." Cendant, 264 F.3d at 264.

5

(m)   The typicality inquiry requires us to analyze whether Globis Capital's "circumstances . . . 'are markedly different or the legal theory upon which [its] claims . . . are based differ[] from that upon which the claims of other class members will perforce be based,'" Cendant, 264 F.3d at 265 (some alterations added) (quoting Hassine v. Jeffes, 846 F.2d 169, 177 (3d Cir. 1988));

(n)   Because Globis Capital was a Stonepath investor that seeks recovery under a fraud-on-the-market theory, we find that its circumstances and legal theory are both typical of the class's claims, see Fed. R. Civ. P. 23(a)(3);

(o)   The adequacy inquiry requires us to consider whether Globis Capital "'has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [its] claims and those asserted on behalf of the class,'" Cendant, 263 F.3d at 265 (some alterations added) (quoting Hassine, 846 F.2d at 179);

(p)   Globis Capital is a sophisticated investment partnership and its general partner has stated its willingness to assume "the duties and obligations required of a lead plaintiff," Packer Decl. of Dec. 6, 2004, ¶ 3, so we believe that it is able to represent the class vigorously;

(q)   As the class member with the largest alleged losses, Globis Capital has every incentive to represent the class vigorously;

6

JAN. 18. 2005  4:23PM    BERNARD M. GROSS, P. C.              NO. 9430   P. 9
JAN-18-2005  15:57       JUDGE DALZELL

(r)  Globis Capital has selected Bernstein Liebhard &
Lifshitz, LLP ("Bernstein Liebhard") as its lead counsel and the
Law Offices of Bernard M. Gross, P.C. as its liaison counsel, and
there is no reason to believe that these firms cannot adequately
and competently protect the class's interests[6];

(s)  Moreover, there is no conflict between the claims
that Globis Capital asserts and the claims of the other class
members because all seek recovery under identical legal theories;

(t)  Globis Capital, therefore, has made a prima facie
showing that it will fairly and adequately protect the interests
of the putative class;

(u)  Based on all of these considerations, see supra ¶¶
(f)-(t), Globis Capital is the presumptively most adequate
plaintiff, and we may turn to whether UFCW has rebutted the
presumption by submitting "proof" that Globis Capital "(aa) will
not fairly and adequately protect the interests of the class; or
(bb) is subject to unique defenses that render [it] incapable of

------------------

[6] As part of the adequacy inquiry, we must evaluate Globis
Capital's "ability . . . to negotiate a reasonable retainer
agreement with  . . . counsel." Cendant, 264 F.3d at 265.  In
its retainer agreement with Globis Capital, Bernstein Liebhard
promises to "apply for attorney fees of no more than 25% of any
recovery in this action."  Moreover, Globis Capital "reserves the
right to reduce the percentage by Bernstein Liebhard . . . if it
determines a lower percentage is warranted based on the results
of the case."  In short, the retainer agreement guarantees
nothing to Bernstein Liebhard, caps the potential fee at a
reasonable amount, and even permits Globis Capital to reduce the
fee below the amount that the Court awards.  These features
demonstrate that Globis Capital drove a hard bargain and reached
a reasonable retainer agreement.  We do not hesitate to hold that
its bargaining adequately protected the interests of the putative
class.

7

adequately representing the class,"  15 U.S.C. § 78u-
4(a)(3)(B)(iii)(II) (2004);

     (v)  UFCW argues that Globis Capital is subject to the
unique defense that it had access to material non-public
information because Packer is a securities analyst, who unlike
typical investors, "regularly confers with senior management and
participates on conference calls with public companies," UFCW
Reply at 2-3;

     (w)  Although Packer may have participated in
"conference calls," such participation would not have exposed him
to non-public information because conference calls are merely one
way in which corporations make information available to the
public[7];

     (x)  Packer's status as a securities analyst, by
itself, does not subject Globis Capital to a unique defense, and
UFCW has not suggested any other basis for rebutting the
presumption that Globis Capital is the most adequate lead
plaintiff; and

     (y)  Thus, we find that Globis Capital is the plaintiff
most capable of adequately representing the interests of the
class and shall appoint it as lead plaintiff and its attorneys as
class counsel, see 15 U.S.C. § 78u-4(a)(3)(B)(i), (v) (2004);

     It is hereby ORDERED that:

---

[7] There is no evidence that Packer "regularly confers with
senior management" outside of conference calls.

8

1.    Globis Capital's motion for leave to file reply memorandum is GRANTED AS UNOPPOSED;

2.    The Clerk shall DOCKET Globis Capital's reply memorandum;

3.    UFCW's motion for leave to file reply memorandum is GRANTED AS UNOPPOSED;

4.    The Clerk shall DOCKET UFCW's reply memorandum and the Declaration of Marc S. Henzel dated December 23, 2004 in a single docket entry;

5.    The Kuch Group's motion for appointment as lead plaintiff is DENIED;

6.    UFCW's motion for appointment as lead plaintiff is DENIED;

7.    Globis Capital's motion for appointment as lead plaintiff is GRANTED;

8.    Globis Capital Partners, L.P. is APPOINTED lead plaintiff in this case;

9.    Globis Capital's selections of Bernstein Liebhard & Lifshitz, LLP as lead class counsel and the Law Offices of Bernard M. Gross, P.C. as liaison counsel are APPROVED;

10.    The Clerk shall TERMINATE the appearances of all counsel in this case, except for counsel for the defendants;

11.    By February 16, 2005, Globis Capital shall FILE an amended class action complaint and all of its counsel shall ENTER their appearances; and

12.  By March 16, 2005, defendants shall RESPOND to the
amended class action complaint.


BY THE COURT:


Stewart Dalzell, J.


·10

EXHIBIT D

# BERNSTEIN LIEBHARD & LIFSHITZ, LLP

### ATTORNEYS AT LAW

## 10 EAST 40TH STREET
## NEW YORK, NEW YORK 10016

(212) 779-1414
FAX: (212) 779-3218
www.bernlieb.com

STANLEY D. BERNSTEIN
SANDY A. LIEBHARD
MEL E. LIFSHITZ
KEITH M. FLEISCHMAN
JEFFREY M. HABER
ROBERT J. BERG*
FRANCIS P. KARAM▼
REBECCA M. KATZ
U. SETH OTTENSOSER
WILLIAM A. K. TITELMAN▲

OF COUNSEL
TIMOTHY J. MacFALL
MARK T. MILLKEY
FELECIA L. STERN

ABRAHAM I. KATSMAN•
MICHAEL S. EGAN•
MARY U. HOOVER
RONALD J. ARANOFF
DANIELLE MAZZINI-DALY
BRIAN S. COHEN
GREGORY M. EGLESTON
JOSEPH R. SEIDMAN, JR.
ALDEN W. VEDDER
MICHAEL S. BIGIN
STEPHANIE M. BEIGE
ANDREA H. WILLIAMS•
JESSICA L. FRANCISCO
THERESA A. VITELLO•••
BRETT M. LOGAN
RUSSELL M. IGER
ALIXANDRA R. BLITZ*
JEFFREY D. LERNER•••

*ALSO ADMITTED IN NJ
▼ALSO ADMITTED IN PA
▲ADMITTED ONLY IN PA
•••ADMITTED ONLY IN NJ & PA

September 16, 2005

**BY HAND**

The Honorable Keith P. Ellison
United States District Judge
United States Courthouse
515 Rusk Street, Room 8631
Houston, Texas 77002

     Re:    *Legion Partners, LLP v. Willbros Group, Inc., et al.*
             <u>Civil Action No. 4:05-cv-1778 (KPE)</u>

Dear Judge Ellison:

    We represent lead plaintiff movant ADAR Investment Management LLC ("ADAR") in the above-referenced matter. Pursuant to our conversation with the Court's chambers this morning, we are enclosing herewith a copy of ADAR's Investment Management Agreement for the Court's confidential *in camera* review. We are serving counsel of record with a copy of this cover letter only since ADAR's investment agreement is highly confidential and proprietary to ADAR.

                             Respectfully submitted,

                             Ronald J. Aranoff

cc: Counsel of Record (via email without enclosure)

Enclosure

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Legion Partners, LLP, On Behalf of Itself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-05-1778 |
| | § | |
| Willbros Group, Inc., | § | |
| Michael F. Curran, | § | |
| Warren L. Williams, | § | |
| Larry J. Bump, | § | |
| and | § | |
| James K. Tillery, | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| Donald Meister, Individually and On Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-05-1834 |
| | § | |
| Willbros Group, Inc., | § | |
| Michael F. Curran, | § | |
| Larry J. Bump, | § | |
| Warren L. Williams, | § | |
| and | § | |
| J. Ken Tillery, | § | |
| | § | |
| Defendants. | § | |

[Caption continued on following page]


**MEMORANDUM AND ORDER**



Larry West, Individually and On Behalf of §
All Others Similarly Situated, §
§
  Plaintiff, §
VS. §  CIVIL ACTION NO. H-05-1893
§
Willbros Group, Inc., §
Warren L. Williams, §
Michael F. Curran, §
and §
James K. Tillery, §
§
§
  Defendants. §

Richard J. Lebrun, Individually and On §
Behalf of All Others Similarly Situated, §
§
  Plaintiff, §
VS. §  CIVIL ACTION NO. H-05-2136
§
Willbros Group, Inc., §
Michael F. Curran, §
Larry J. Bump, §
Warren L. Williams, §
and §
J. Ken Tillery, §
  Defendants. §

## MEMORANDUM AND ORDER

All Plaintiffs in this case seek consolidation of their class action claims. Both Plaintiff ADAR Investment Management, LLC ("ADAR") and, collectively, Plaintiffs Michigan Laborers' Pension Fund, Massachusetts State Carpenters Pension Fund, and Massachusetts State Guaranteed Annuity Fund (the "Pension Fund Group") seek to be

appointed lead Plaintiff. After considering the parties' filings and the applicable law, the Court hereby orders as follows:

### Consolidation of Cases

The above-captioned securities fraud class actions pending in this Judicial District are hereby consolidated for all purposes pursuant to FED. R. CIV. P. 42(a). Any related actions that have been filed, or may be filed, and that may be considered herewith, are collectively referred to as "In re Willbros Group, Inc. Securities Litigation."

### Master Docket and Master File

A Master File is hereby established for the consolidated proceedings in the consolidated actions. The docket number for the Master File shall be Master File No. 05-CV-1778. The original of this Order shall be filed by the Clerk in the Master File. The Clerk shall mail a copy of this Order to counsel of record in each of these consolidated actions.

A Master Docket is hereby established for consolidated proceedings of the securities fraud actions consolidated herein and for any related securities fraud actions filed in or transferred to this Court and consolidated herewith for all purposes (hereinafter, the "Consolidated Action"). Entries in the Master Docket shall be applicable to the Consolidated Action as more fully set forth below. The Clerk of the Court shall file all pleadings in any of the actions in the Master File and shall note such filing in the Master Docket. No further copies need be filed or docket entries made.

The terms of this Order shall not have the effect of making any person, firm, or corporation a party to any action in which he, she, or it has not been named, served, or added as such in accordance with the Federal Rules of Civil Procedure.

## Newly Filed or Subsequently Filed or Transferred Actions

If a securities fraud action related to the same subject matters as this Consolidated Action is hereafter filed in this Court or transferred here from another Court, the Clerk of this Court shall:

(1) File a copy of this Order in the separate file for such action;

(2) Notify all counsel of record in the filing or transfer of such action;

(3) Make an appropriate entry in the Master Docket;

(4) Mail to counsel of record in the newly filed or transferred case a copy of this Order; and

(5) Upon the first appearance of any new Defendant, mail to the attorneys for that Defendant a copy of this Order.

All counsel shall assist the Clerk of the Court by calling to the Clerk's attention the filing or transfer of any case that might properly be consolidated with this Consolidated Action.

This Order shall apply to each securities fraud action that is subsequently filed in or transferred to this Court, or consolidated with any of these actions, that arises out of or is related to the same facts and claims alleged in the complaints in the Consolidated Action, unless a party objecting to the consolidation of such case or to any provision of this Order shall, within ten (10) days after the date upon which a copy of this Order is mailed to counsel for such party, file an application for relief from this Order or any provision herein and this Court shall deem it appropriate to grant the application.

Unless a Plaintiff in a subsequently filed or transferred case is permitted by the Court to utilize a separate complaint, Defendants shall not be required to answer, plead, or otherwise move with respect to the complaint in any such case. If a Plaintiff in any

such case is permitted to utilize a separate complaint, each Defendant shall have thirty (30) days within which to answer, plead, or otherwise move with respect to any such complaint.

### Caption of Cases

Every pleading in this Consolidated Action shall bear the following caption:

| | | |
|---|---|---|
| IN RE WILLBROS GROUP, INC. | § | |
| SECURITIES LITIGATION | § | Master File No. |
| | § | 05-CV-1778 |
| | § | |
| This Document Relates To: | § | |
| | § | |

When a document is intended to be applicable to all actions to which this Order is applicable, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set forth above. When a document is intended to be applicable to some, but not all, actions to which this Order is applicable, immediately after the words "This Document Relates To:" in the caption set forth above, there shall appear "Civil Action No. [insert number] [insert name of plaintiff]."

### Appointment of Lead Plaintiff

Class member ADAR Investment Management, LLC ("ADAR") is hereby appointed lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78(a) *et seq.* This appointment is without prejudice to Defendants' right to challenge ADAR's adequacy, typicality, or ability to represent the absent class members in this Consolidated Action, or the propriety of this case's being certified as a class action.

## <u>Organization of Plaintiffs' Counsel</u>

Lead Plaintiff's selection of Bernstein Liebhard & Lifshitz, LLP as lead counsel ("Lead Counsel") and Hoeffner & Bilek, L.L.P. as liaison counsel for all Plaintiffs and the Class in this Consolidated Action is approved. Lead Counsel are hereby vested by the Court with the following responsibilities and duties in connection with this Consolidated Action:

(1) To direct and coordinate the briefing and argument of motions;

(2) To direct and coordinate the initiation and conduct of discovery proceedings, including, but not limited to, requests for production of documents and/or third party subpoenas;

(3) To direct and coordinate the examination of witnesses in depositions and oral interrogatories;

(4) To act as spokesperson at pretrial conferences;

(5) To call meetings of Plaintiffs' counsel as appropriate or necessary from time to time;

(6) To direct the preparation for a trial of this matter and to delegate work responsibilities to selected counsel as may be required, in such a manner as to lead to the orderly and efficient prosecution of this litigation and avoid duplicative or unproductive effort;

(7) To direct and coordinate the conduct of pre-trial, trial, and post-trial proceedings;

(8) To consult with and employ experts;

(9) To coordinate and collect monthly time and expense reports from all of Plaintiffs' attorneys in this Consolidated Action;

(10) To initiate and conduct all settlement negotiations with counsel for Defendants; and

(11) To perform such other duties as may be expressly authorized by further order of the Court.

No motion, request for discovery, or other pre-trial proceeding shall be initiated or filed by any Plaintiff except through Lead Counsel. Defendants' counsel may rely upon all agreements made with Lead Counsel, and such agreements shall be binding upon all Plaintiffs in this Consolidated Action.

Lead Counsel are hereby designated as the Plaintiffs' counsel upon whom all notices, orders, pleadings, motions, discovery, and memoranda may be served. Defendants shall effect service of papers upon Plaintiffs by serving Bernstein Liebhard & Lifshitz, LLP, 10 East 40th Street, New York, New York, 10016, and Hoeffner & Bilek, L.L.P., 1000 Louisiana, Suite 1302, Houston, Texas, 77002. If Defendants file a single pleading or other paper directed to all Plaintiffs in this Consolidated Action, the response on behalf of Plaintiffs shall be made in a single pleading or other paper to be served by Lead Counsel. All Plaintiffs in this Consolidated Action shall be bound by that pleading or paper. The organizational structure established by this Order shall bind counsel for Plaintiffs in this Consolidated Action and any subsequently filed cases consolidated therewith.

ADAR, through Lead Counsel, shall file a consolidated class action Complaint ("Consolidated Complaint") within 45 days of the entry of this Order. Defendants shall

answer or otherwise respond to the Consolidated Complaint within 45 days after its service.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 20th day of October, 2005.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**