UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

BRICKMAN INVESTMENTS, INC.,                : Civil Action No. 1:07-cv-11086-DAB
Individually and On Behalf of All Others   :
Similarly Situated,                        : CLASS ACTION
                                           :
                          Plaintiff,       :
                                           :
        vs.                                :
                                           :
SECURITY CAPITAL ASSURANCE LTD.,           :
et al.,                                    :
                                           :
                          Defendants.      :
                                           :
_____ 
2 WEST, INC., On Behalf of Itself and All   : Civil Action No. 1:07-cv-11358-DAB
Others Similarly Situated,                 :
                                           : CLASS ACTION
                          Plaintiff,       :
                                           :
        vs.                                :
                                           :
SECURITY CAPITAL ASSURANCE LTD.,           :
et al.,                                    :
                                           :
                          Defendants.      :
                                           :
_____ x

MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF UNITED FOOD &
COMMERCIAL WORKERS UNION LOCAL 655, AFL-CIO, FOOD EMPLOYERS JOINT
PENSION PLAN AND DISTRICT NO. 9, I.A. OF M. & A.W. PENSION TRUST FOR
CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS AND FOR APPROVAL OF
SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING
MOTIONS

---------------------------------------x

ROBERT CLARKE, Individually and On
Behalf of All Others Similarly Situated,

                Plaintiff,

    vs.

SECURITY CAPITAL ASSURANCE LTD.,
et al.,

              Defendants.

---------------------------------------x

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:08-cv-00158-DAB

<u>CLASS ACTION</u>

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ........................................................................1

II.    ARGUMENT ...............................................................................................3

    A.    The PSLRA's Lead Plaintiff Provisions ..................................................3

    B.    United Food & Commercial Workers Pension Plan and District No. 9
          Pension Trust Have the Largest Financial Interest of Any Applicant that
          Also Satisfies the Requirements of Rule 23 ............................................4

    C.    The Other Motions for Lead Plaintiff Should Be Denied.........................4

          1.    Rhode Island System Is An Inadequate Lead Plaintiff ................5

          2.    HGK Is An Inadequate Lead Plaintiff ........................................6

                 a.    HGK Has Already Demonstrated Its Inability to
                        Adequately Represent a Class of Investors.....................................6

                 b.    HGK Is Only Seeking to Represent a Class of Bondholders...........7

                 c.    HGK Has Overstated Its Financial Interest in this Litigation..........9

III.    CONCLUSION.............................................................................................10

# TABLE OF AUTHORITIES

Page

## CASES

*Aronson v. McKesson HBOC, Inc.*,
    79 F. Supp. 2d 1146 (N.D. Cal. 1999) ...............................................................8

*Brown v. Biogen IDEC, Inc.*,
    No. 05-10400-RCL, 2005 U.S. Dist. LEXIS 19350
    (D. Mass. July 26, 2005) ...................................................................................6

*Fishbury, Ltd. v. Connetics Corp.*,
    No 06 Civ. 11496 (SWK), 2006 U.S. Dist. LEXIS 90696
    (S.D.N.Y. Dec. 14, 2006) ..................................................................................8

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004).........................................................................3, 7, 8

*In re Baan Co. Sec. Litig.*,
    186 F.R.D. 214 (D.D.C. 1999).........................................................................6

*In re Cable & Wireless, PLC, Sec. Litig.*,
    217 F.R.D. 372 (E.D. Va. 2003) .....................................................................1

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
    458 F. Supp. 2d 455 (E.D. Mich. 2006)..........................................................8

*In re Enron Corp. Secs. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002).....................................................................8

*In re Global Crossing, Ltd. Sec. Litig.*,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003)..............................................................8

*In re MicroStrategy Sec. Litig.*,
    110 F. Supp. 2d 427 (E.D. Va. 2000) ..............................................................9

*In re NeoPharm, Inc. Sec. Litig.*,
    No. 02 C 2976, 2004 U.S. Dist. LEXIS 5814
    (N.D. Ill. Apr. 8, 2004) ...................................................................................7

*In re Smith Barney Transfer Agent Litig.*,
    No. 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728
    (S.D.N.Y. Apr. 17, 2006)..................................................................................7

**Page**

*In re Surebeam Corp. Secs. Litig.*,
    No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022
    (S.D. Cal. Jan. 5, 2004) .................................................................................8

*In re Tyco Int'l, Ltd. Secs. Litig.*,
    No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 13390
    (D.N.H. Aug. 17, 2000) ...............................................................................8

*In re Williams Securities Litigation*,
    Case No. 02-CV-72-H(M) (N.D. Okla.) ....................................................2, 6

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) ................................................................7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(3)(B)(iii)(I).................................................................................1, 4
    §78u-4(a)(3)(B)(iii)(II) ...............................................................................1, 4
    §78u-4(a)(3)(B)(iii)(II)(aa) .............................................................................4
    §78u-4(a)(3)(B)(iii)(II)(bb)..............................................................................4
    §78u-4(a)(3)(B)(iv) ..........................................................................................6

Federal Rules of Civil Procedure
    Rule 23 ...................................................................................................1, 4, 7

**LEGISLATIVE HISTORY**

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679..................................8

Institutional Investors United Food & Commercial Workers Union Local 655, AFL-CIO, Food Employers Joint Pension Plan ("United Food & Commercial Workers Pension Plan") and District No. 9, I.A. of M. & A.W. Pension Trust ("District No. 9 Pension Trust") respectfully submit this memorandum of law in further support of their motion for consolidation of the above-captioned related actions, appointment as Lead Plaintiffs, approval of their selection of the law firm of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") to serve as Lead Counsel and in opposition to the competing motions.

## I.    PRELIMINARY STATEMENT

On February 5, 2008, three motions were filed seeking appointment of the respective movants as Lead Plaintiff in these related actions.  All of the movants agree that, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the "person or group of persons" with the largest financial interest in the relief sought by the class that otherwise satisfies the requirements of Fed. R. Civ. P. 23 ("Rule 23") is afforded a presumption that it is the "most adequate plaintiff." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The movants also agree that this presumption can be ***rebutted*** by demonstrating that the presumptively "most adequate plaintiff" cannot fairly and adequately represent the class, or is "***subject to unique defenses***."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (emphasis added).

United Food & Commercial Workers Pension Plan and District No. 9 Pension Trust do not dispute that the Employees' Retirement System of the State of Rhode Island ("Rhode Island System") appears to have the largest financial interest among the movants.  However, the size of a movant's financial interest is only one step in the analysis of who should be appointed Lead Plaintiff. *See In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003) ("[A] movant's financial interest is just a beginning point, and courts acknowledge that they must also consider the movant's ability and willingness to adequately represent the class.").

- 1 -

Indeed, despite its larger claimed financial interest, Rhode Island System is inadequate to serve as Lead Plaintiff in this case because it is subject to a unique defense. As detailed herein, defendant Security Capital Assurance Ltd. ("Security Capital Assurance" or the "Company"), and/or its subsidiary XL Capital Assurance, are authorized to, and appear to, conduct business in the State of Rhode Island insuring various bond offerings. *See* Exhibit A, attached hereto. In this capacity, Security Capital Assurance and/or one of its subsidiaries likely insures municipal bonds that have been issued by the State of Rhode Island or an entity with which it is affiliated. As such, Rhode Island System will be conflicted in vigorously pursuing claims against Security Capital Assurance – which is already in a precarious financial state – because of its concern about the impact that any significant judgment against Security Capital Assurance would have on the Rhode Island municipal bonds that are insured by Security Capital Assurance. In other words, because of its municipal bonds, it might not be in Rhode Island System's best interest to maximize the recovery for the class here. Indeed, Security Capital Assurance's role as a municipal bond insurer for many states and municipalities is perhaps the reason why no other public pension fund, other than Rhode Island System, has sought appointment as Lead Plaintiff here. Thus, Rhode Island System's motion to be appointed Lead Plaintiff should be denied.

HGK Asset Management, Inc. ("HGK"), the other movant, is also an inadequate Lead Plaintiff. First, it has already demonstrated its inability to serve as a fiduciary to a class of investors. After serving for two years as the sole lead plaintiff for investors in the securities class action against Williams Companies – *In re Williams Securities Litigation*, Case No. 02-CV-72-H(M) (N.D. Okla.) (the "Williams Litigation") – it inexplicably withdrew from its service as Lead Plaintiff, causing great harm to the class in that case through unnecessary delay and expense. *See* Exhibit B, attached hereto ("For reasons unrelated to the merits of the litigation, HGK has decided that it no longer

wishes to assume the responsibilities of Lead Plaintiff in this litigation"). There are simply no assurances that, if appointed as Lead Plaintiff here, HGK would not similarly decide to abandon its representation of the class at some later point. HGK is thus inadequate to serve as a Lead Plaintiff and its appointment as such would certainly not be in the best interests of the class.

Moreover, HGK is only seeking to be appointed Lead Plaintiff on behalf of the bondholder class and not the class of investors as a whole. This effort at splintering the class has repeatedly been rejected by the courts, including the Second Circuit. *See Hevesi v. Citigroup Inc.,* 366 F.3d 70, 82 (2d Cir. 2004) ("[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action."). Since there is no need for a Lead Plaintiff to represent every discrete security of the Company, the Court should respectfully deny HGK's request to appoint it as Lead Plaintiff for a subclass of the purchasers of Security Capital Assurance bonds.

Lastly, the financial interest claimed by HGK in its motion has been grossly overstated, and, without more information on its trades, it is simply impossible to determine what its precise financial interest in this litigation really is.

For these reasons, and as set forth herein in further detail, it is respectfully submitted that the motion of United Food & Commercial Workers Pension Plan and District No. 9 Pension Trust be granted in full and the competing motions be denied.

## II. ARGUMENT

### A. The PSLRA's Lead Plaintiff Provisions

In determining who, among those who timely filed lead plaintiff motions, is the most adequate plaintiff, the PSLRA provides that:

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or ***group of persons*** that –

- 3 -

\*    \*    \*

(bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; *and*

(cc)  *otherwise satisfies the requirements of Rule 23* of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)  (emphasis added).   The PSLRA's most adequate plaintiff presumption may be rebutted by proof that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is *subject to unique defenses* that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa) & (bb) (emphasis added).

As detailed below, the motions of the other movants should be denied because they are either subject to unique defenses or are otherwise inadequate.

**B.    United Food & Commercial Workers Pension Plan and District No. 9 Pension Trust Have the Largest Financial Interest of Any Applicant that Also Satisfies the Requirements of Rule 23**

Based upon the submissions of the respective movants, United Food & Commercial Workers Pension Plan and District No. 9 Pension Trust are the "*most* adequate plaintiff."  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)-(II) (emphasis added).  In addition to having the largest financial interest of any *bona fide* movant, their claims are typical of the claims of the class because their claims arise from the same course of events and are based on the same legal theories as the claims of all other investors in Security Capital Assurance stock.  Thus, United Food & Commercial Workers Pension Plan and District No. 9 Pension Trust's motion should be granted.

**C.    The Other Motions for Lead Plaintiff Should Be Denied**

While the other movants purport to claim a financial interest that is larger than the financial interest claimed by United Food & Commercial Workers Pension Plan and District No. 9 Pension

Trust, their motions must nevertheless be denied because they are subject to unique defenses and cannot adequately represent the interests of the class in these related actions.

### 1.    Rhode Island System Is An Inadequate Lead Plaintiff

Rhode Island System is the retirement system for the employees of the State of Rhode Island.[1] The State of Rhode Island, like other states, routinely issues bonds to raise money for its capital projects. These bonds are generally insured by insurance companies in order to obtain a more favorable bond rating from a rating agency, making the bonds more attractive to investors.

Security Capital Assurance and its subsidiary, XL Capital Assurance, guarantee U.S. municipal bonds and are authorized to conduct business in Rhode Island. As an insurer of municipal bonds, Security Capital Assurance and/or one its subsidiaries likely insures several municipal bonds issued directly by the State of Rhode Island or entities, including municipalities, closely associated with the State of Rhode Island. *See* Exhibit A.

This relationship between the State of Rhode Island and Security Capital Assurance/XL Capital Assurance makes Rhode Island System an inadequate Lead Plaintiff. Rhode Island System will be hard-pressed to maintain its fiduciary obligation to the class in vigorously pursuing claims against Security Capital Assurance, knowing that a large recovery might have a disastrous effect on the insurance that Security Capital Assurance provides on its municipal bonds. In other words, it might not be in Rhode Island System's best interests to maximize the recovery for the class here.

---

[1] The overlapping relationship between the State of Rhode Island and Rhode Island System is evident from the fact that the State General Treasurer, Frank T. Caprio, serves as Chairman of the Board of Directors of Rhode Island System and the certification submitted in this case on behalf of Rhode Island System was signed by the Chief of Staff/Chief Legal Counsel of the Office of the General Treasurer.

*See e.g., In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 218 (D.D.C. 1999) (suggesting that "it may be in the class members' interest to settle for less . . . to preserve the Company's viability").

Moreover, because Rhode Island System appears to maintain an ongoing business relationship with Security Capital Assurance, it may seek to take advantage of information obtained during discovery to benefit its own interests, rather than focusing on protecting the interests of the class. Rhode Island System is therefore inadequate to serve as Lead Plaintiff here.[2]

## 2.    HGK Is An Inadequate Lead Plaintiff

### a.    HGK Has Already Demonstrated Its Inability to Adequately Represent a Class of Investors

HGK's motion here should be denied because of its prior conduct as Lead Plaintiff on behalf of the class in the Williams Litigation. In that action, HGK was appointed as a Lead Plaintiff on behalf of purchasers of Williams Companies stock. *See In re Williams Sec. Litig.*, Case No. 02-CV-72-H(M), 2002 WL 32153476 (N.D. Okla. July 8, 2002) (attached hereto as Exhibit C). For the two years that followed, HGK served as the Lead Plaintiff, filing an amended complaint and proceeding with discovery. Then, on August 30, 2004, HGK surprisingly had a change of heart about its interest in pursuing claims on behalf of the class. At that time, it filed a motion and memorandum seeking its withdrawal as Lead Plaintiff and withdrawal of its counsel as Lead Counsel. *See* Exhibit B. In explaining its actions, HGK simply said as follows:

> For reasons unrelated to the merits of the litigation, HGK has decided that it no longer wishes to assume the responsibilities of Lead Plaintiff in this litigation. . . .

---

[2]  In light of the serious concerns raised about the State of Rhode Island's relationship with Security Capital Assurance and/or XL Capital Assurance, the Court should permit limited discovery of Rhode Island System on this issue. *See Brown v. Biogen IDEC, Inc.*, No. 05-10400-RCL, 2005 U.S. Dist. LEXIS 19350, at *7 (D. Mass. July 26, 2005) (quoting 15 U.S.C. §78u-4(a)(3)(B)(iv)) (allowing discovery of lead plaintiff movant when a movant sets forth "a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class").

*Id*. at 1.

If HGK is appointed as a Lead Plaintiff in these actions, the class would be at risk of losing its Lead Plaintiff at a later stage of the litigation if HGK "decided that it no longer wishes to assume the responsibilities of Lead Plaintiff in this action."  HGK is therefore inadequate to serve as a Lead Plaintiff and its appointment as such would certainly not be in the best interests of the class.  Its later withdrawal could throw the case into turmoil, requiring the location and appointment of a new Lead Plaintiff and new Lead Counsel – proceedings that take time and cause delay – especially if new lead counsel must get up to speed on the case.  *See, e.g., In re NeoPharm, Inc. Sec. Litig*., No. 02 C 2976, 2004 U.S. Dist. LEXIS 5814, at *9 (N.D. Ill. Apr. 8, 2004) (discussing the "delay" and "uncertainty" caused by a sole lead plaintiff's withdrawal).

### b. HGK Is Only Seeking to Represent a Class of Bondholders

HGK is not seeking to represent the entire interests of the class here; rather, it is seeking to be appointed solely to represent the interests of bondholders.  The need for separate lead plaintiffs has long been rejected by courts, especially in recent years, because the PSLRA did not eliminate traditional representative plaintiffs under Rule 23.  *See Hevesi*, 366 F.3d at 82 ("[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action."); *see also In re Smith Barney Transfer Agent Litig*., No. 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728, at *11 (S.D.N.Y. Apr. 17, 2006) (quoting *Hevesi*, 366 F.3d at 83, n.13) ("Any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff – namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole."); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 254 (S.D.N.Y. 2003) (rejecting the argument that there should be separate lead plaintiffs for Securities Act and Securities

Exchange Act claims and stating, "at this stage only one Lead Plaintiff is necessary. Designating multiple Lead Plaintiffs to represent each cause of action would fracture the litigation. . .").[3]

"Also, considering that the role of the lead plaintiff is 'to empower investors so that they – not their lawyers – exercise primary control over private securities litigation,' S. Rep. No. 104-98, at 4 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683, any requirement that a different lead plaintiff be appointed to bring every single available claim ***would contravene the main purpose of having a lead plaintiff – namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole***." *Hevesi*, 366 F.3d at 82, n.13 (emphasis added); *In re Tyco Int'l, Ltd. Secs. Litig.*, No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 13390, at *25, n.14 (D.N.H. Aug. 17, 2000) ("[T]he statute seems to contemplate, even in consolidated actions such as this, the appointment of a lead plaintiff for a single purported plaintiff class"); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150-51 (N.D. Cal. 1999).

Thus, HGK's attempt to create a subclass of bond purchasers should be denied.

---

[3]  *See also Fishbury, Ltd. v. Connetics Corp.*, No 06 Civ. 11496 (SWK), 2006 U.S. Dist. LEXIS 90696, at *12 (S.D.N.Y. Dec. 14, 2006) ("It is well settled law in this Circuit that the lead plaintiff in a securities class action need not have standing to sue on all causes of action raised in the underlying class complaint."); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 204-05 (S.D.N.Y. 2003) ("[n]othing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes and subclasses of holders of different categories of security at issue in the case"); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 458 F. Supp. 2d 455 (E.D. Mich. 2006) (rejecting motion of investor seeking appointment as separate lead plaintiff for preferred securities purchasers); *In re Surebeam Corp. Secs. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *29-*30 (S.D. Cal. Jan. 5, 2004) (rejecting the argument that different lead plaintiffs are necessary for claims under the Securities Act and the Exchange Act despite the fact that the two acts "involve[] different showings of scienter and proof"); *In re Enron Corp. Secs. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) (holding that the PSLRA "authorizes the appointment of one Lead Plaintiff or small cohesive group for a single class" and denying the request of competing movants who sought to be appointed co-lead plaintiffs for discrete Enron securities for which they had standing).

c.      **HGK Has Overstated Its Financial Interest in this Litigation**

Lastly, HGK's motion should be denied because it grossly exaggerated its financial interest in this case. First, in calculating its financial interest, it included a purchase on March 29, 2007 that is outside the Class Period specified in the complaints. Second, there has been insufficient information provided to fully determine the precise size of its financial interest. Based on what information is provided, however, HGK's losses are overstated. For example, as set forth in its certification, HGK claims that, on August 28, 2007, it purchased 250,000 units of 6.880 12/31/49-17 Security Assurance Securities (the "6.880 Security") at a price of $0.9374 per unit and, on November 28, 2007, it purchased 2,000,000 units of the 6.880 Security at a price of $0.50 per unit. In other words, it paid $234,350 on August 28, 2007 and received $250,000 worth of the 6.880 Security and it paid $1 million on November 28, 2007 and received $2 million worth of the 6.880 Security. In total, HGK owned 2,250,000 units of the 6.880 Security for which it paid $1,234,350. At the end of the Class Period, the value of HGK's 6.880 Security was approximately $562,500 (this number is approximated because its true value is not disclosed by HGK). Its losses are therefore no greater than $671,850, dramatically less than the $2.5 million it reported in its motion. The chart below illustrates HGK's financial interest:

| Purchase | Units | Price | Proceeds | Sale | Units | Approximate Value at End Of Class Period | Proceeds | Loss |
|---|---|---|---|---|---|---|---|---|
| 8/28/2007 | 250,000 | $0.9374 | $234,350 | held | 250,000 | $0.25 | $62,500 | |
| 11/28/2007 | 2,000,000 | $0.5000 | $1,000,000 | | 2,000,000 | $0.25 | $500,000 | |
| | 2,250,000 | | $1,234,350 | | 2,250,000 | | $562,500 | ($671,850) |

Since its financial interest has been grossly overstated, and there has been inadequate information to fully calculate its true financial interest, HGK's motion should be denied on this basis as well. *See In re MicroStrategy Sec. Litig.*, 110 F. Supp. 2d 427, 436 (E.D. Va. 2000) (denying the

lead plaintiff application of movant because it failed to submit evidence whereby the court could reach a "confident conclusion that its loss was as large as it averred"). Indeed, for all the foregoing reasons, HGK's motion should be denied.

## III.    CONCLUSION

For all the foregoing reasons, United Food & Commercial Workers Pension Plan and District No. 9 Pension Trust respectfully request that the Court: (i) consolidate the Actions; (ii) appoint them as Lead Plaintiffs in the Actions; (iii) approve their selection of Lead Counsel as set forth herein; and (iv) grant such other relief as the Court may deem just and proper.

DATED:  February 25, 2008                    COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP


                                               /s/ David A. Rosenfeld
                                          ———————————————————————
                                               DAVID A. ROSENFELD

                                          SAMUEL H. RUDMAN
                                          DAVID A. ROSENFELD
                                          MARIO ALBA, JR.
                                          58 South Service Road, Suite 200
                                          Melville, NY 11747
                                          Telephone: 631/367-7100
                                          631/367-1173 (fax)

                                          [Proposed] Lead Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I, David A. Rosenfeld, hereby certify that, on February 25, 2008, I caused a true

and correct copy of the attached:

> Memorandum in Further Support of the Motion of United Food & Commercial
> Workers Union Local 655, AFL-CIO, Food Employers Joint Pension Plan and
> District No. 9, I.A. of M. & A.W. Pension Trust for Consolidation, Appointment
> as Lead Plaintiffs and for Approval of Selection of Lead Counsel and in
> Opposition to the Competing Motions,

to be served: (i) electronically on all counsel registered for electronic service for this

case; and (ii) by first-class mail to any additional counsel.


                                                    _/s/ David A. Rosenfeld_____
                                                    David A. Rosenfeld

SECURITY CAPITAL ASSURANCE 07
Service List - 2/25/2008    (07-0272)
Page 1 of  2

**Counsel For Defendant(s)**

Howard G. Sloane
David G. Januszewski
Cahill Gordon & Reindel LLP
80 Pine Street
New York, NY  10005-1702
    212/701-3000
    212/269-5420 (Fax)

James B. Weidner
Jeff E. Butler
Clifford Chance US LLP
31 West 52nd Street
New York, NY  10019
    212/878-8000
    212/878-8375 (Fax)

Mark P. Goodman
Elliot  Greenfield
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY  10022
    212/909-6000
    212/909-6836 (Fax)

**Counsel For Plaintiff(s)**

Jack G. Fruchter
Abraham, Fruchter & Twersky
One Pennsylvania Plaza, Suite 2805
New York, NY  10119
    212/279-5050
    212/279-3655 (Fax)

Sandy A. Liebhard
Gregory M. Egleston
Joseph R. Seidman, Jr.
Bernstein Liebhard & Lifshitz, LLP
10 East 40th Street
New York, NY  10016
    212/779-1414
    212/779-3218 (Fax)

Evan J. Smith
Brodsky & Smith, LLC
240 Mineola Blvd., 1st Floor
Mineola, NY  11501
    516/741-4977
    516/741-0626 (Fax)

Samuel H. Rudman
David A. Rosenfeld
Mario  Alba, Jr.
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY  11747
    631/367-7100
    631/367-1173 (Fax)

SECURITY CAPITAL ASSURANCE 07

Service List - 2/25/2008     (07-0272)

Page 2 of  2

Richard A. Maniskas
D. Seamus Kaskela
David M. Promisloff
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA  19087
   610/667-7706
   610/667-7056 (Fax)


Ashley  Kim
Christopher  Lometti
Schoengold, Sporn, Laitman & Lometti, P.C.
19 Fulton Street, Suite 406
New York, NY  10038
   212/964-0046
   212/267-8137 (Fax)


Kevin M. McGee
Zwerling, Schachter & Zwerling, LLP
595 South Federal Highway, Suite 600
Boca Raton, FL  33432
   561/544-2500
   561/544-2501 (Fax)


Richard A. Speirs
Zwerling, Schachter & Zwerling, LLP
41 Madison Avenue, 32nd Floor
New York, NY  10010
   212/223-3900
   212/371-5969 (Fax)

14 of 17 DOCUMENTS

Copyright 2006 Financial Times Information
All Rights Reserved
Global News Wire
Copyright 2006 Thomson Media Inc
The Bond Buyer

June 5, 2006 Monday

**ACC-NO:** A200606125B-11566-GNW

**LENGTH:** 345 words

**HEADLINE:** A1-RATED RISD EARNS STABLE OUTLOOK FROM MOODY'S AHEAD OF $40M SALE

**BYLINE:** Adam L. Cataldo

**BODY:**

Moody's Investors Service on Friday assigned an underlying rating of A1 to the Rhode Island School of Design's upcoming sale of more than $40 million in revenue bonds over two separate series later this month. The agency also revised its outlook on the credit to stable from negative in response to RISD's "smaller than initially anticipated borrowing, lack of additional borrowing plans, solid student market position and two years of financial resource growth aided by healthy investment returns," according to the agency's report.

The Rhode Island Health and Educational Building Corp. is conduit issuer on the deal. UBS Securities LLC is underwriter, Partridge Snow & Hahn LLP is bond counsel, and Public Financial Management is financial adviser. CIFG Assurance North America Inc. and XL Capital Assurance Inc. will insure the debt.

RIHEBC executive director Robert Donovan said its board is expected to give final approval on the borrowing plans this week. The deal is expected to price the week of June 19.

"We will get final approval [Thursday] to the same structure as they went out with before," Donovan said.

The university will sell $31.5 million of Series 2006A bonds with a portion of the proceeds funding construction of the Chace Center and a series of other capital projects. The corporation will also issue $9.3 million of Series 2006B bonds that will refund RISD's taxable Series 2004C bonds. Donovan said that interest on the 30-year auction-rate bonds will reset every seven days. The bonds will be callable after 10 years.

The Chace Center is a five-story, 43,000-square-foot building. It will have new galleries, studios, and classrooms once completed. Donovan said a groundbreaking ceremony for the project was held last week.

Located in Providence, and commonly referred to as "Rizdee" after its acronym, the school was founded in 1877 and has 2,200 students, about 350 faculty members and curators, and a 400-member staff. (c) 2006 The Bond Buyer and SourceMedia, Inc. All rights reserved.

http://www.bondbuyer.com http://www.sourcemedia.com

**LOAD-DATE:** June 12, 2006

15 of 17 DOCUMENTS

Copyright 2006 Providence Publications, LLC
The Providence Journal (Rhode Island)

March 9, 2006 Thursday
All Editions

**SECTION:** NEWS; Pg. E-04

**LENGTH:** 2654 words

**HEADLINE:** LEGAL NOTICES (2 OF 4)

**BODY:**

LEGAL NOTICES

MORTGAGEE'S SALE

242 Putnam Pike

Glocester, Rhode Island

Will be sold at public auction on March 10, 2006 at 4:00 p.m. local time on the premises at 242 Putnam Pike, Glocester, Providence County, Rhode Island, said parcel to be sold by virtue of a power of sale contained in a certain mortgage made and executed by Walter Spitznagel and Emilia Spitznagel, which mortgage is dated December 31, 2003, and recorded January 2, 2004 at 10:31 a.m. in Book 315 at Page 650, as affected by a Loan Modification Agreement dated August 1, 2005, and recorded October 13, 2005 at 11:12 a.m. in Book 406, Page 177, in the Records of Land Evidence in the Town of Glocester, the conditions of said mortgage having been broken:

That certain parcel of land with all buildings and improvements thereon more particularly described in said mortgage deed recorded in Book 315 at Page 650 in the Records of Land Evidence in the Town of Glocester.

The above premises will be sold subject to all taxes, assessments, water and sewer charges and other encumbrances which may constitute a prior lien thereon, and will be conveyed subject to any restrictions and easements of record, liens concerning said realty and rights of redemption for unpaid federal taxes, if any, as shall, notwithstanding this provision, constitute valid liens or encumbrances thereon after said sale.

Terms of sale shall include a down payment of Five Thousand ($5,000.00) Dollars upon the acceptance of the successful bid, payable in cash or by bank certified check at the time and place of sale. The balance shall be paid by the purchaser by certified, bank treasurer's or cashier's check within thirty (30) days after the date of the sale. Other terms and conditions to be announced immediately prior to said sale.

By order of the holder of the mortgage which gives notice of its intention to bid at such sale or any postponement or adjournment thereof.

HARMON LAW OFFICES,

P.C.

Hilary A. Wyche, Esquire

Attorney for the Holder

of the Mortgage

150 California Street

Newton, MA 02458

LEGAL NOTICES (2 OF 4) The Providence Journal (Rhode Island) March 9, 2006 Thursday

(617) 558-0500

LEGAL NOTICES

MORTGAGEE'S SALE

24 Biltmore Avenue

Providence, Rhode Island

Will be sold at public auction on March 31, 2006 at 10:00 a.m. local time, on the premises, by virtue of the power of sale contained in a mortgage made by MARIA A. VICAN, dated March 21, 2002, and recorded in the Records of Land Evidence of the City of Providence, State of Rhode Island, in Book 5081, Page 82, the conditions of said mortgage having been broken:

That certain parcel of land with all buildings and improvements thereon more particularly described in said mortgage deed recorded in said Book 5081 at Page 82.

The above premises will be sold subject to all taxes, assessments and other encumbrances which may constitute a prior lien thereon, and will be conveyed subject to any easements, restrictions of record, tenancies and rights of redemption for unpaid federal taxes, if any, as shall, notwithstanding this provision, constitute valid liens or encumbrances thereon after said sale.

Terms of sale: deposit of Five Thousand Dollars ($5,000.00) in cash, certified check or bank check at time and place of sale. Other terms and conditions will be announced at the sale.

By order of the holder of the mortgage, who hereby gives notice of intention to bid at said sale or any postponement or adjournment thereof.

PARTRIDGE SNOW

& HAHN LLP

Attorneys for Holder

of the Mortgage

180 South Main Street

Providence, RI 02903

(401) 861-8293

LEGAL NOTICES

NOTICE OF LIEN

The Self Storage Center, 5805 Post Rd., East Greenwich, R.I. hereby gives notice that the contents of your leases space are subject to our lien for nonpayment of rent. You are denied access to that space. You can redeem your goods on or before 9:00 a.m. on March 25, 2006.

Thomas Vespia #36

LEGAL NOTICES

NOTICE OF

PUBLIC HEARING

Notice is hereby given that a public hearing will be conducted by the Rhode Island Health and Educational Building Corporation (the "Corporation") on March 27, 2006, at 4:30 p.m. at the Corporation's office located at 170 Westminster Street, Suite 1200, Providence, Rhode Island 02903. The subject of the public hearing will be a proposal of Providence College (the "Institution") located in Providence, Rhode Island that the Corporation issue up to $14,000,000 principal amount of the Corporation's Higher Education Facility Revenue Bonds, Providence College Issue, Series 2006 (the "Bonds"). The proceeds of the Bonds will be used by the Institution to finance (i) the construction and equipping of a new student wellness and fitness center adjacent to Peterson Recreational Center and Alumni Hall, (ii) the construction of a new front entrance to integrate the wellness and fitness center with existing facilities, (iii) the renovation of an

LEGAL NOTICES (2 OF 4) The Providence Journal (Rhode Island) March 9, 2006 Thursday

existing residence hall allowing for the creation of additional beds, (iv) the conversion of academic offices into faculty research labs, (v) the creation of additional faculty offices, (vi) capitalized interest on the construction costs of the project, and (vii) costs of issuance of the Bonds. The construction project will be located on the Institution's campus in Providence.

Neither the State of Rhode Island and Providence Plantations nor the Corporation is obligated to pay the principal of or redemption price or interest on the Bonds, except from monies to be provided by the Institution under a loan and trust agreement with the Corporation and other security pledged therefor, and neither the faith and credit nor the taxing power of the State of Rhode Island and Providence Plantations or of any municipality or political subdivision thereof is pledged to the payment of the Bonds. The Corporation does not have taxing power.

The Corporation is accessible to the handicapped. Those requesting interpreter services for the hearing impaired must notify the Corporation at 831-3770 forty-eight (48) hours in advance of the meeting.

ROBERT E. DONOVAN

EXECUTIVE DIRECTOR

AND HEARING OFFICER

RHODE ISLAND HEALTH

AND EDUCATIONAL

BUILDING CORPORATION

LEGAL NOTICES

TOWN OF GLOCESTER

ZONING BOARD

OF REVIEW

PUBLIC HEARING

Notice is hereby given that (a) Public Hearing(s) will be held by the Zoning Board of Review on Thursday, March 23, 2006, in the Glocester Town Hall, 1145 Putnam Pike, Chepachet, RI, at 7:30 p.m. when all persons interested will be heard for or against the granting of the following application(s):

William Karmozyn et ux Diane, applicants and owners, property located at 67 Angell Road, further described as Assessor's Plat 11, Lot 35, in an A-3 zone. Owners seek a Special-Use Permit in accordance with Chapter 350, Article II, Sec 350-11, Table of Use Regulations, Section 2, subsection 9. Owners seek approval of an Accessory Family Dwelling Unit.

Raymond R. Lapointe et ux Carolyn, applicants and owners, property located at 1535 Snake Hill Road, further described as Assessor's Plat 12, Lot 226, in an A-3 zone. Owners seek a Special-Use Permit in accordance with Chapter 350, Article II, Sec 350-11, Table of Use Regulations, Section 1. Agricultural Uses, 7.a. The owners seek approval of a Special-Use Permit for the display and sale of products produced by them from an existing building.

Andrew Sirois et ux Susan, applicants and owners, property located at 724 Chestnut Hill Road, further described as Assessor's Plat 12, Lot 228, in an A-3 zone. Owners seek a Variance from Chapter 350, Article III, Sec 350-13 Table of Dimensional Regulations, 50' Side Yard Width required and from Chapter 350, Article VIII, Sec 350-65 Substandard lots of record, subsection B. Owners seek a Variance from the required side yard width for the construction of an addition.

Karen J. Emond

Administrative Aide

The Glocester Town Hall is accessible to the handicapped. Persons requiring interpreter services for the hearing impaired must call 568-6206, Extension 1, not less than 72 hours in advance of the hearing date. TDD 568-1422 or RI Relay 1-800-745-5555.

LEGAL NOTICES

LEGAL NOTICES (2 OF 4) The Providence Journal (Rhode Island) March 9, 2006 Thursday

State of Rhode Island

and Providence Plantations

DEPARTMENT OF

TRANSPORTATION

NOTICE OF

CONDEMNATION

Condemnation

Plat No. 2576A

Street/Roadway:

Amtrak Northeast Corridor

In the Station Street Section

From:

Cross Street

To:

Beckwith Street

City/Town:

Cranston

The Department of Transportation, pursuant to the authorization received from the State Properties Committee on August 30, 2005, did acquire on September 20, 2005 a Temporary Easement & a Permanent Drainage Easement in the location referred to above for construction.

A complete copy of the legal description may be obtained from the Office of the Director of the Department of Transportation through its Real Estate Section, c/o Richard T. Kalunian, Chief Real Estate Specialist, Two Capitol Hill, Room 317, Providence, RI 02903-1124.

LEGAL NOTICES

BRISTOL WARREN

REGIONAL SCHOOL

COMMITTEE

WORKSHOP/MEETING

MONDAY,

MARCH 13, 2006

7:00 P.M.

MT. HOPE

HIGH SCHOOL

199 CHESTNUT STREET

BRISTOL, RI

WORK PLAN

This agenda is tentative. In accordance with RI Law 42-46-6, D5, any changes in the agenda will be posted on the school district's web site and the two (2) public locations required by this section and will be electronically filed with the Secretary of State at least forty-eight (48) hours in advance of the meeting.

LEGAL NOTICES (2 OF 4) The Providence Journal (Rhode Island) March 9, 2006 Thursday

NOTE: 6:00 Hugh Cole and Colt Andrews

Building Committee

Meeting

I. PLEDGE OF ALLEGIANCE

II. AGENDA FOCUS

A. Presentation: East Bay Smiles - Dennis Roy

B. Mt. Hope High School Home Building Project, Inc.

C. Rockwell Building Committee Report

D. Hugh Cole and Colt/Andrews Building Committee Report

ACTION: Approve payment for feasibility study of Colt, Andrews and the Andrews addition to Torrado Architects for an amount not to exceed $7500.

E. Subcommittee Reports

1) Budget/Facilities Subcommittee

2) Personnel/Contract Subcommittee

3) Policy/Community Affairs Subcommittee

F. Chairperson's Initiatives

1) Update on District Issues

H. Superintendent's Recommendations

RECOMMENDATION #S2006-07: That the School Committee, upon the recommendation of the Superintendent, approve the 2006-2007 Mt. Hope High School Program of Studies.

RECOMMENDATION #S2006-08: That the School Committee, upon the recommendation of the Superintendent, award the bid for lead and asbestos abatement at Colt Andrews.

ACTION: Resolution authorizing and facilitating the East Bay Educational Collaborative's acquisition of 317 Market Street, Warren, RI.

III. EXECUTIVE SESSION

A. Legal Advice re: Hugh Cole Contract

IV. ADJOURNMENT

In accordance with the Open Meeting Laws 42-46-5(a)(1)-(9), 2(b), it is possible that above will immediately go into executive session.

Individuals requesting interpreter services for the hearing impaired must call 253-4000 seventy-two (72) hours in advance of the meeting. Rhode Island Relay number 1-800-745-5555 (TTY).

Agenda of School

Committee Meetings

for month of March

(subject to change):

Wed, Mar 15, 7:30 AM, Hugh Cole Site Mtg, Hugh Cole

Thu, Mar 16, 7:00 PM, Joint Finance Comm Mtg, Warren Town Hall

Mon, Mar 20, 5:30 PM, Policy Subc Mtg, Oliver

Wed, Mar 22, 7:30 AM, Hugh Cole Site Mtg, Hugh Cole

LEGAL NOTICES (2 OF 4) The Providence Journal (Rhode Island) March 9, 2006 Thursday

Wed, Mar 22, 5:30 PM, Wellness Subc Mtg, MHHS

Mon, Mar 27, 6:00 PM, HC/CA Building Comm Mtg, MHHS

Mon, Mar 27, 7:00 PM, S.C. Meeting, MHHS

Tue, Mar 28, 6:00 PM, Joint Finance Comm. Mtg., Bristol Town Hall

Wed, Mar 30, 7:30 AM, Hugh Cole Site Mtg., Hugh Cole

Marjorie J. McBride,

Chairperson

Bristol Warren Regional

School Committee

LEGAL NOTICES

Public Notice

The Rhode Island Public Transit Authority (RIPTA) has proposed a goal of 9% for Disadvantaged Business Enterprise (DBE) participation for the purchase of goods and services during the 2005/2006 Federal Fiscal year, which began October 1, 2005 pursuant to 49CFR Part 26.

The revised DBE plan will be available for review for 30 days from the date of this notice, Monday through Friday, from 9 am to 4 pm, at RIPTA's Procurement Office located at 265 Melrose Street, Room 213, Providence, RI 02907.

In addition to the above DBE review plan period, a public meeting will be held to discuss the DBE Plan on Monday, April 3, 2006 from 1 pm to 2 pm at RIPTA's Conference Room, 269 Melrose Street, Providence, RI 02907.

LEGAL NOTICES

State of Rhode Island and

Providence Plantations

Rhode Island

Department of Health

Initiation of

Licensure Review

In accordance with the requirements of Chapter 23-17 of the General Laws of Rhode Island, a formal review of the following licensure application will commence effective 9 March 2006 and will conclude within 90 days:

Application of Intrepid USA, Inc. (NCC Investments LLC, XL Capital Assurance, Inc., and The Liquidating Trust of DVI, Inc., DVI Financial Services, Inc. and DVI Business Credit Corp. ("DVI Trust")) for a change in effective control of Intrepid of Rhode Island, Inc. d/b/a Intrepid USA Healthcare Services at 1020 Park Avenue in Cranston*

*(The above is a modification of the Intrepid of Rhode Island, Inc. ad which appeared on 10 February 2006.)

The above list of applicants is tentative and may be modified and/or reduced by the state agency for failure to satisfy application deficiencies or other outstanding requirements. All written comments by affected persons should be received by the Office of Health Systems Development, Rhode Island Department of Health, 3 Capitol Hill, Room 407, Providence, Rhode Island 02908 by 8 April 2006, when practicable. Duplicate copies of the formal application are available for review in Room 407 of the Rhode Island Department of Health.

Michael K. Dexter

Chief

Office of Health

Systems Development

LEGAL NOTICES (2 OF 4) The Providence Journal (Rhode Island) March 9, 2006 Thursday

LEGAL NOTICES

PUBLIC NOTICE

STATE OF RHODE ISLAND

AND PROVIDENCE

PLANTATIONS

DEPARTMENT OF

BUSINESS

REGULATION

DIVISION OF

BANKING

233 Richmond Street,

Suite 231

Providence,

Rhode Island 02903

APPLICATION FOR

A LICENSE TO

CONDUCT THE

BUSINESS OF

CHECK CASHING

Application has been made by W.P.S. Systems LTD of New England d/b/a Advance America, Cash Advance, 140 Rhode Island Mall, Warwick, RI 02886, to the Department of Business Regulation, Division of Banking, for the issuance of a branch certificate under applicant's check cashing license to conduct the business of check cashing at the location indicated below:

653-B Killingly Street

Johnston, RI 02919

Any person wishing to comment or object to the issuance of said branch certificate should file his or her written comment or objection with the Division of Banking within ten (10) business days of the date of the publication of this notice. The Director of Business Regulation will consider all comments or objections received within said ten (10) day period when rendering a decision on the branch certificate application.

LEGAL NOTICES

The People's Credit Union

NOMINATION

MEETING NOTICE

The Nomination meeting of the Shareholders of The People's Credit Union will be held Thursday evening, March 16, 2006 at 6:00 P.M. in the main office of The People's Credit Union, 858 West Main Road, Middletown, RI. The purpose of the meeting is to receive nominations for Directors and Supervisory Committee members.

Terri Marcucci Fitch,

Secretary

LEGAL NOTICES

LEGAL NOTICES (2 OF 4) The Providence Journal (Rhode Island) March 9, 2006 Thursday

PUBLIC NOTICE

STATE OF RHODE ISLAND

AND PROVIDENCE

PLANTATIONS

DEPARTMENT OF

BUSINESS

REGULATION

DIVISION OF

BANKING

233 Richmond Street,

Suite 231

Providence,

Rhode Island 02903

APPLICATION FOR

A LICENSE TO

CONDUCT THE

BUSINESS OF

CHECK CASHING

Application has been made by W.P.S. Systems LTD of New England d/b/a Advance America, Cash Advance, 140 Rhode Island Mall, Warwick, RI 02886, to the Department of Business Regulation, Division of Banking, for the issuance of a branch certificate under applicant's check cashing license to conduct the business of check cashing at the location indicated below:

50 Anne Mary Street

Pawtucket, RI 02860

Any person wishing to comment or object to the issuance of said branch certificate should file his or her written comment or objection with the Division of Banking within ten (10) business days of the date of the publication of this notice. The Director of Business Regulation will consider all comments or objections received within said ten (10) day period when rendering a decision on the branch certificate application.

**LOAD-DATE:** March 10, 2006

16 of 17 DOCUMENTS

Copyright 2003 The Bond Buyer, Inc.
The Bond Buyer

August 4, 2003, Monday

**SECTION:** NORTHEAST BOND-WATCH ; Pg. 29

**LENGTH:** 237 words

**HEADLINE:** RHODE ISLAND: Rare College Credit

**BYLINE:** Gillian D'Ambrosio

**BODY:**

Providence College's sale of $63.7 million in fixed-rate revenue bonds, which are being issued through the Rhode Island Health & Educational Building Corp. next week, have received an underlying rating of A3 from Moody's Investors Service week.

Proceeds will be used to build a 350-bed apartment-style dormitory and to current refund Series 1993 bonds, a $52 million issue that was the college's last debt offering.

The bonds will be backed by a pledge of tuition, fees up to 1.1 times the maximum annual debt service, and a mortgage on a portion of the college's property, according to a Moody's report released last week. The bonds will be insured by XL Capital Assurance. Merrill Lynch & Co. will serve as lead underwriter on the negotiated deal while First Southwest Co. is the financial adviser.

A Catholic liberal arts school with about 3,700 students, Providence College anticipates selling $17 million in variable-rate bonds later this year to fund construction of a new arts center and other capital projects, Michael Frazier, the school's vice president of finance and business, said earlier this year.

"Combined, these two bond issues will more than double the college's debt load," Moody's analysts wrote in their report. Fitch Ratings and Standard & Poor's do not the college.

Copyright 2003 Thomson Media Inc. All Rights Reserved. http://www.thomsonmedia.com http://www.bondbuyer.com

**LOAD-DATE:** August 1, 2003

AUG. 30. 2004  3:56PM    SCHOE~OLD & SPORN 212 267 8137                    NO. 2780

FILED

AUG 3 0 2004

Phil Lombardi, Clerk
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

IN RE WILLIAMS SECURITIES LITIGATION              )        Case No. 02-CV-72-H(M)
                                                  )               Lead Case
**This Document Relates to: WMB Subclass**        )
                                                  )        Judge Sven Erik Holmes

## MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
## LEAD PLAINTIFF HGK ASSET MANAGEMENT WITHDRAWAL
## AND CO-LEAD COUNSEL SCHOENGOLD & SPORN, P.C. WITHDRAWAL

For reasons unrelated to the merits of the litigation, HGK Asset Management, Inc.

("HGK") has decided that it no longer wishes to assume the responsibilities of Lead Plaintiff in

this litigation and thus, seeks an order modifying this Court's Order dated July 8, 2002 appointing

Lead Plaintiff and Lead Counsel, so as to permit HGK's and its counsel Schoengold & Sporn,

P.C. ("Schoengold") to withdraw from the case as Lead Plaintiff and Co-Lead Counsel

respectively.

Federal Rule of Civil Procedure 21 provides that "parties may be dropped or added by

order of the court on motion of any party or of its own initiative at any stage of the action and on

such terms as are just." Courts have routinely applied this rule so as to permit any Lead Plaintiff

who no longer wishes to undertake the responsibilities of lead plaintiff to withdraw. *See In Re*

*NeoPharm, Inc. Securities Litigation*, 2004 U.S. Dist. 5814 (N. D. Ill. April 8, 2004) (in granting

withdrawal of lead plaintiff for unelaborated reasons, the court found "certainly there is nothing

extraordinary about this request, and removing Larson Capital Asset Management as lead plaintiff

is the appropriate and just approach if it does not wish to represent the class); *In Re Initial Public*

*Offering Securities Litigation*, 2004 Lexis No. 16879 (S.D.N.Y. Aug. 24, 2004) (court granted

withdrawal of Lead Plaintiff for personal reasons); *In Re Bank One Securities Litigation*, 2002

U.S. Dist. Lexis 8709 (N. D. Ill. May 9, 2002) (court granted oral motion of lead plaintiff to

withdraw); *In Re Insurance Management Solutions Group Inc. Securities Litigation*, 206 F.R.D.

514 (M.D. Fla. 2002); *In Re Microstrategy Inc. Securities Litigation*, 110 F. Supp. 2d 427 (E.D.

Va. 2000).

Having determined that it no longer wishes to function as Lead Plaintiff in this litigation,

HGK moves to withdraw as Lead Plaintiff and to have its counsel Schoengold withdraw as co-

lead counsel.

Dated: August 30, 2004                          Respectfully submitted,

                                                *Joel P. Laitman* / WITH PERMISSION

                                                SAMUEL P. SPORN NYBA #4444
                                                JOEL P. LAITMAN NYBA #8177
                                                CHRISTOPHER LOMETTI NYBA #9124
                                                JAY P. SALTZMAN NYBA #7335
                                                FRANK R. SCHIRRIPA NYBA #1960
                                                **SCHOENGOLD & SPORN, P.C.**
                                                19 Fulton Street, Suite 406
                                                New York, NY 10038
                                                Telephone: (212) 964-0046
                                                Facsimile: (212) 267-8137

                                                *Co-Lead Counsel for the WMB Subclass*
                                                *and Attorneys for HGK Asset Management,*
                                                *Inc.*


                                                ROBERT BURTON, OBA #14195
                                                **SEYMOUR LAW FIRM**
                                                100 West 5th Street, Suite 550
                                                Tulsa, Oklahoma 74103
                                                Telephone: (918) 583-5791
                                                Facsimile: (918) 583-9251

                                                *Co-Lead Counsel for the WMB Subclass*

AUG. 30. 2004  2:35PM    SCHENGOLD & SPORN 212 267 8137                    NO. 2778   P.  2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

IN RE WILLIAMS SECURITIES LITIGATION      )     Case No. 02-CV-72-H(M)
                                        )                 Lead Case
This Document Relates to: WMB Subclass       )
                                          )     Judge Sven Erik Holmes

## AFFIDAVIT OF JEFFREY T. HARRIS IN SUPPORT OF
## WITHDRAWAL OF LEAD PLAINTIFF AND ITS COUNSEL

STATE OF NEW JERSEY    :

COUNTY OF HUDSON    :

     JEFFREY T. HARRIS, being duly sworn and deposed, says:

     1.      I am the Chief Executive Officer of HGK Asset Management, Inc. ("HGK"), and am familiar with HGK's involvement as Lead Plaintiff in this litigation.

     2.      For reasons unrelated to the merits of the litigation, HGK no longer wishes to assume the responsibilities of Lead Plaintiff in this litigation.

     3.      HGK therefore requests the Court grant HGK's Motion to Withdraw as lead plaintiff and to have its designated counsel Schoengold & Sporn, P.C. ("Schoengold") withdraw as co-lead counsel.

                                  Jeffrey T. Harris

Sworn to before me, this
_30_ day of August, 2004.

Notary Public

Service List as of August 30, 2004; 1:17 P.M. CST

MASTER SERVICE LIST FOR DEFENDANTS
WMB SUBCLASS, WCG SUBCLASS AND ERISA LITIGATION

| COUNSEL FOR WCG DEFENDANTS THE WILLIAMS COMPANIES, INC. AND KEITH BAILEY; FOR WMB DEFENDANTS THE WILLIAMS COMPANIES, AND DIRECTOR DEFENDANTS BAILEY, MALCOLM, McCARTHY, BELITZ, AND HOBBS | |
|---|---|
| Graydon Dean Luthey, Jr., Esq. OBA #5568<br>Sarah Jane Gillett, Esq., OBA #17099<br>Jennifer E. Mustain, Esq., OBA #13943<br>HALL, ESTILL, HARDWICK, GABLE,<br>GOLDEN & NELSON, P.C.<br>320 South Boston Avenue, Suite 400<br>Tulsa, Oklahoma 74103-3708<br>Telephone: (918) 594-0400<br>Facsimile: (918) 594-0505<br>dluthey@hallestill.com<br>sgillett@hallestill.com<br>jmustain@hallestill.com | Timothy K. Roake, Esq.<br>Sally J. Berens, Esq.<br>Courtney Greene Power, Esq.<br>Gibson, Dunn & Crutcher, L.L.P.<br>1881 Page Mill Road<br>Palo Alto, CA 94304<br>Telephone (650) 849-5300<br>Facsimile (650) 849-5333<br>troake@gibsondunn.com<br>sberens@gibsondunn.com<br>cpower@gibsondunn.com |
| Alex A. Goldberg, Esq., OBA #18523*<br>THE WILLIAMS COMPANIES, INC.<br>One Williams Center, 41st Floor<br>P. O. Box 2400, MD 41-3<br>Tulsa, OK 74102<br>Telephone (918) 573-2000<br>Facsimile (918) 573-4195<br>alex.goldberg@williams.com<br><br>* represents only The Williams Companies | Ethan D. Dettmer, Esq.<br>Gibson, Dunn & Crutcher, LLP<br>One Montgomery Street, Suite 3100<br>San Francisco, CA 94104<br>Telephone (415) 393-8200<br>Facsimile (415) 986-5309<br>edettmer@gibsondunn.com |
| Darren L. McCarty, Esq.<br>Gibson, Dunn & Crutcher, LLP<br>2100 McKinney Avenue, Suite 1100<br>Dallas, Texas 75201<br>Telephone (214) 698-3100<br>Facsimile (214) 698-3400<br>dmccarty@gibsondunn.com | Wayne W. Smith, Esq.<br>Meryl L. Young, Esq.<br>Jeffrey H. Reeves, Esq.<br>Gibson, Dunn & Crutcher, LLP,<br>4 Park Plaza, Suite 1400<br>Irvine, California 92614-8557<br>Telephone (949) 451-3800<br>Facsimile (949) 451-4220<br>wsmith@gibsondunn.com<br>myoung@gibsondunn.com<br>jreeves@gibsondunn.com |

Service List as of August 30, 2004; 1:17 P.M. CST

| **COUNSEL FOR WMB WILLIAMS OUTSIDE DIRECTOR DEFENDANTS COX, HOWELL, LEWIS, MEINIG, LILLIS, PARKER, WILLIAMS, CRUIKSHANK, CHAPMAN, GREEN, MACINNIS, STONEY, AND LORCH** | |
|---|---|
| Vance L. Beagles, Esq. <br> Ralph I. Miller, Esq. <br> Lori Browne, Esq. <br> WEIL, GOTSHAL AND MANGES <br> 200 Crescent Court, Suite 300 <br> Dallas, TX 75201 <br> Telephone (214) 746-7700 <br> Facsimile (214) 746-7777 <br> vance.beagles@weil.com <br> ralph.miller@weil.com <br> lori.browne@weil.com | |

| **COUNSEL FOR WMB AND WCG DEFENDANT ERNST & YOUNG** | |
|---|---|
| Patrick M. Ryan, Esq. <br> Phillip G. Whaley, Esq. <br> Timothy J. Bomhoff, Esq. <br> Ryan, Whaley, Coldiron & Shandy <br> 119 N. Robinson, Suite 900 <br> Oklahoma City, OK 73102-8865 <br> Telephone: (405) 239-6040 <br> Facsimile: (405) 239-6766 <br> pryan@ryanwhaley.com <br> pwhaley@ryanwhaley.com <br> tbomhoff@ryanwhaley.com | Miles N. Ruthberg, Esq. <br> Jamie L. Wine, Esq. <br> Ethan Brown, Esq. <br> Charles W. Cox, Esq. <br> Latham & Watkins LLP <br> 633 West Fifth Street, Suite 4000 <br> Los Angeles, CA 90071 <br> Telephone: (213) 485-1234 <br> Facsimile: (213) 891-8763 <br> miles.ruthberg@lw.com <br> jamie.wine@lw.com <br> ethan.brown@lw.com <br> chuck.cox@lw.com |

| **COUNSEL FOR WMB UNDERWRITER DEFENDANTS** | |
|---|---|
| Jonathan M. Hoff, Esq. <br> Isaac Greaney, Esq. <br> Cadwalader, Wickersham & Taft LLP <br> 100 Maiden Lane <br> New York, NY 10038 <br> Telephone (212) 504-6000 <br> Facsimile (212) 504-6666 <br> jonathan.hoff@cwt.com <br> isaac.greaney@cwt.com | Warren Bickford, Esq. <br> Burck Bailey, Esq. <br> Brooks Richardson, Esq. <br> John B. Heatly, Esq. <br> Fellers Snider Blankenship Bailey & Tippens <br> 100 N. Broadway, Suite 1700 <br> Oklahoma City, OK 73102 <br> Telephone: (405) 232-0621 <br> Facsimile: (405) 232-9659 <br> wbickford@fellerssnider.com <br> bbailey@fellerssnider.com <br> brichardson@fellerssnider.com <br> jheatly@fellerssnider.com |

Service List as of August 30, 2004; 1:17 P.M. CST

| COUNSEL FOR WCG DEFENDANTS JANZEN, SCHUBERT, KINNEAR, BROSS, MCCOY, KALIKA, BUMGARNER AND SEMPLE AND WMB DEFENDANT BUMGARNER | |
|---|---|
| James L. Kincaid, Esq.<br>Michael J. Gibbens, Esq.<br>Victor E. Morgan, Esq.<br>Susan E. Huntsman, Esq.<br>Crowe & Dunlevy, P.C.<br>321 S. Boston Avenue, Suite 500<br>Tulsa, OK 74103-3313<br>Telephone (918) 592-9800<br>Facsimile (918) 592-9801<br>kincaidj@crowedunlevy.com<br>gibbensm@crowedunlevy.com<br>morganv@crowedunlevy.com<br>huntsmas@crowedunlevy.com | Jennifer Blankenship, Esq.<br>Crowe & Dunlevy, P.C.<br>20 North Broadway, Suite 1800<br>Oklahoma City, OK 73102<br>Telephone (405) 235-7700<br>Facsimile (405) 272-5958<br>blankenj@crowedunlevy.com |
| ERISA - BENEFITS AND INVESTMENT COMMITTEE DEFENDANTS' COUNSEL | |
| Laurence L. Pinkerton, Esq.<br>Pinkerton & Finn, P.C.<br>15 East 5th<br>Penthouse Suite<br>Tulsa, OK 74103<br>Telephone: (918) 587-1800<br>Facsimile: (918) 582-2900<br>pf@att.net | Paul J. Ondrasik, Jr., Esq.<br>Michael Kail, Esq.<br>Elizabeth Liu, Esq.<br>Steptoe and Johnson<br>1330 Connecticut Ave, N.W.<br>Washington, D.C. 20036<br>Telephone: (202) 429-3000<br>Facsimile: (202) 429-3902<br>pondrasik@steptoe.com<br>mkail@steptoe.com<br>eliu@steptoe.com |
| ERISA - COUNSEL FOR DIRECTOR DEFENDANTS AND FOR NONPARTY THE WILLIAMS COMPANIES | |
| Howard Shapiro, Esq.<br>Suzanne S. Dickey, Esq.<br>SHOOK, HARDY & BACON, L.L.P.<br>LL&E Tower<br>909 Poydras Street, Suite 1100<br>New Orleans, Louisiana 70112<br>Telephone: (504) 310-4088<br>Facsimile: (504)522-5771<br>hshapiro@shb.com<br>sdickey@shb.com | Graydon Dean Luthey, Jr., Esq.<br>Sarah Jane Gillett, Esq.<br>HALL, ESTILL, HARDWICK, GABLE,<br>GOLDEN & NELSON, P.C.<br>320 South Boston Avenue, Suite 400<br>Tulsa, Oklahoma 74103-3708<br>Telephone: (918) 594-0400<br>Facsimile: (918) 594-0505<br>dluthey@hallestill.com<br>sgillett@hallestill.com |

Service List as of August 30, 2004; 1:17 P.M. CST

MASTER SERVICE LIST FOR PLAINTIFFS
WMB SUBCLASS, WCG SUBCLASS AND ERISA LITIGATION

| WMB HGK PLAINTIFFS' COUNSEL | WCG PLAINTIFFS' COUNSEL |
|---|---|
| R. Thomas Seymour, Esq.<br>C. Robert Burton, Esq.<br>Scott A. Graham, Esq.<br>SEYMOUR LAW FIRM<br>100 West 5th Street, Suite 550<br>Tulsa, Oklahoma 74103<br>Telephone: (918) 583-5791<br>Facsimile: (918) 583-9251<br>rtseymour1@aol.com<br>robtburton@aol.com<br>sgraham-tulsa@sbcglobal.net<br>seymourt@swbell.net | James R. Hicks, Esq.<br>Ronald J. Saffa, Esq.<br>MORREL WEST SAFFA CRAIGE &<br>   HICKS, INC.<br>5310 E. 31st Street, Suite 1100<br>Tulsa, Oklahoma 74135<br>Telephone: (918) 664-0800<br>Facsimile: (918) 663-1383<br>jim@law-office.com<br>ron@law-office.com |
| Samuel P. Sporn, Esq.<br>Joel P. Laitman, Esq.<br>Jay P. Saltzman, Esq.<br>Frank R. Schirripa, Esq.<br>Kurt Hunciker, Esq.<br>SCHOENGOLD & SPORN, P.C.<br>19 Fulton Street, Suite 406<br>New York, NY 10038<br>Telephone: (212) 964-0046<br>Facsimile:  (212) 267-8137<br>Sporn@spornlaw.com<br>JPLaitman@aol.com<br>jay@spornlaw.com<br>frank@spornlaw.com<br>kurt@spornlaw.com | Kevin J. Yourman, Esq.<br>Behram V. Parekh, Esq.<br>Jennifer Liakos, Esq.<br>Karnit Daniel, Esq.<br>WEISS & YOURMAN<br>10940 Wilshire Blvd., 24th Floor<br>Los Angeles, CA 90024<br>Telephone: (310) 208-2800<br>Facsimile: (310) 209-2348<br>kyourman@wyca.com<br>bparekh@wyca.com<br>jliakos@wyca.com<br>kdaniel@wyca.com |
|  | Steven G. Schulman, Esq.<br>Joshua H. Vinik, Esq.<br>Salvatore J. Graziano, Esq.<br>Seth D. Rigrodsky, Esq.<br>Caroline Marshall, Esq.<br>MILBERG WEISS BERSHAD &<br>SCHULMAN LLP<br>One Pennsylvania Plaza<br>New York, NY 10119<br>Telephone: (212) 594-5300<br>Facsimile: (212) 868-1229<br>SSchulman@MilbergWeiss.com<br>JVinik@MilbergWeiss.com<br>SGraziano@MilbergWeiss.com<br>SRigrodsky@MilbergWeiss.com<br>CMarshall@MilbergWeiss.com |

Service List as of August 30, 2004; 1:17 P.M. CST

| | |
|---|---|
| **ERISA PLAINTIFFS' COUNSEL** | |
| John E. Dowdell, Esq.<br>William W. O'Connor, Esq.<br>Norman Wohlgemuth Chandler & Dowdell<br>2900 Mid-Continent Tower<br>Tulsa, OK 74103<br>Telephone: (918) 583-7571<br>Facsimile: (918) 584-7847<br>jed@nwcdlaw.com<br>wwo@nwcdlaw.com | |
| Lynn Lincoln Sarko, Esq.<br>Cari Campen Laufenberg, Esq.<br>Keller Rohrback, L.L.P.<br>1201 Third Ave., Suite 3200<br>Seattle, WA 98101-3052<br>Telephone: (206) 623-1900<br>Facsimile: (206) 623-3384<br>LSarko@KellerRohrback.com<br>CLaufenberg@KellerRohrback.com | |
| Laurie B. Ashton, Esq.<br>Keller Rohrback<br>National Bank Plaza<br>3101 North Central Avenue, Suite 900<br>Phoenix, Arizona 85012<br>Telephone: (602) 230-6347<br>Facsimile: (602) 248-2822<br>LAshton@KellerRohrback.com | |
| Marc I. Machiz<br>Marka Peterson<br>Cohen, Milstein, Hausfeld & Toll, P.L.L.C.<br>1100 New York Ave., N.W.<br>Suite 500, West Tower<br>Washington, D.C. 20005<br>Telephone: (202) 408-4600<br>Facsimile: (202) 408-4699<br>MMachiz@CMHT.com<br>MPeterson@CMHT.com | |

USE THIS LIST FOR DISTRIBUTION OF PLEADINGS.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 32153476 (N.D.Okla.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**

In re Williams Securities Litigation
N.D.Okla.,2002.
Only the Westlaw citation is currently available.
United States District Court,N.D. Oklahoma.
In re: WILLIAMS SECURITIES LITIGATION
**No. 02-CV-72-H(M).**

July 8, 2002.

U. Seth Ottensoser, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York, NY, for Plaintiffs.
Mark C. Gardy, Abbey Gardy, LLP, Fred Taylor Isquith, Gregory Mark Nespole, Jeffrey G. Smith, David L. Wales, Wolf, Haldenstein, Adler, Freeman & Herz, New York, NY, Marc S. Henzel, Marc S. Henzel Law Office, Bala Cynwyd, PA, Brian M. Felgoise, Brian M. Felgoise Law Offices, Philadelphia, PA, Ira M. Press, Kirby, McInerney & Squire, New York, NY, R. Robyn Assaf, Jones, Kurth, Andrew & Oritz, Oklahoma City, OK, William W. Thomas, Michael I. Behn, Futterman & Howard Chtd, Chicago, IL, Michael D. Braun, Stull Stull & Brody, Los Angeles, CA, Mel E. Lifshitz, Gregory M. Egleston, Bernstein, Liebhard & Lifshitz, New York, NY, Paul J. Geller, Cauley, Geller, Bowman & Coates, Boca Raton, FL, Jeffrey H. Squire, Mark A. Strauss, Kirby McInerney & Squire, New York, NY, Don R. Manners, Charles J. Piven, Baltimore, MD, Robert I. Harwood, Samuel K. Rosen, Wechsler, Harwood, Halebian & Feffer, LLP, New York, NY, Andrew M. Schatz, Jeffrey S. Nobel, Patrick A. Klingman, Wayne T. Boulton, Schatz & Nobel, PC, Hartford, CT, Robert M. Roseman, John Macoretta, Spector, Roseman & Kodroff, PC, Philadelphia, PA, John G. Emerson, Jr, Emerson Law Firm, Little Rock, AR, Brian Barry, Jill Levine, Los Angeles, CA, Susan R. Gross, Bernard M. Gross PC Law Offices, Philadelphia, PA, Michael D. Donovan, Donovan Searles, LLC, Paul J. Scarlato, Weinstein, Kitchenoff, Scarlato & Goldman Ltd, Philadelphia, PA, Burton H. Finkelstein, Andrew J. Morganti, Finkelstein, Thompson & Loughran, Washington, DC, Joshua M. Lifshitz, Peter D. Bull, Bull & Lifshitz LLP, Jonathan M. Plasse, Emily C. Komlossy, Lynda J. Grant, Goodkind, Labaton, Rudoff & Sucharow, LLP,

Jules Brody, Aaron Brody, Tzivia Brody, Stull, Stull & Brody, New York, NY, David B. Kahn, Mark E. King, David B. Kahn & Associates Ltd, Northfield, IL, Jerold B. Hoffman, Hoffman & Edelson, LLC, Doylestown, PA, Thomas G. Shapiro, Shapiro, Haber & Urmy, LLP, Boston, MA, Gerald Joseph Lovoi, Tulsa, OK, Marvin L. Frank, Eric J. Belfi, Rabin, Murray & Frank, LLP, Kenneth A. Elan, New York, NY, Michael G. Lange, Steven Morris, Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, Boston, MA, for Consolidated Plaintiffs.
Graydon Dean Luthey, Jr., Hall, Estill, Hardwick, Gable, Golden & Nelson, Alex Anton Goldberg, Williams Companies Inc., Tulsa, OK, Steven J. Rothschild, Scott L. Adkins, Randolph K. Herndon, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE, Michael James Gibbens, James L. Kincaid, Victor Eric Morgan, Gerald Lee Jackson, Crowe & Dunlevy, Susan E. Huntsman, Crowe & Dunlevy, Tulsa, OK, Jennifer Ann Blankenship, Patrick M. Ryan, Phillip G. Whaley, Ryan & Whaley, Joe M. Hampton, Oklahoma City, OK, Miles N. Ruthberg, Jamie L. Wine, Paul V. Konovalov, Latham & Watkins, Los Angeles, CA, for Defendants.
Brooks A. Richardson, Warren F. Bickford, IV, Burck Bailey, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, OK Dennis J. Block, Jonathan M. Hoff, Alla Lerner, Cadwalader, Wickersham & Taft, New York, NY, for Defendants/Consolidated Defendants.
Andrei V. Rado, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York, NY, James E. Miller, Scott & Scott, Colchester, CT, Elizabeth P. Lin, Weiss & Yourman, Los Angeles, CA, Andrew L. Barroway, Stuart L. Berman, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, Gregory J. Myers, Lockridge, Grindal, Nauen, PLLP, Minneapolis, MN, for Movants.
Samuel P. Sporn, Jay P. Saltzman, Schoengold & Sporn, PC, New York, NY, for Intervenor Plaintiff/ Movants.
James Rouse Hicks, Ronald Joseph Saffa, Morrel, West, Saffa, Craige & Hicks Inc., Tulsa, OK, Kevin J. Yourman, Behram V. Parekh, Weiss & Yourman, Los Angeles, CA, for Plaintiffs/Consolidated Plaintiffs/ Movants.

Steven G. Schulman, Samuel H. Rudman, Milberg, Weiss, Bershad Hynes & Lerach, LLP, Nadeem Faruqi, Faruqi & Faruqi, New York, NY, Michael Swick, Neil Rothstein, David Scott, Scott & Scott, Colchester, CT, for Plaintiffs/Movants.

Michael T. Fantini, Sherrie R. Savett, Berger & Montague, PC, Philadelphia, PA, William B. Federman, Federman & Sherwood, Oklahoma City, OK, Seth D. Rigrodsky, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York, NY, Steven S. Toll, Marc A. Topaz, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, DC, Jeffrey C. Zwerling, Richard A. Speirs, Zwerling, Schachter & Zwerling, LLP, New York, NY, Richard A. Lockridge, Karen M. Hanson, Lockridge, Grindal, Nauen, PLLP, Minneapolis, MN, John R. Malkinson, Malkinson & Halpern, PC, Chicago, IL, for Consolidated Plaintiffs/Movants.

Charles Robert Burton, IV, R. Thomas Seymour, Seymour Law Firm, Tulsa, OK, Ashley Kim, Christopher Lometti, Schoengold & Sporn, PC, New York, NY, for Consolidated Plaintiffs/Movants/Intervenor Plaintiff.

### ORDER

HOLMES, J.

**\*1** This matter comes before the Court on the motions to appoint lead plaintiff and lead counsel, filed on April 1, 2002 (Docket Nos. 16, 17, 19, 20, 25, 26, 34, 35, 38, 39). The Court issued an order on June 21, 2002 (Docket No. 123) consolidating the four remaining related cases with Case No. 02-CV-72-H(M) and bifurcating the action into the following subclasses: purchasers of Williams Communications Group, Inc. ("WCG") securities and purchasers of Williams Companies, Inc. ("WMB") securities. As contemplated by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(ii) and 15 U.S.C. § 77z-1(a)(3)(B)(ii), which requires the Court to appoint the most adequate plaintiff as the lead plaintiff for the consolidated action "as soon as practicable" after the decision on the motions to consolidate is rendered, the Court will now address the motions for appointment of lead plaintiff and lead counsel.

The Court has carefully reviewed the briefs submit-

ted by the five lead plaintiff movants, and, for the reasons set forth below, hereby orders the appointment of Alex Meruelo as the lead plaintiff for the subclass of purchasers of WCG securities and HGK Asset Management ("HGK") as lead plaintiff for the subclass of purchasers of WMB securities. The Court further orders the appointment of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss"), Weiss & Yourman, and Morrel West Saffa Craige & Hicks Inc ("Morrel West") as counsel for the subclass of purchasers of WCG securities and Schoengold & Sporn and the Seymour Law Firm as counsel for the subclass of purchasers of WMB securities.

### I

The PSLRA sets forth detailed procedures for the appointment of lead plaintiff(s) in a private class action arising under the securities laws. 15 U.S.C. § 78u-4(a).FN1 Among those procedures is the requirement that the named plaintiff in the action must file notice within twenty days of filing suit to inform potential class members of their right to move to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Such notice must be published "in a widely circulated national business-oriented publication or wire service."Id. Not later than sixty days after the date on which this notice is published, any member of the putative class may move the court to be appointed lead plaintiff of the class. 15 U.S.C. § 78u-4(3)(A)(ii).

> FN1. The PSLRA amended both the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act") by adding identical sections to both acts, Section 27 to the Securities Act and Section 21D to the Exchange Act. See15 U.S.C. § 77z-1(a)(3) and 15 U.S.C. § 78u-4(a)(3). For convenience, the Court will cite only to the Exchange Act when referring to the PSLRA.

The PSLRA then requires the Court to appoint a lead plaintiff for the class after determining which applicant is "most capable of adequately representing the interests of the class members."15 U.S .C. §

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

78u-4(a)(3)(B). In determining which applicant should be named lead plaintiff, the Court must accept the presumption that the most adequate plaintiff in any private action is the person(s) who: (1) has either filed the complaint or made a motion in response to a notice; (2) in the determination of the Court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**\*2** Under the PSLRA, the Court's determination of the "most adequate plaintiff" may be rebutted only upon proof that the presumptive lead plaintiff either: (1) will not fairly and adequately protect the interests of the class; or (2) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

II

A. Appointment of Lead Plaintiff for the WCG Subclass

On January 29, 2002, in accordance with the PSLRA, 15 U.S.C. § 78u-4(a)(A)(i)(I), the first notice of the pendency of this class action was published in a national business-oriented wire service. *See* Press Release, Milberg Weiss Bershad Hynes & Lerach LLP, Milberg Weiss Announces Class Action Suit Against Williams Companies, Inc. and Williams Communications Group, Inc. (Jan. 29, 2002) (Seymour Decl. Ex. A). Within sixty days following the date of that publication, on April 1, 2002, lead plaintiff applications were submitted by the following individuals or groups, now seeking to be appointed lead plaintiff for the subclass of purchasers of WCG securities ("WCG Subclass"): Mr. Meruelo;[FN2] Blaine Watkins, Bruce and Kathleen Smith and Bruce Russell ("the Watkins Group"); and Market Street Securities, Inc. ("Market Street").[FN3] Because all three lead plaintiff motions were submitted within the time period established by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(i)(II), all applicants have satisfied the first requirement of the statutory test for determining the presumptive "most adequate plaintiff."

FN2. The lead plaintiff application of Mr. Meruelo was originally submitted on behalf of Norman H. Kirkendoll, Michael Ewing, Alex Meruelo and Melis Paronayn ("the Meruelo Group"). In its June 6, 2002 memorandum, however, the Meruelo Group stated that, in light of the bifurcation of the action into subclasses of WMB and WCG securities purchasers, the group sought to put forward only Alex Meruelo as the proposed lead plaintiff.

FN3. Douglas E. Miller and Carol Moore, purchasers of WMB and WCG securities, jointly filed a motion seeking to be appointed lead plaintiff on April 1, 2002 (Docket Nos. 22 and 23). Mr. Miller and Ms. Moore have not submitted the additional briefing ordered by the Court to support their motion, and, accordingly, the Court deems the motion to have been withdrawn. Westmonte Plaza Inc. (Docket No. 28) and Darryl Abramowitz (Docket Nos. 30 and 31) also filed lead plaintiff applications on behalf of WCG securities purchasers. Both applications, however, were formally withdrawn and, therefore, will not be addressed here.

The Court must next determine the person or group of persons who "has the largest financial interest in the relief sought by the class."15 U.S.C. § 78u-4(a)(3)(B)(ii)(I)(bb). The PSLRA, however, does not specify the procedure for the Court to follow in making this determination. *See*In re Enron Sec. Litig., 206 F.R.D. 427, 2002 WL 530588, at *7 (S.D.Tex.2002); *see also*In re Nice Sys. Sec. Litig., 188 F.R.D. 206, 217 (D.N.J.1999). Several courts addressing this question have applied the four-factor test articulated by the district court in *Lax v. First Merchs. Acceptance Corp.,* 1997 WL 461036, at *5 (N.D.Ill. Aug.11, 1997).*See,e.g.,Enron,* 206 F.R.D. 427, 2002 WL 530588, at *7;*In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d 286, 295 (E.D.N.Y.1998); *Nice Sys.,* 188 F.R.D. 206, 217 (D.N.J.1999). The four *Lax* factors used to determine the largest financial interest are: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32153476 (N.D.Okla.)

**(Cite as: Not Reported in F.Supp.2d)**

the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *Lax,* 1997 WL 461036, at *5.* "These factors are useful because they look to relatively objective indicators, such as the number of shares purchased or sold, rather than to the ultimate question of damages." *Aronson v. McKesson HBOC, Inc.,* 79 F.Supp.2d 1146 (N.D.Cal.1999). Notably, one of the WCG Subclass movants in this case, despite the Court's request at the April 12, 2002 hearing for clear and specific information regarding loss calculations, failed to provide information stated in these terms. Accordingly, the Court has focused its analysis on the movants' claimed losses, the only common denominator addressed by each of the WCG Subclass movants.[FN4]

> FN4. The Court recognizes its obligation under the PSLRA to "determine" the plaintiff with the "largest financial interest." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) (requiring that the "most adequate plaintiff" be the person or persons that, "in the *determination of the court,* has the largest financial interest in the relief sought by the class") (emphasis added); *see*

*also Aronson,* 79 F.Supp.2d at 1157. The Court further recognizes, however, that the statutory scheme for the speedy resolution of the lead plaintiff question makes it undesirable for courts to prejudge damages through an extensive fact-finding process. *See Aronson,* 79 F.Supp.2d at 1157. The Court has reviewed the numerous motions and supporting memoranda addressing the lead plaintiff question and generally accepts the representations of the movants as true. Based on these representations and the unnecessary delay that would be occasioned by further proceedings, Market Street's motion for oral argument (Docket No. 119) on these issues is hereby denied.

**\*3** On the basis of the losses claimed by the lead plaintiff movants, Mr. Meruelo appears to be the lead plaintiff applicant with the largest financial interest in the outcome of the litigation. The losses claimed by the respective movants are as follows:

| Lead Plaintiff Movant | Claimed Losses |
|---|---|
| Alex Meruelo | $3,905,136.80 [5] |
| Market Street | $2,300,000.00 |
| The Watkins Group | $ 224,000.00 |

> FN5. *See* Notice of Submission of Corrected Loss Calculation and Trading Data by Alex Meruelo; Declaration of Behram V. Parekh, filed June 6, 2002, ("Corrected Loss Calculation").

Market Street argues, however, that Mr. Meruelo's losses are overstated and that instead Market Street is the movant with the largest financial interest. Market Street attacks Mr. Meruelo's loss calculation on several grounds, claiming it is overstated because: (1) Mr. Meruelo made errors in his certifications and loss calculations; (2) Mr. Meruelo improperly included purchases after the disclosure of fraud; and (3) Mr. Meruelo improperly calculated his losses by using the average trading price of WCG during the 90-day period following the close of the class period. The Court will address each of Market Street's criticisms in turn below.[FN6]

> FN6. In its June 6, 2002 Response Memorandum, Market Street also argued that Mr. Meruelo's losses were overstated because the Meruelo Group and Mr. Meruelo: (1) failed to assign value to Mr. Paronyan's shares; and (2) improperly aggregated the claims of the individuals in the Meruelo Group. Because the other individual lead plaintiff applicants in the former "Meruelo Group" have withdrawn their applications in support of Mr. Meruelo, the Court need not address these arguments.

First, Market Street criticizes Mr. Meruelo's certi-

fication and therefore his loss calculation, arguing that the certification listed "numerous trades in the common stock of WCG at prices outside the range at which WCG traded on those dates."Market Street then calculates the amount by which Mr. Meruelo's losses would be reduced if the Court rejected all trades listed on the certification at prices outside the range at which the stock traded on those dates, arguing that Mr. Meruelo's claimed losses should be reduced by $1,128,665.00.

On June 6, 2002, however, Mr. Meruelo submitted a Corrected Loss Calculation and actual trading data supporting his motion for appointment as lead plaintiff. The revised loss calculation was submitted to correct the following discrepancies: (1) the trading data attached to Mr. Meruelo's certification reflected settlement dates rather than trading dates for the stock; and (2) the trading data attached to Mr. Meruelo's certification included the commission charge as part of the price of the securities, rather than reflecting just the trade price of the securities. After correcting for these errors, Mr. Meruelo's losses amount to $3,905,136.80; a total more than the amount stated in Mr. Meruelo's original submission.[FN7] The Court has reviewed the revised loss calculations and supporting trading data and finds that the errors identified by Market Street (and certain other lead plaintiff movants) have been sufficiently addressed. Accordingly, the Court finds unnecessary any reduction of Mr. Meruelo's loss calculation on the basis that the trade prices stated on the certification are in error.[FN8]

FN7. Mr. Meruelo's Corrected Loss Calculation explains that the increase in the amount of loss is due to the inadvertent exclusion from his original submission of purchases that were "settled" after the end of the class period but "transacted" within the class period.

FN8. The Court finds that the corrected errors in Mr. Meruelo's certification and loss calculation do not provide a sufficient basis for denying his motion to be appointed lead plaintiff. *Cf.* Amended Memo. Of Law in Opp'n to the Competing Lead Plaintiff Motions and in Further Support of the Motion of Norman H.

Kirkendoll, Michael Ewing, Alex Meruelo and Melis Paronyan for Consolidation, Appointment as Lead Plaintiff and For Approval and Selection of Lead and Liaison Counsel (4/19/02) ("The fact that none of the three certifications that were filed by Market Street Securities was accurate, in and of itself, provides additional grounds for denying its motion.").

Market Street next claims that Mr. Meruelo's losses are overstated because his certification includes purchases of WCG securities effected after the disclosure of the fraud. Market Street argues that Mr. Meruelo's purchases of 171,700 shares of WCG stock on January 29, 2002 should be excluded from his loss calculation because the WMB press release describing the contingent guarantee of WCG debt was issued at 7:31 a.m. on January 29, 2002, before the market opened for trading.

**\*4** Mr. Meruelo contends, however, that the January 29 purchases were appropriately included in his loss calculation because the class period alleged in the complaints filed in this action end on and *include* January 29, 2002. *See,e.g.,Cali, et al. v. Williams Cos. Inc., et al.,* Compl. at ¶ 18 ("Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of WMB and/or WCG between July 24, 2000 and January 29, 2002 *inclusive* (the 'Class Period') and who were damaged thereby") (emphasis added). Mr. Meruelo further contends that, in addition to the press release purportedly issued at 7:31 a.m., WCG issued its own press release on January 29, which may have contradicted WMB's prior statements. Mr. Meruelo argues that these conflicting press releases created confusion in the market regarding WMB and WCG's securities.

The Court finds that a determination regarding whether the shares purchased by Mr. Meruelo on January 29, 2002 occurred after the market became aware of the alleged fraud requires an extended inquiry and factual determination as to the exact moment investors were on notice of the negative information. The Court finds that such an inquiry is inappropriate and unnecessary at this stage of the litigation and, accordingly, de-

Not Reported in F.Supp.2d, 2002 WL 32153476 (N.D.Okla.)
**(Cite as: Not Reported in F.Supp.2d)**

clines to exclude Mr. Meruelo's January 29, 2002 purchases of WCG stock from Mr. Meruelo's loss calculation on that basis.

Finally, in addition to the criticisms of the trading prices stated in Mr. Meruelo's certification, Market Street also attacks the method by which Mr. Meruelo calculates his losses. Market Street argues that Mr. Meruelo's loss calculation, based on the PSLRA'S 90-day average trading price, 15 U.S.C. § 78u-4(c), is an inappropriate measure of loss at the lead plaintiff appointment stage.[FN9] Instead, Market Street argues that the appropriate measure of loss would be one based on the closing price for WCG common stock on January 29, 2002, the day the alleged fraud was disclosed. Market Street further argues that Mr. Meruelo's use of the 90-day average trading price is an attempt to claim "more than $1,700,000 worth of losses that occurred well after the disclosure of the fraud and the end of the class period."

> FN9. The PSLRA provides a limit on the amount of damages that can be recovered in a private action where the plaintiff seeks to establish damages by reference to the market price of a security. 15 U.S.C. § 78u-4(e)(I). That limit is calculated by determining "the mean trading price of [the] security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market."*Id.*

Market Street cites the district court's decision in *In re Ribozyme Pharms., Inc. Sec. Litig.,* 192 F.R.D. 656, 661 (D.Colo.2000), to support its position that the 90-day average trading price should not be used to determine the lead plaintiff with the largest financial interest in the litigation. In *Ribozyme,* the court found that the loss calculation for the so-called "retention" plaintiffs was the value to which the stock price fell at the end of the class period; the court also explicitly rejected the use of the 90-day average trading price as a method for calculating damages.

The "Lead Plaintiffs" Group argues against this novel valuation method and states that it is error to read the PSLRA's "90-day bounce back" provision regarding the calculation of damages into the lead plaintiff provision regarding the largest financial interest. I agree that the determination of financial interest does not equate to damages. Damages is a term of art and a technical matter to be established by experts. The lead plaintiff provision in the PSLRA does not use the term "damages" but instead, "largest financial interest."

**\*5** 192 F.R.D. at 661.

The Court does not consider *Ribozyme'* s analysis persuasive in light of the number of district courts relying upon the 90-day average trading price in comparing claimed losses. *See,e.g.,In re Microstrategy Inc. Sec. Litig.,* 110 F.Supp.2d 427 (E.D.Va.2000) (using 90-day period after the close of the class period to determine largest financial interest); *Steiner v. Nat'l Auto Credit,* 1998 U.S. Dist. LEXIS 21804, at *12 (N.D.Ohio July 16, 1998) (using the "mean trading price," or the average of the daily trading price of the security "during the 90 day period," to determine the largest financial interest in the case).[FN10] In fact, the Court is unaware of any other opinion holding that the "retention value" method is the only appropriate method of calculating damages.[FN11]

> FN10. The *Ribozyme* court stated that it relied on several non-published opinions in its district that have employed the "retention value" method for determining the largest financial interest pursuant to the PSLRA. *SeeRibozyme,* 192 F.R.D. at 660 (citing *In re New Era Networks, Inc. Sec. Litig.,* Civil Action No. 99-WM-473 (Colo.1999); *In re Samsonite Corp. Sec. Litig.,* Civil Action No. 98-K-1878 (Colo.1998); *In re Boston Chicken Sec. Litig.,* Civil Action No. 97-WM-1308 (Colo.1997); *In re New Era of Networks, Inc. Sec. Litig.,* Civil Action No. 99-WM-1274 (Colo.1999)). The Court finds that each of these four opinions is inapposite because none of them endorses the "retention value" method or even mentions how the largest financial interest was determined. *Seeid.*Furthermore, two of the cases, *New Era,* Civil Action No. 99-WM-473; and *Samsonite,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Civil Action No. 98-K-1878, involved unopposed motions for the appointment of lead plaintiff, thereby explaining the absence of any discussion regarding the appropriate method for determining which movant had the "largest financial interest."

FN11. The Court finds Market Street's attacks on Mr. Meruelo's use of the 90-day average trading price notable given Market Street's failure to make the argument before final briefs were submitted on June 6, 2002. This failure is particularly perplexing in light of the number of lead plaintiff movants calculating "losses" and financial interest using that method.

Moreover, the Court finds that Market Street failed to follow the directive at the April 12, 2002 hearing to articulate with clarity and specificity the bases and methods for calculating its own losses. Market Street's original certification and loss calculation, unlike those of other lead plaintiff movants, failed to provide sufficient information for the Court to analyze the basis for its claimed financial interest. Furthermore, despite its sharp criticism of other lead plaintiff movants' calculations, Market Street has not provided any additional information to supplement its original submission in the four rounds of briefing following its April 1, 2002 motion.

In accordance with the PSLRA, the Court finds that Mr. Meruelo is the WCG Subclass lead plaintiff movant with the "largest financial interest" in the outcome of the litigation. The Court's determination is based on the following findings: (1) Mr. Meruelo's loss calculations have survived scrutiny and are permissibly calculated using the 90-day average trading price under the PSLRA; (2) the Watkins Group's claimed losses are significantly less than those of Mr. Meruelo; and (3) the claimed losses of Market Street are also significantly less than those of Mr. Meruelo.

Having determined that Mr. Meruelo has the largest financial interest in the outcome of the litigation, the Court turns to whether Mr. Meruelo satisfies the requirements of Fed. R. of Civ. P. 23. 15 U.S.C. §

78u-4(a)(3)(B)(iii)(I). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). Many courts agree, however, that a "wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on the qualities of the class representatives enumerated in Rule 23(a)(3) and 23(a)(4)." Lax, 1997 WL 461036, at *6 (internal quotations omitted); see also Microstrategy, 110 F.Supp.2d 427; Aronson, 79 F.Supp.2d at 1158 (citations omitted) (holding that, at the lead plaintiff appointment stage, "all that is required is a 'preliminary showing' that the lead plaintiff's claims are typical and adequate.").

*6 Market Street claims Mr. Meruelo's losses are not typical of those of the WCG Subclass under Rule 23(a) because Mr. Meruelo is subject to unique defenses as a result of his purchases of securities after the alleged disclosure of the fraud on January 29, 2002. In support of this position, Market Street quotes a brief purportedly filed by Mr. Meruelo's counsel, Milberg Weiss, on behalf of another client in an unrelated case. Market Street argues that Mr. Meruelo's purchases of WCG securities on January 29, 2002 are similar to the purchases of the lead plaintiff movant in Enron where the court determined the movant was subject to unique defenses and therefore was atypical because it purchased millions of shares of Enron stock after the disclosure of the fraud. Enron, 206 F.R.D. 427, 2002 WL 530588, at *22; see also Berwecky v. Bear, Stearns & Co., Inc., 197 F.R.D. 65 (S.D.N.Y.2000) (holding that a person who increases his holding after revelation of the fraud is subject to unique defenses that preclude him from serving as class representative); Kreindler v. Sambo's Rest, Inc., 1985 U.S. Dist. Lexis 23388 (S.D.N.Y.1985) (same).

Mr. Meruelo contends that his purchases of WCG securities on January 29, 2002, the last day of the class

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

period, can be distinguished from those of the lead plaintiff movant in *Enron,* the Florida State Board of Administration ("FSBA"). Mr. Meruelo explains that the FSBA's purchases of Enron securities were made on its behalf by its investment advisor, Alliance Capital Management Holding, well after the first Enron shareholder suits were filed against Enron and after the announcement of the SEC investigation into Enron.

Under Fed.R.Civ.P. 23(a)(3), the claims of the representative parties must be typical of those of the putative class. Typicality is achieved where the named plaintiff's claims arise "from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory."*Enron,* 206 F.R.D. 427, 2002 WL 530588, at *8 (citations omitted). Even though the typicality requirement is not satisfied when the "plaintiff's factual or legal stance is not characteristic of that of other members,"*id.,* at *13 (citations omitted), the existence of minor distinctions will not preclude the typicality requirement from being met, *Olsten,* 3 F.Supp.2d at 296;*see also**Nice Sys. .,* 188 F.R.D. at 217;*Enron,* 206 F.R.D. 427, 2002 WL 530588, at *13.

The Court finds that Mr. Meruelo's purchases of WCG stock on January 29, 2002, the first day the alleged fraud was disclosed, may be distinguished from the purchases of FSBA because the purchases of FSBA occurred "after the initial public disclosure regarding [its] overstatement of its assets and partnership liabilities, after the first suits in this consolidated action were filed, and after the SEC announced that it was investigating [the company]."*Enron,* 206 F.R.D. 427, 2002 WL 530588, at *22. In this case, the purchases upon which Market Street seeks to disqualify Mr. Meruelo occurred on January 29, 2002, the date the plaintiffs claim the first WMB or WCG press release regarding the alleged fraud was issued. In *Enron,* the court found that FSBA's claims were atypical because, unlike this case, FSBA's purchases occurred so long after the first disclosure of the fraud that FSBA, unlike other investors, did not buy the stock relying upon either the market or statements by Enron or its agents.[FN12] The Court finds that Mr. Meruelo's purchases were not atypical so as to disqualify him from serving as lead plaintiff.

FN12. The lead plaintiff movants, here, dispute whether the market, and Mr. Meruelo, had notice of the alleged fraud when the securities were purchased. As the Court explained above, an extended inquiry and factual determination into the exact moment investors were on notice is inappropriate and unnecessary at this stage of the litigation and will not be taken up here.

**\*7** The Watkins Group, seeking to be appointed lead plaintiff on behalf of WCG bondholders, argues that its interests will not be adequately protected by Mr. Meruelo, or any other equity holder lead plaintiff. The Watkins Group objects on the following grounds: (1) WCG shareholders do not have standing to pursue claims on behalf of WCG bondholders; and (2) because the interests of WCG shareholders and WCG bondholders are divergent, the WCG bondholders will not be adequately represented by a shareholder lead plaintiff.

To the extent the Watkins Group's first argument relates to the typicality of Mr. Meruelo's claims, the Court finds that Mr. Meruelo's claims are typical because the claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members."*See**Lax,* 1997 WL 461036, at *6 (N.D.Ill.1997); *see also**Enron,* 206 F.R.D. 427, 2002 WL 530588, at *13 ("When plaintiffs have alleged such a common course of conduct, courts consistently have found no bar to class certification even though members of a class may have purchased different types of securities or interests, or purchased similar securities at different times.") (internal quotations omitted). Moreover, the Court finds that, insofar as the appointment of Mr. Meruelo as WCG Subclass lead plaintiff presents standing issues, those issues can be resolved by the filing of an amended complaint.

The Watkins Group's second attack goes to the adequacy of Mr. Meruelo, or any shareholder lead plaintiff movant, to represent the interests of WCG bondholders. The Watkins Group, stressing the significance of the WCG bankruptcy, claims that it should also be appointed lead plaintiff in order to "ensure that the interests of

Not Reported in F.Supp.2d                                                                              Page 9
Not Reported in F.Supp.2d, 2002 WL 32153476 (N.D.Okla.)
**(Cite as: Not Reported in F.Supp.2d)**

bond purchasers are adequately represented and protected during any settlement negotiations, and particularly during any allocation of funds in the event of recovery."Watkins Group Reply Mem. (Jun. 6, 2002), at 4.

Under Fed.R.Civ.P. 23(a)(4), class representatives must adequately represent the interests of the putative class. This requirement is satisfied where: "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members do not have interests that are antagonistic to one another; and (3) the class has sufficient interest in the outcome of the case to ensure vigorous adequacy."Olsten, 3 F.Supp.2d at 296 (citations and internal quotations omitted); *see also*Microstrategy, 110 F.Supp.2d at 435-36. In other words, "[a]dequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action."Nice Sys., 188 F.R.D. at 219.

The Court finds that Mr. Meruelo's representation meets the Rule 23(a)(4) standard for adequacy. First, the Court finds Milberg Weiss, Weiss & Yourman, and Morrel West, the counsel selected by Mr. Meruelo, to be qualified and experienced lawyers who are unquestionably capable of conducting the litigation on behalf of the WCG Subclass. Second, the Court finds that any problems due to alleged conflicts of interest between WCG's debt and equity holders amounts to mere speculation at the present time. At this stage of the litigation, the holders of both types of securities have the common goal of establishing the omissions and misrepresentations allegedly made to the market. *See generally*Enron, 206 F.R.D. 427, 2002 WL 530588, at *13. The Court further finds that the inevitable dilution of control stemming from the appointment of multiple lead plaintiffs may result in an unnecessary and undesirable weakening of the bargaining power of the WCG Subclass. *See*Nice Sys., 188 F.R.D. at 220 ("Representation by a disparate group of plaintiffs, each seeking only the protection of its own interests, could well hamper the force and focus of the litigation.") (internal quotations omitted). Finally, the Watkins Group's contention that Mr.

Meruelo, or another shareholder lead plaintiff, will not vigorously pursue the claims of the bondholder class members is unsubstantiated. The Court finds that Mr. Meruelo's own financial stake in the litigation provides an adequate incentive for him to vigorously prosecute the action on all fronts. *See generally*Nice Sys., 188 F.R.D. at 219.

**\*8** The final issue with respect to the appointment of Mr. Meruelo as lead plaintiff is whether any lead plaintiff movant has successfully rebutted the presumption that Mr. Meruelo is the "most adequate plaintiff." Under the PSLRA, the presumptive lead plaintiff may only be rebutted upon proof that the plaintiff either: (1) will not fairly and adequately protect the interests of the class; or (2) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Both Market Street's and the Watkins Group's arguments for the disqualification of Mr. Meruelo on the grounds that his claims are atypical or inadequate under Rule 23(a) may be construed as rebuttal challenges under the PSLRA. *See*id.The Court addressed and rejected these arguments above. Therefore, the Court finds that the presumption that Mr. Meruelo is the "most adequate plaintiff" for the subclass has not been rebutted. Accordingly, the Court hereby appoints Mr. Meruelo as the lead plaintiff for the WCG subclass.

### B. Appointment of Counsel for the WCG Subclass

The Court now turns to the approval of lead counsel for the WCG Subclass. As noted above, the Court finds that Mr. Meruelo's selections, Milberg Weiss, Weiss & Yourman, and Morrel West, are qualified, experienced counsel who will adequately represent the interests of the class. Accordingly, the Court approves Mr. Meruelo's selection of Milberg Weiss and Weiss & Yourman as co-lead counsel, provided there is no duplication of attorneys' services, and the use of co-lead counsel does not in any way increase attorney fees and expenses. *See*Lax, 1997 WL 461036, at *7 (noting the use of co-lead counsel should not result in increased attorneys' fees and expenses). The Court also approves Mr. Meruelo's selection of Tulsa law firm Morrel West as

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

local counsel for the WCG Subclass.

### III

#### A. Appointment of Lead Plaintiff for the WMB Subclass

On April 1, 2002, motions seeking lead plaintiff status were filed by HGK and Teamsters Local 710 Pension Fund and Health & Welfare Fund ("Local 710"); both movants now seek to be appointed lead plaintiff for the subclass of purchasers of WMB securities ("WMB Subclass"). HGK and Local 710 submitted motions, as required by the PSLRA, within sixty days from the Janu-

ary 29, 2002 publication of the notice of the pendency of this class action. *See* 15 U.S.C. § 78u-4(a)(A)(i)(II). The potential lead plaintiffs for the WMB Subclass, therefore, both satisfy the first requirement for becoming the presumptive "most adequate plaintiff."

The Court must next determine which movant "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The financial interest claimed by the two lead plaintiff movants for the WMB Subclass are as follows:

| Lead Plaintiff Movant | Claimed Losses |
|---|---|
| HGK | $3,774,142.00 |
| Local 710 | $ 146,166.00 [13] |

> FN13. HGK's losses were suffered in connection with its purchase of shares of WMB common stock and were determined after deducting gains from the sale of its WCG shares received as dividends; Local 710's losses were suffered in connection with its purchases of WMB notes.

**\*9** As previously discussed, determining which lead plaintiff movant has the largest financial interest in the litigation is, generally, the most significant inquiry for the Court in appointing a lead plaintiff. *See,e.g.,Aronson,* 79 F.Supp.2d at 1157. In the case of the WMB Subclass, however, HGK's alleged losses dwarf those of Local 710, and Local 710 has failed to demonstrate that HGK's claimed WMB holdings or losses are erroneously calculated or otherwise overstated. Accordingly, the Court finds that HGK has the "largest financial interest in the outcome of the litigation."*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Local 710 argues that it should be appointed a separate lead plaintiff for a subclass of WMB bondholders.FN14Asserting similar justifications as those argued by the Watkins Group, Local 710 contends that no shareholder lead plaintiff movant has the standing required to pursue claims on behalf of the bondholders, and that Local 710's interests will not be adequately represented by a shareholder lead plaintiff.FN15

FN14. In its memoranda addressing the appointment of lead plaintiff, Local 710 urges the Court to appoint it lead plaintiff of a separate subclass of purchasers of WMB notes. The Court denied Local 710's request for the creation of a separate subclass in its June 21, 2002 order (Docket No. 123), and will not address that issue again here.

FN15. It is unclear whether Local 710's attack is based on the grounds of typicality and adequacy under Rule 23 or an attack on HGK as the presumptive lead plaintiff.

As noted above, in determining the most adequate plaintiff, the Court must address Rule 23(a)'s typicality and adequacy requirements. The Court finds that HGK's representation meets the Rule 23(a) standards for typicality and adequacy. First, the Court finds that HGK's claims are typical of the WMB bondholders because the claims asserted by HGK on behalf of the shareholder plaintiffs "arise from the same event or practice or

Not Reported in F.Supp.2d, 2002 WL 32153476 (N.D.Okla.)
**(Cite as: Not Reported in F.Supp.2d)**

course of conduct that gives rise to the claims of other class members." *See Lax,* 1997 WL 461036, at *6. As discussed above, the Court finds that, to the extent the appointment of HGK as WMB Subclass lead plaintiff presents standing issues, those issues can also be resolved at the appropriate time by the filing of an amended complaint. Second, the Court finds that HGK's representation of the class is adequate for the reasons identified previously with respect to appointment of a lead plaintiff for the WCG Subclass because HGK: (1) has selected qualified and experienced counsel; (2) does not have any present conflicts of interest with the WMB bondholders; and (3) will vigorously prosecute the action.

Accordingly, because HGK (1) filed its lead plaintiff application within 60 days of the notice of the pendency of the action; (2) has been determined by the Court to have the largest financial interest in the litigation's outcome; and (3) satisfies the requirements of Rule 23, HGK is presumed to be the "most adequate" plaintiff. The Court finds that Local 710 has not successfully rebutted this presumption or otherwise shown that HGK cannot or will not adequately represent the class. Accordingly, the Court hereby appoints HGK as the lead plaintiff for the WMB Subclass.

**B. Appointment of Counsel for the WMB Subclass**

The Court now turns to the approval of lead counsel for the WMB Subclass. The Court finds that HGK's selections, Schoengold & Sporn and the Seymour Law Firm, are qualified, experienced counsel who will adequately represent the interests of the class. Accordingly, the Court hereby approves HGK's selection of Schoengold & Sporn and the Tulsa law firm, the Seymour Law Firm, as co-lead counsel for the subclass of purchasers of WMB securities, provided there is no duplication of attorneys' services, and the use of co-lead counsel does not in any way increase attorney fees and expenses. *See Lax,* 1997 WL 461036, at *7.

                                IV

**\*10** On March 15, 2002, the parties filed a Joint

Stipulation and Proposed Scheduling Order to govern the timing of submissions following the entry of the Court's order appointing lead plaintiff and lead counsel. Pursuant to this Order, and in accordance with that Joint Stipulation, the Court hereby orders the following:

1. Lead Plaintiffs for the WCG and WMB Subclasses shall file consolidated amended complaints on behalf of their respective subclasses incorporating all causes of action on behalf of all putative subclass members no later than 45 days from this order;

2. Defendants shall have 45 days from service of the consolidated amended complaints to file responsive pleadings;

3. Lead Plaintiffs shall have 45 days to file any oppositions to the responsive pleadings; and

4. Defendants shall have 15 days to reply to Plaintiffs' opposition.

IT IS SO ORDERED.

N.D.Okla.,2002.
In re Williams Securities Litigation
Not Reported in F.Supp.2d, 2002 WL 32153476 (N.D.Okla.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.