## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRICKMAN INVESTMENTS, INC., *Individually and on Behalf of all others similarly situated*, | **CASE #: 1:07-cv-11086-DAB** |
| Plaintiff, | |
| vs. | |
| SECURITY CAPITAL ASSURANCE LTD, PAUL S. GIORDANO, DAVID SHEA, GOLDMAN, SACHS & CO, J.P. MORGAN SECURITIES INC., MERRILL, LYNCH, PIERCE, FENNER & SMITH INC., and XL INSURANCE LTD., | |
| Defendants. | |
| 2 WEST, INC., *On Behalf of Itself and all others similarly situated*, | **CASE #: 1:07-cv-11358-DAB** |
| Plaintiff, | |
| vs. | |
| SECURITY CAPITAL ASSURANCE LTD, XL INSURANCE, LTD, PAUL S. GIORDANO, and DAVID P. SHEA, | |
| Defendants. | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF RHODE ISLAND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF COUNSEL, AND IN FURTHER OPPOSITION TO COMPETING MOTIONS

15074v1

| | |
|---|---|
| ROBERT CLARKE, *Individually and on Behalf of all others similarly situated*, | **CASE #: 1:08-cv-00158-UA** |
| Plaintiff, | |
| vs. | |
| SECURITY CAPITAL ASSURANCE LTD, PAUL S. GIORDANO, DAVID P. SHEA, XL INSURANCE, LTD., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., GOLDMAN, SACHS & CO., and J.P. MORGAN SECURITIES INC., | |
| Defendants. | |

14984v1

## INTRODUCTION

Class member Employees' Retirement System of the State of Rhode Island ("ERSRI") is

an institutional investor which suffered the largest loss in Security Capital Assurance Ltd.

("Security Capital") of the lead plaintiff candidates. Thus, ERSRI respectfully submits this reply

memorandum in further support of its motion for consolidation,[1] appointment as lead plaintiff

and for approval of its selection of Bernstein Liebhard & Lifshitz, LLP ("Bernstein Liebhard") as

lead counsel for the class, and in further opposition to the competing motions to appoint lead

plaintiff and approve lead counsel that are pending before this Court.[2]

## PRELIMINARY STATEMENT

All movants concede that ERSRI has the largest financial interest in this action and, thus,

is the presumptive lead plaintiff under the Private Securities Litigation Reform Act ("PSLRA").

Indeed, the presumption is even more pronounced here because ERSRI is a public pension fund

– the kind of lead plaintiff explicitly envisioned by Congress when passing the PSLRA. *See*

ERSRI Opposition ("Opp.") at 8-10. To rebut such status, the PSLRA requires *proof* by a class

member that the presumptively most adequate plaintiff "will not fairly and adequately protect the

interests of the class" or "is subject to unique defenses that render such plaintiffs incapable of

adequately representing the class." *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II); 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II).

UFCW and District 9 have failed to offer such proof. UFCW and District 9 – who

collectively lost a mere fraction compared to ERSRI – claim that ERSRI is inadequate to serve as

---

[1]  ERSRI respectfully refers the Court to its opening memorandum for the arguments in favor of consolidating the related actions.

[2]  Motions for appointment as lead plaintiff were also made by: (i) United Food & Commercial Workers Union Local 655, AFL-CIO, Food Employers Joint Pension Plan and District No. 9, I.A. of M. & A.W. Pension Trust ("UFCW and District 9"); and (ii) HGK Asset Management, Inc. ("HGK"). HGK has now agreed to withdraw its motion and supports ERSRI's motion.

lead plaintiff under Rule 23 because ERSRI will not vigorously litigate this action against defendants Security Capital and XL Insurance, Ltd. ("XL") since these defendants can insure, or have insured, bond offerings in the State of Rhode Island; thus, a judgment against them would hurt the State of Rhode Island, where ERSRI resides. UFCW and District 9 Opp. at 2, 5-6. UFCW and District 9 also claim that ERSRI might be tempted to use information found in discovery for its own interests rather than that of the class because it "appears" that ERSRI has a business relationship with Security Capital and XL. *Id.* at 6.

UFCW and District 9's arguments are completely baseless. As discussed in the accompanying Declaration of Frank J. Karpinski, Executive Director for ERSRI, ERSRI is committed to vigorously prosecuting this action against *all* culpable parties. *See* Karpinski Decl. ¶3. Moreover, the supposed links of ERSRI with Security Capital and XL are tenuous at best – UFCW and District 9 cite bond offerings of *private entities* (who happen to reside in Rhode Island) with no affiliation to ERSRI. ERSRI has a fiduciary duty to its pensionholders to maximize recovery here, not a duty to maximize business in the State of Rhode Island. *Cf. id.* ¶¶3, 5-6. Further, UFCW and District 9 have only *speculated* that a judgment against Security Capital and XL will harm the State of Rhode Island. Finally, the claim that ERSRI will be tempted to use information learned in discovery for its own benefit is groundless. Regardless, to address UFCW and District 9's concerns, ERSRI has stated that it has no business relationship with these entities, and, if it is appointed as lead plaintiff, it will not use any information found in discovery for its own benefit. *See id.* ¶7.

Further, courts – including the Third Circuit Court of Appeals in *Cendant* – have repeatedly rejected such speculative "conflicts" raised against prospective lead plaintiffs, particularly when the presumptive lead plaintiff, like ERSRI, is an institutional investor.

Accordingly, UFCW and District 9 have failed to rebut ERSRI's presumptive lead plaintiff status, and ERSRI should be appointed as sole lead plaintiff.

## ARGUMENT

### I.    UFCW AND DISTRICT 9 HAVE NOT REBUTTED ERSRI'S PRESUMPTIVE LEAD PLAINTIFF STATUS

The PSLRA provides that there is a "rebuttable presumption . . . that the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The PSLRA's presumption that the most adequate plaintiff is the "person or group of persons" with the largest financial interest may be rebutted only upon *proof* by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiffs incapable of adequately representing the class." *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As noted, UFCW and District 9 argue that ERSRI will not vigorously pursue claims against defendants Security Capital and XL because they have the "authority" to conduct, and "appear" to have conducted, business in Rhode Island, and UFCW and District 9 speculate that these defendants have "likely" insured bond offerings issued by the State of Rhode Island. UFCW and District 9 Opp. at 2. Thus, UFCW and District 9 argue that a judgment against these entities could hurt the State of Rhode Island. UFCW and District 9 also claim that, due to what "appears" to be a business relationship, ERSRI might be tempted to use information found in discovery for its own interests, rather than that of the class. UFCW and District 9 Opp. at 6.

UFCW and District 9 have not come close to offering the proof required by the PSLRA to rebut ERSRI's presumptive lead plaintiff status. First, as stated in the Karpinski Declaration,

ERSRI is committed to vigorously prosecuting this action against all culpable entities. Karpinski Decl. ¶3. Indeed, ERSRI has a fiduciary duty to its pensionholders – not to the State of Rhode Island. *See id.* at ¶6. Second, UFCW and District 9 have only *speculated* – not demonstrated – that a judgment against Security Capital and XL would be to the detriment of the State of Rhode Island. The entities residing in Rhode Island that have used, or may use, these defendants to insure bond offerings could use other insurers.[3] Moreover, the entities cited by UFCW and District 9 – Rhode Island School of Design, Intrepid USA, Inc., and Providence College – are private entities unaffiliated with the State of Rhode Island. In addition, even if UFCW and District 9 had shown that a judgment against these defendants would have an adverse effect on the State of Rhode Island, it is still pure conjecture that ERSRI would violate its fiduciary duties to its pensionholders in order to possibly facilitate business in the State of Rhode Island. Finally, as noted above, ERSRI does not have a business relationship with Security Capital or XL, and has addressed UFCW and District 9's groundless claim that ERSRI will be tempted to use information learned in discovery to capitalize on any possible business relationship. *See id.* ¶¶3-7.

As noted above, courts have repeatedly rejected such speculative conflicts of interest – particularly when, like here, they are asserted against institutional investors.[4] In *In re Cendant*

---

[3] *Cf. In re Williams Sec. Litig.*, No. 02-CV-72-H, at 2 (N.D. Okla. Dec. 29, 2004) (attached as Ex. A) (institutional investor lead plaintiff's $300 million investment in underwriter defendants did not amount to conflict of interest because "*[n]othing has been presented to demonstrate or predict the potential outcome of this litigation on those holdings* . . . . Under these circumstances, it is conjecture that decisions made in this case will be driven by Ontario Teachers' consideration of the uncertain effect decisions made in this case may have on its holdings in the underwriter defendants") (emphasis added).

[4] UFCW and District 9's one citation on this point, *In re Baan Co. Securities Litigation*, 186 F.R.D. 214, 218 (D.D.C. 1999), bears no relation to the facts of this action and its reasoning has been repeatedly rejected. In *Baan*, the court rejected the motion of a lead plaintiff group where most members continued to hold stock in the subject company: "Depending on their view of the

*Corp. Litig.*, 264 F.3d 201, 243-44 (3d Cir. 2001), *aff'd*, 404 F.3d (3d Cir. 2005), the Third

Circuit Court of Appeals rejected the argument that a lead plaintiff's substantial investment in a

defendant corporation amounted to a conflict of interest:

> Throenle's argument is based on the general assertion that a lead plaintiff who
> retains a substantial investment in a defendant corporation cannot adequately
> represent a class in a lawsuit against that corporation because this lead plaintiff
> will naturally be conflicted between trying to get maximum recovery for the
> class and trying to protect its ongoing investment in the corporation, e.g., by
> settling cheap or by securing corporate governance changes in lieu of cash,
> both of which are alleged here. Because of this, she argues that we should set
> aside the Settlement.

> Throenle's thesis is attractive. The problem with it is that Congress seems to
> have rejected it when it enacted the lead plaintiff provisions of the PSLRA.
> The Reform Act establishes a presumption that the class member "most
> capable of adequately representing the interests of class members" is the
> shareholder with the largest financial stake in the recovery sought by the class.
> 15 U.S.C. § 78u-4(a)(3)(B)(i) & (iii)(I). The plaintiff with the largest stake in
> a given securities class action will almost invariably be a large institutional
> investor, and the PSLRA's legislative history expressly states that Congress
> anticipated and intended that such investors would serve as lead plaintiffs. See
> S. Rep. No. 104-98, at 11 (1995), [as] *reprinted in* 1995 U.S.C.C.A.N. 679,
> 690 ("The Committee intends to increase the likelihood that institutional
> investors will serve as lead plaintiffs by requiring the court to presume that the
> member of the purported class with the largest financial stake in the relief is
> the 'most adequate plaintiff.'") . . . .

> By establishing a preference in favor of having such investors serve as lead
> plaintiffs, Congress must have thought that the situation present here does not
> inherently create an unacceptable conflict of interest. *See id.* ("The
> Committee believes that an institutional investor acting as lead plaintiff can,
> consistent with its fiduciary obligations, balance the interests of the class with
> the long-term interests of the company and its public investors.").

---

market for the Company's product, and the market for the Company's stock, it may be in the
class members' interest to settle for less in this case to preserve the Company's viability, in the
hope of reaping potential benefits from future increases in the stock price." First, in *Baan*, the
court understood the purported conflict as actual; here it is purely speculative. Second, and more
importantly, the overwhelming majority of courts have rejected *Baan*'s reasoning and hold that a
lead plaintiff's ownership in a defendant corporation does *not* amount to a conflict of interest.
*See infra* at 5-7.

Scores of district courts have agreed with this reasoning. For example, in *Gold v. Morrice*, No. CV-07-931 (DDP), slip op. at 13-14 (C.D. Cal. June 27, 2007) (attached as Ex. B), the court also rejected the argument that an institutional investor lead plaintiff's ownership of stock in a defendant (Bear Stearns & Co.) was a debilitating conflict of interest under Rule 23:

> In enacting the PSLRA, Congress envisioned that large institutional investors would often serve as lead plaintiffs. Such institutional investors typically hold stock in large companies. The fact that one of those companies may end up as a defendant at some stage in the litigation is likely not enough to overcome the strong presumption in favor of appointing institutional investors as lead plaintiffs.

*See also A1 Credit Co. f/b/o Eileen Herskowitz v. RAIT Fin. Trust*, No. 2:07 cv-03148-LDD, slip op. at 7 (E.D. Pa. Oct. 2007) (attached as Ex. C) (rejecting argument that institutional investor could not serve as lead plaintiff due to purported "close affiliation [] with the interests of the [defendants'] family"); *Williams*, No. 02-CV-72-H, at 2 (N.D. Okla. Dec. 29, 2004) (cited above); *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2005) (rejecting argument that Ohio Treasurer's Office's practice of purchasing mortgage-backed securities from Fannie Mae "somehow creates a conflict of interest" as "too speculative and hypothetical to rebut the presumption"); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *10 (S.D. Cal. Jan. 5, 2004) (rejecting conflict that was "completely speculative at this point"); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343 (D. Md. 2003) (rejecting conflict argument against institutional investor lead plaintiff where Dutch bank that underwrote defendant corporation's securities and lent money to defendant corporation owned 5% of lead plaintiff during class period); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 574 (D.N.J. 2003) (upholding presumption where corporate parent of institutional investor's corporate parent had an outstanding $20 million loan to defendant company); *In re Vesta Ins. Group Sec. Litig.*, No. CIV.A. 98-AR-1407-S, 1999 WL 34831475, at *8 (N.D. Ala. Oct. 25,

14984v1                                    6

1999) (rejecting conflict argument against institutional investor based on substantial investment in one of defendants, holding that "in this economy with intertwined business relationships of every kind, it is easy to foresee that a large damage award against one entity might negatively impact an equity position with another. If this condition were enough to defeat certification as a class representative, large institutional investors would almost invariably be disqualified; precisely the opposite of what Congress intended in passing PSLRA").[5]

## CONCLUSION

For the foregoing reasons and the reasons given in its opening and opposition memoranda, ERSRI respectfully requests that this Court: (1) consolidate the captioned, and all subsequently-filed, related actions; (2) appoint ERSRI as lead plaintiff in the captioned, and all subsequently-filed, related actions; and (3) approve ERSRI's selection of Bernstein Liebhard as lead counsel.

Dated: March 6, 2008

<div style="margin-left:40%">

Respectfully submitted,

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**

/s/

_____

Sandy A. Liebhard (SL-0835)
Joseph R. Seidman, Jr. (JS-9260)

</div>

---

[5] The SEC has also observed: "[T]he standards for an adequacy challenge must be viewed in the context of the lead plaintiff provisions as a whole . . . . The largest financial interest requirement was itself designed to ensure more effective representation of investors in securities fraud class actions. Congress sought to encourage large investors, including institutions, to serve as lead plaintiffs, and believed that institutions could and would qualify as lead plaintiffs. The Commission believes that the standards for an adequacy challenge must not be read and applied in such a manner that they would nullify the largest financial interest requirement and defeat the purposes of the lead plaintiff provisions . . . . Thus, courts have recognized that generic arguments that would systematically disqualify large investors and institutions from serving as lead plaintiff should not suffice as "proof" [of inadequacy] under the statute." *The SEC Speaks in 1999: Office of The General Counsel Recent Judicial Developments*, 1104 PLI/Corp 291, 484-85 (1999) (internal citations omitted).

10 East 40th Street, 22nd Floor
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

***Counsel for ERSRI and Proposed
Lead Counsel for the Class***

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served upon the following

counsel of record in the consolidated actions filed in this Court, First Class Mail prepaid this 6th

day of March, 2008:

*Attorneys for Plaintiffs*:

**Samuel H. Rudman**
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road,
Suite 200
Melville, NY 11747
Tel: 631/367-7100
Fax: 631/367-1173

**Richard A. Speirs**
Zwerling, Schachter & Zwerling
41 Madison Avenue
New York, NY 10010
Tel: 212/223-3900
Fax: 212/371-5969

**Evan J. Smith**
Brodsky & Smith, L.L.C.
240 Mineola Blvd.,
Mineola, NY 11501
Tel: 516/741-4977

/s/

_____

JOSEPH R. SEIDMAN, JR.

14984v1

9

EXHIBIT A

**FILED**

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

DEC 2 9 2004

Phil Lombardi, Clerk
**U.S. DISTRICT COURT**

IN RE:

WILLIAMS SECURITIES LITIGATION
    WMB SUBCLASS
    WCG SUBCLASS

Case No.    02-CV-72-H (M)

**ENTERED ON DOCKET**

DATE **DEC 3 0 2004**

## REPORT AND RECOMMENDATION

The undersigned previously issued a Report and Recommendation which recommended the appointment of the Ontario Teachers' Pension Plan Board and the Arkansas Teachers Retirement System (Teachers Pension Group) as Lead Plaintiff for the WMB subclass and recommended approval of its choice of counsel as Lead Counsel. [Dkt. 616]. Thereafter, the Court received the objection of Plaintiff Fredric E. Russell Investment Management Co. (Russell) and granted Russell's application to supplement its reply brief. In addition, the Court ordered the Teachers Pension Group to file a response to Russell's Supplemental Reply and recommitted the matter of the appointment of Lead Plaintiff to the undersigned United States Magistrate Judge. [Dkt. 634].

Additional briefs have been filed and in making this Report and Recommendation, the undersigned has fully considered the"Supplement to Reply Brief of Fredric E. Russell Investment Management Co. Inc. to R&R Docketed November 18, 2004" [Dkt. 636]; the "Response of the Ontario Teachers' Pension Plan Board and the Arkansas Teacher Retirement System to Fredric E Russell Investment Management's Submission regarding Ontario Teachers' Stock Holdings" [Dkt. 635]; the "Response Brief of the Ontario Teachers' Pension Plan Board and the Arkansas Teacher Retirement System Pursuant to The

639

Court's December 16, 2004 Order [Dkt. 638]; and "Reply Brief of Fredric E. Russell Investment Management Co. to the Court's Order of December 16, 2004" [Dkt. 637].[1]

The appointment of a lead plaintiff in a private securities action is governed by the detailed procedures set forth in the Private Securities Litigation Reform Act (PSLRA) which require the Court to determine which applicant is "most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B). In determining which applicant should be named lead plaintiff, the Court must accept the presumption that the most adequate plaintiff in any private action is the person(s) who: (1) has either filed the complaint or made a motion in response to a notice; (2) in the determination of the Court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Under the PSLRA, the Court's determination of the "most adequate plaintiff" may be rebutted only upon proof that the presumptive lead plaintiff either: (1) will not fairly and adequately protect the interests of the class; or (2) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

These procedures were applied by the Court in the initial appointment of a lead Plaintiff [Dkt. 128] and by the undersigned in the Report and Recommendation which recommended the appointment of Teachers Pension Group as lead plaintiff [Dkt. 616]. The foregoing provisions of the PSLRA will also provide the framework for reconsideration of the lead plaintiff recommendation.

---

[1] It is peculiar to name a document a reply to a court order when nothing within the Order of December 16, 2004, required, requested, suggested or even permitted a reply by Russell.

The issue presented is whether the substantial stock ownership of Ontario Teachers in several of the underwriter defendants constitutes proof that the Teachers Pension Group will not fairly and adequately protect the interests of the class so as to rebut the statutory presumption imposed by the PSLRA that the Teachers Pension Group is the "most adequate plaintiff."[2]  15 U.S.C. § 78u-4(3)(B)(iii)(II).

Russell argues that because Ontario Teachers owns approximately $300 million of stock in the underwriter defendants, Teachers Pension Group has a conflict of interest as lead plaintiff between vigorously prosecuting the underwriter defendants and protecting its own financial interests in the underwriter defendants.

Certainly this argument has some force and might well be persuasive in a case not governed by the PSLRA.  However, based on the lead plaintiff provisions of the PSLRA, its legislative history, the observations of the Securities and Exchange Commission (SEC), and the cases addressing the issue, as hereafter discussed, the undersigned concludes that a plaintiff's substantial stock ownership in a defendant does not automatically disqualify the plaintiff from serving as lead plaintiff under the PSLRA.  The undersigned

---

[2]  A preliminary issue, which is properly reserved to the district judge, is whether Russell has waived any objection to the appointment of Teachers Pension Group as lead plaintiff based on Ontario Teachers stock ownership.  Russell failed to assert Ontario Teachers stock ownership as an issue in the lead plaintiff proceedings before the magistrate judge or in its objections to the Report and Recommendation which recommended appointment of Teachers Pension Group as lead plaintiff.  Thus the record clearly establishes that Russell failed to make a timely objection.  Further, it is apparent that information concerning the stock ownership was available throughout the proceedings before the magistrate judge and therefore before objections were due.  Based on these considerations, a strong argument can be made that in this lengthy, complicated case, late objections should not be permitted.  This argument is strengthened by the fact that the objection is posed by Russell, a class member who is not the next most adequate plaintiff under the PSLRA and therefore would likely not be appointed lead plaintiff even if Teachers Pension Group were disqualified.  Moreover, the late objection is posed by a class member who does not have any pending claims against the underwriter defendants.

3

further concludes that nothing peculiar to this case disqualifies Teachers Pension Group from serving as lead plaintiff under the PSLRA.

The parties have cited four reported cases dealing with similar issues in the PSLRA context and counsel for Teachers Pension Group has filed a declaration asserting that courts have appointed lead plaintiffs with substantial ownership interests in defendants in five ongoing cases under the PSLRA. In three of the four cases cited, courts have concluded that "huge," "major" or "significant" ownership interests in defendants do not preclude plaintiffs from serving as lead plaintiffs under the PSLRA. In the other case the court found, without providing any analysis of the PSLRA issue, that stock ownership in the defendant disqualified the presumptive lead plaintiff from serving in that capacity on claims against that defendant.[3] Thus the weight of authority supports the appointment of Teachers Pension Group as Lead Plaintiff despite Ontario Teachers ownership of stock in the defendant underwriters.

In *In re Cendant Corporation Litigation*, 264 F.3d 201 (3rd Cir. 2001) (*Cendant II*) the Third Circuit considered whether a settlement should be set aside because the lead plaintiff continued to hold "huge amounts" of Cendant stock during settlement negotiations. *Id.* at 243. The Court upheld the settlement, reasoning that the conflict of interest argument was inconsistent with the lead plaintiff provisions in the PSLRA.

---

[3] The one case seemingly supportive of Russell's position is *In re Cendant*, 182 F.R.D. 144 (D. N.J. 1998) (*Cendant I*). In that case the Court appointed a co-lead plaintiff to assert claims against Merrill Lynch because CalPERS, the presumptive lead plaintiff, held $300 million stock in that company. Curiously, CalPERS was permitted to serve as lead plaintiff to assert claims against Cendant, although CalPERS continued to hold "huge amounts" of Cendant stock. *In re Cendant*, 264 F.3d 201, 243 (3rd Cir. 2001)(*Cendant II*).

[The conflict of interest] thesis is attractive. The problem with it is that Congress seems to have rejected it when it enacted the lead plaintiff provisions of the PSLRA. The Reform Act establishes a presumption that the class member "most capable of adequately representing the interests of class members" is the shareholder with the largest financial stake in the recovery sought by the class. 15 U.S.C. § 78u-4(a)(3)(B)(I) & (iii)(I). The plaintiff with the largest stake in a given securities class action will almost invariably be a large institutional investor, and the PSLRA's legislative history expressly states that Congress anticipated and intended that such investors would serve as lead plaintiffs. See S. Rep. No. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief is the 'most adequate plaintiff.' "). We presume that Congress was aware that an institutional investor with enormous stakes in a company is highly unlikely to divest all of its holdings in that company, even after a securities class action is filed in which it is a class member.

By establishing a preference in favor of having such investors serve as lead plaintiffs, Congress must have thought that the situation present here does not inherently create an unacceptable conflict of interest. See id. ("The Committee believes that an institutional investor acting as lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors."). For this reason, the simple fact that the institutional investors who comprise Lead Plaintiff retained Cendant stock while the Settlement was negotiated is not nearly enough, standing alone, to support [the] claim that Lead Plaintiff was so conflicted that the Settlement should be overturned.

Cendant II, 264 F.3d at 243-244. [footnotes omitted].[4]

_____

[4]  The Cendant II Court noted that although the matter was not before it, an issue of potential intra-class conflict may present a problem between the interests of those who purchase and hold stock in the defendant firm and those who purchased and sold stock in the defendant. The Court emphasized that the conflict was not one of identification of a lead plaintiff under the PSLRA, but of class configuration under Fed.R.Civ.P. 23. Cendant II, 264 F.3d at 244 n.25.

(continued...)

The undersigned has also found the following language concerning certification of a large pension plan with an equity position in defendant as class representative to be insightful:

> More significant, from this court's perspective is the unequivocal policy position expressed by Congress when it passed the . . . [PSLRA] in 1995, demonstrat[ed] its intent that large institutional investors should be encouraged to serve as class representatives in securities fraud class actions. There can be no doubt that Congress understood that large institutional investors with multi-billion dollar portfolios would likely always hold equity investments in a broad spectrum of companies, some of which would likely be defendants in securities cases. As the legislative history of the PSLRA demonstrates, Congress found that "institutional investors are America's largest shareholders, with about $9.5 trillion in assets, accounting for fifty-one percent of the equity market." Even if these equity investments are not held in named defendants, in this economy with intertwined business relationships of every kind, it is easy to foresee that a large damage award against one entity might negatively impact an equity position with another. If this condition were enough to defeat certification as a class representative, large institutional investors would almost invariably be disqualified; precisely the opposite of what Congress intended in passing PSLRA.

> As the SEC has recently observed:
>> The standards for an adequacy challenge must be viewed in the context of the lead plaintiff provisions as a whole. . . . The largest financial interest requirement was itself designed to ensure more effective representation of investors in securities fraud class actions. Congress sought to encourage large investors, including institutions, to serve as lead plaintiffs, and

---

[4] (...continued)

Throughout Russell's submissions it is suggested that appointment of the Teachers Pension Group presents problems of class certification. The undersigned has not attempted to address those contentions. Like the *Cendant II* Court, the undersigned sees the appointment of a lead plaintiff under the PSLRA and class certification under Rule 23 as separate issues. Class certification under Rule 23 is not before the Court at this point. Appointment of lead plaintiff under the PSLRA is. It is appropriate to take up class certification issues according to the case schedule upon full briefing of those issues.

believed that institutions could and would qualify as lead plaintiffs. The Commission believes that the standards for an adequacy challenge must not be read and applied in such a manner that they would nullify the largest financial interest requirement and defeat the purposes of the lead plaintiff provisions. . . . Thus, courts have recognized that generic arguments that would systematically disqualify large investors and institutions from serving as lead plaintiff should not suffice as "proof" [of inadequacy] under the statute.

The SEC Speaks in 1999: Office of The General Counsel Recent Judicial Developments, 1104 PLI/Corp 291, 484-85 (1999) (internal citations omitted).

This court finds that defendants' argument here, that FSBA should be disqualified because of the conflict between the members of the class and its pension beneficiaries, could be an argument against certifying almost all institutional-investors. This argument amounts to a "generic argument that would systematically disqualify large investors and institutions from serving as lead plaintiff." While there may be the occasional extreme case where a conflict of this type is too great and simply dominates the landscape too completely to ignore, in light of the policy behind that [sic] PSLRA, disqualification on this basis should be the exception rather than the rule. Accordingly, the court finds that FSBA, having taken all steps toward vigorously pursuing the claims against Vesta and Torchmark, is adequately representing the interests of the absent class members. Any speculation regarding potential conflicts of interest will not defeat FSBA's certification as a class representative.

In re Vesta Insurance Group, Inc., Securities Litigation, 1999 US Dist Lexis 22233 *28-32 (N.D. Ala. Oct. 25, 1999)(internal citations and footnotes omitted)(rejecting argument that a conflict existed between pension fund and members of the class where proposed class representative held a significant interest in a defendant company). See also Perelli Armstrong Tire Corporation v. Labranch & Co., Inc., 2004 WL 1179311 *17 (S.D.N.Y.))(citing Cendant II and concluding that in enacting the PSLRA lead plaintiff

provisions which anticipate and intend that large institutional investors will serve as lead plaintiff, Congress rejected the thesis that ownership of stock in a defendant creates an inherent and unacceptable conflict of interest).

In contrast to the reasoned analysis provided in the above-cited cases, in *In re Cendant*, 182 F.R.D. 144 (D. N.J. 1998) (*Cendant I*), which Russell asserts requires disqualification of the Teachers Pension Group [Dkt. 637, p. 4], the Court compared the presumptive lead plaintiff's $300 million investment holdings in the Defendant to its alleged loss of $6.4 million and, without providing any analysis of the PSLRA, stated that "[t]he Court simply does not believe nor find that the [presumptive lead plaintiff] can overcome this substantial conflict of interest and fully protect the [class] interests." *Id.* at 149. The undersigned is not persuaded that merely making a comparison between the stock holdings and losses is particularly instructive.

An investment of $300 million is undoubtedly substantial. However, to put the $300 million in context, that figure should be compared to Ontario Teachers' net assets of $80 billion (CND). According to the currency converter found at the Bank of Canada web site, http://www.bank-banque-canada.ca/en/exchform.htm, as of noon December 29, 2004, $1 Canadian equaled $.82 US. At that rate, $80 billion (CND) is approximately $65.6 billion US. So, in American dollars, $300 million constitutes roughly .457% of Ontario Teachers entire net assets.

There are myriad factors which may affect Ontario Teachers holdings in the underwriter defendants. Nothing has been presented to demonstrate or predict the potential outcome of this litigation on those holdings. Further, nothing has been presented

to suggest that this lawsuit places the entirety of Ontario Teachers' holdings in the underwriter defendants at risk, so the potential effect this lawsuit will have on Ontario Teachers net assets is likely far smaller than the .457% of its net assets represented by its holdings in the underwriter defendants. Under these circumstances, it is conjecture that decisions made in this case will be driven by Ontario Teachers' consideration of the uncertain effect decisions made in this case may have on its holdings in the underwriter defendants. In sum, the undersigned finds that the connection between Ontario Teachers decision making as lead plaintiff in this case and the effect those decisions may have on its holdings in the underwriter defendants is just too far attenuated to constitute the necessary proof that Ontario Teachers will fail to fairly and adequately protect the interests of the class.

In addition to the foregoing, the undersigned is persuaded that the alleged conflict of interest does not disqualify Ontario Teachers from serving as lead plaintiff. Ontario Teachers purchased its WMB shares on the open market, as apparently did Russell. It is named plaintiffs Local 710 and Gary Kossoff who have standing to assert claims against the underwriters. Notably, neither Local 710 nor Gary Kossoff have asserted any objection to the appointment of the Teachers Pension Group as Lead Plaintiff, in fact both have endorsed the appointment. [Dkt. 623, 626]. Further none of the other parties who sought to be named as lead plaintiff, and who have losses far greater than that alleged by Russell,[5] and would therefore be next in line for appointment as lead plaintiff, have expressed any objection to the appointment of Ontario Teachers or Teachers Pension

---

[5] Williams' Institutional Investors Groups has a loss of $7.59 million and Pace Coalition has a loss of $5.0 million, compared to Russell's loss of $2.0 million.

Group as Lead Plaintiff. In addition, Ontario Teachers has filed a declaration pledging to "vigorously pursue" claims against the underwriter defendants to achieve the best possible result for all investors in the WMB Subclass. [Dkt. 638; Ex. A, ¶ 3]. And, finally, as Lead Plaintiff the Teachers Pension Group will be acting under the watchful eyes of the other Plaintiffs and the Court.

Having fully considered the matter, the undersigned finds that the objections raised in Russell's Supplemental Reply Brief [Dkt. 636] provide no basis for changing the Report and Recommendation filed November 17, 2004, [Dkt. 616]. A substantial investment in a defendant does not automatically rebut the lead plaintiff presumption of the PSLRA. As phrased in *Vesta*, the issue is whether the case before the Court is "the occasional extreme case where a conflict of this type is too great and simply dominates the landscape too completely to ignore." *Vesta*, 1999 U.S. Dist. Lexis 22233 * 31. The undersigned finds Russell has failed to prove that this is such a case. Russell has presented only conjecture, not proof, that the Ontario Teachers and the Teachers Pension Group will not fairly and adequately protect the interests of the class. Therefore the presumption that Teachers Pension Group is the most adequate plaintiff under the PSLRA has not been rebutted.

The undersigned also rejects Russell's contention that counsel have failed in their duty of candor to the Court. The Court did not request this information from applicants seeking to serve as lead plaintiff and there has been no citation to any rule or other authority suggesting that Ontario Teachers had any duty to disclose its stock holdings to the Court. Moreover, the information was publicly available.

The undersigned hereby RE-ADOPTS the Report and Recommendation filed November 17, 2004 [Dkt. 616] and RECOMMENDS that the Motion of the Ontario

10

Teachers' Pension Plan Board and the Arkansas Teacher Retirement System to Serve as Lead Plaintiffs for the WMB Subclass and For Approval of Their Selection of Counsel [Dkt. 592] be GRANTED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this report and recommendation. The Court's Order of December 16, 2004 [Dkt. 634], directed that objections to this report and recommendation are be filed on an expedited basis. **In accordance with the Court's Order, specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before January 6, 2005. Teachers Pension Group may also file a final brief on the issue by January 6, 2005. No further briefing will be permitted.**

If specific written objections are timely filed, Fed.R.Civ.P. 72(b) directs the district judge to:

> make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b); see also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d

11

656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de

novo review by the district court or for appellate review.

DATED this 29 ^th day of December, 2004.

Frank H. McCarthy
United States Magistrate Judge

CERTIFICATE OF SERVICE

The undersigned certifies that a true copy
of the foregoing pleading was served on each
of the parties hereto by mailing the same to
them or to their attorneys of record on the
30 Day of December, 2004

12

EXHIBIT B



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVI GOLD, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>BRAD A. MORRICE, TAJ. S. BINDRA, ROBERT K. COLE, PATTI M. DODGE, NEW CENTURY FINANCIAL CORP.,<br><br>                    Defendants. | Case No. CV 07-00931 DDP (JTLx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART VARIOUS PLAINTIFFS' MOTIONS REGARDING CONSOLIDATION, LEAD PLAINTIFF STATUS, AND LEAD COUNSEL STATUS**<br><br>[Motions of NYS Teachers, Joe Verne, Charles Hooten, Reinhard Barthel, and PSP Group (Docket Nos. 17, 24, 30, 34, 41, respectively) filed on April 10, 2007; Kaufman Trust's motion transferred (Docket. No. 113) on May 14, 2007] |

This matter is before the Court on plaintiffs' motions regarding consolidation, appointment of lead plaintiff, and appointment of lead counsel.[1] After reviewing the papers submitted by the parties, the Court consolidates the actions, appoints the

_____

[1] Several plaintiffs filed motions and subsequently withdrew them. Accordingly, the motions the Court has reviewed and addressed in this tentative ruling are those filed by: NYS Teachers (Docket No. 17); Joe Verne (Docket No. 24); Charles Hooten (Docket No. 30); Reinhard Barthel (Docket No. 34); "Preferred Share Purchasers Group" ("PSP Group") (Docket No. 41); and Jay Peter Kaufman Revocable Trust ("Kaufman Trust").

1  New York State Teachers Retirement System ("NYS Teachers") as lead

2  plaintiff, and appoint its counsel as lead counsel.

3

4  **I.    BACKGROUND**

5       These actions are securities purchaser class action lawsuits

6  that have been brought against certain officers and/or directors of

7  New Century, alleging violations of Sections 10(b) and 20(a) of the

8  Securities Exchange Act of 1934 and Rule 10b-5.[2]  The following

9  factual summary is based on the common allegations of the many

10 plaintiffs' complaints:

11      New Century is organized as a real estate investment trust

12 under the laws of Maryland, with its principal executive offices in

13 Irvine, California.  Throughout the class period, Defendants

14 artificially inflated the price of New Century securities through

15 false and misleading statements concerning New Century's finances

16 and mortgage lending business.  In particular, at all relevant

17 times, New Century maintained inadequate reserves against losses

18 associated with loan delinquencies.  These understated reserves

19 caused New Century to overstate its publicly reported earnings

20 significantly.  This manipulation created the false impression that

21 New Century employed appropriate mechanisms and procedures to

22 manage the risks associated with its subprime lending business,

23 thereby bolstering New Century's false and misleading statements to

24 that effect during the class period.

25

26

27

28        [2]  As discussed below, a few plaintiffs are also alleging
   violations of Section 11.

1    Moreover, during the period of Defendants' misconduct and the
2 artificial inflation in New Century stock, certain key officers and
3 directors of New Century engaged in significant insider sales.

4    On February 7, 2007, after the market had closed for the day,
5 New Century announced that it would have to restate its 2006
6 financial statements for the first three quarters of 2006.  New
7 Century also delayed filing its annual report on Form 10-k for the
8 fiscal year ended December 31, 2006.  According to New Century, its
9 "restated net income [would be] significantly lower than previously
10 reported" for all three quarters as a result of the improper
11 application of generally accepted accounting principles ("GAAP") to
12 New Century's financial reserves for loan delinquencies.  New
13 Century also disclosed that it was investigating whether its
14 financial statements for prior periods were similarly misstated.

15    The next day, shares of New Century's stock declined $10.92
16 per share (or 36 percent) to close at $19.24 per share.  They have
17 been steadily declining ever since.  The Securities and Exchange
18 Commission, the U.S. Attorney's Office, and the Market Trading
19 Analysis Department of the New York Stock Exchange ("NYSE") all
20 have commenced investigations related to these disclosures and, on
21 March 13, 2007, New Century was suspended from trading on the NYSE.
22 New Century filed for Chapter 11 bankruptcy protection on April 2,
23 2007, and subsequently terminated over three thousand of its
24 employees.

25    In the wake of New Century's corrective disclosures, numerous
26 class actions were filed in the Central District of California.
27 The first such complaint, Avi Gold v. Brad A. Morrice, et al., was
28 filed on February 8, 2007.  Numerous notices of the pendency of the

3

1 class actions were also published over a widely circulated national
2 business-oriented service, alerting class members to the April 10,
3 2007 deadline to submit motions seeking to serve as lead plaintiff
4 on behalf of the New Century investors.  The first notice referred
5 to a class period extending from May 4, 2006 until February 7,
6 2007.  Subsequent notices expanded this class period to extend from
7 February 3, 2005 through March 2, 2007.

8    Several plaintiffs have filed motions regarding consolidation
9 of the actions, appointment of lead plaintiff, and appointment of
10 lead counsel.  The Court has reviewed all submissions in writing
11 this tentative ruling.[3]

12

13 **II.  CONSOLIDATION**

14    The Private Securities Litigation Reform Act of 1995 ("PSLRA")
15 provides that where there are multiple actions on behalf of a class
16 asserting substantially the same claim or claims, a court shall
17 resolve the issue of consolidation before appointing a lead
18 plaintiff. . Consolidation is appropriate when there are several
19 actions involving common questions of law or fact.  See 15 U.S.C. §
20 78u-4(a)(3)(B)(ii); Fed. R. Civ. P. 42(a).

21    There are over twenty securities class action complaints
22 currently pending before this Court on behalf of investors in New
23 Century securities.  All of the related actions allege class action
24 claims for violations of Section 10(b) and 20(a) of the Exchange
25 Act on behalf of class members who purchased or otherwise acquired

26  ————————————————————————————
27    [3]  The Court hereby grants the Kaufman Trust's motion to file
     a response to the dual filings of the PSP Group, dated June 11 and
     June 13, 2007.  The Court has reviewed the Kaufman Trust's response
28 to PSP Group's filings.

4

1  New Century securities during the class period.  Each of the
2  related actions names the same defendants and asserts similar class
3  claims brought on behalf of purchasers of New Century securities
4  who purchased in reliance on the materially false and misleading
5  statements and omissions at all relevant times.  Accordingly,
6  consolidation is appropriate here under the PSLRA and Federal Rule
7  of Civil Procedure 42(a).

8      The only movant to oppose consolidation is the PSP Group.  The
9  PSP Group's principal argument against consolidation is that,
10  because preferred shareholders have priority over common
11  shareholders in a bankruptcy liquidation, there is a conflict of
12  interest between the preferred shareholders and the common
13  shareholders.  This argument, however, does not justify ordering
14  these actions to proceed separately.  Litigation against New
15  Century is automatically stayed during the pendency of the
16  bankruptcy.  11 U.S.C. § 362(a).  However, the securities class
17  action against the individual defendants will be unimpeded by New
18  Century's bankruptcy proceedings.  It will be up to the bankruptcy
19  court, rather than this Court, to determine which class of
20  shareholders has liquidation priority over the other.  11 U.S.C. §
21  1123; In re Enron Sec. Litig., 206 F.R.D. 427, 451 (S.D. Tex. 2002)
22  (declining opposition to consolidation by reasoning that
23  "[u]ltimately the bankruptcy court will determine the priority or
24  preference status of the various securities holders here for claims
25  against Enron.").  The fact that the preferred shareholders will
26  have a different liquidation priority status in bankruptcy than the
27  common shareholders is not enough to overcome the strong preference
28  for consolidating these securities cases which share a common core

1 of facts and legal issues.  Therefore, the Court consolidates the

2 actions into one case, In re New Century.[4]

3

4 **III.  LEAD PLAINTIFF**

5     The Ninth Circuit has held that the PSLRA "provides a simple

6 three-step process for identifying the lead plaintiff" in a

7 securities fraud case.  In re Cavanaugh, 306 F.3d 726, 729 (9th

8 Cir. 2002).

9     First, the plaintiff who files the first action must, within

10 20 days of filing the action, publish a notice to the class

11 informing class members of their right to file a motion for

12 appointment as lead plaintiff.  Id.; 15 U.S.C. § 78u-4(a)(3)(A)(I).

13 Within 60 days after publication of the required notice, any member

14 or members of the proposed class may apply to the Court to be

15 appointed as lead plaintiff, whether or not they have previously

16 filed a complaint in the action.  Id.

17     Next, the Court shall appoint as lead plaintiff the movant

18 that the Court determines to be most capable of adequately

19 representing the interests of class members within 90 days after

20 publication of the initial notice of pendency.  15 U.S.C § 78u-

21 4(a)(3)(B)(I).  In determining who is the "most adequate

22 plaintiff," the Exchange Act provides that:

23         The court shall adopt a presumption that the most adequate

24         plaintiff in any private action arising under this title is

25         the person or group of persons that:

26 ─────────────────────

27     [4] As the Enron court noted, consolidation for pretrial
matters does not necessarily mean that the claims will all be tried

28 together, especially where the nature of the evidence and damages
issues differ substantially.  Enron, 206 F.R.D. at 438.

1    (aa) has either filed the complaint or made a motion

2    in response to a notice

3    (bb) in the determination of the court, has the

4    largest financial interest in the relief sought by the

5    class; and

6    (cc) otherwise satisfies the requirements of Rule 23

7    of the Federal Rules of Civil Procedure [pertaining to

8    class actions].

9 15 U.S.C. 78u-4(a)(3)(B)(iii); Cavanaugh, 306 F.3d at 729-30; In re

10 Cendant Corp. Litig., 264 F.3d 201, 262 (3d Cir. 2001) (citing 15

11 U.S.C. 78u-4(a)(3)(B)(iii)).

12    As a third and final step, the court must "give other

13 plaintiffs an opportunity to rebut the presumptive lead plaintiff's

14 showing that it satisfies Rule 23's typicality and adequacy

15 requirements." Cavanaugh, 306 F.3d at 730. The Cavanaugh court

16 cautioned that a straightforward application of the statutory

17 scheme provides no occasion for comparing plaintiffs with each

18 other on any basis other than their financial stake in the case; so

19 long as the plaintiff with the largest losses satisfies the

20 typicality and adequacy requirements, she is entitled to lead

21 plaintiff status, even if the district court is convinced that some

22 other plaintiff would do a better job. Id. at 732.

23

24    A.   Publication

25    Plaintiff in the first-filed action published a notice on

26 Market Watch on February 9, 2007. This notice indicated that

27 applications for appointment as lead plaintiff were to be made no

28

1  later than April 10, 2007.[5]  Thus, the Court finds that the
2  publication requirement was been met.

3

4    **B.    Largest Financial Interest**

5    Courts in this Circuit generally look to three factors in
6  determining which plaintiff has the largest financial interest in
7  the litigation:  (1) the number of shares that the plaintiffs
8  purchased during the class period; (2) the total net funds expended
9  by the plaintiffs during the class period; and (3) the approximate
10 losses suffered by the plaintiffs.  See, e.g., Ferrari v. Gisch,
11 225 F.R.D. 559, 604 (C.D. Cal. 2004).

12    A review of the declarations and briefs submitted by the
13 movants shows that NYS Teachers is the presumptive lead plaintiff
14 because it has suffered, by far, the largest loss overall.  NYS
15 Teachers purchased 1,362,500 shares of New Century common stock on
16 a gross basis during the class period.  During the same period, NYS
17 Teachers sold only a small portion of these shares, resulting in
18 net purchases of 1,300,100 shares.  NYS Teachers expended a total
19 of $52,745,180.00 on these purchases.  As a result of the
20 revelations of Defendant's misconduct, NYS Teachers suffered
21 approximately $50 million in losses.  Specifically, NYS Teachers
22 lost $48,976,835.76 on a LIFO ("last in, first out") basis and
23 $50,837,398.56 on a FIFO ("first in, first out") basis.  (Nicholas
24 Decl., Exs. D & E.)

25    Given that NYS Teachers is clearly the investor with the
26 largest overall losses - nearly ten times those of any other

27 ────────────

28    [5] For purposes of this tentative, the Court accepts the
   Kaufman Trust's motion as timely.

8

1 plaintiff applying for lead plaintiff status - the Court is finds

2 that NYS Teachers is the presumptive lead plaintiff.

3

4     **C.**   **Rule 23**

5     In <u>Cavanaugh</u>, the Ninth Circuit stated that once the court has

6 identified the plaintiff with the greatest financial stake in the

7 lawsuit, it "must then focus its attention on that plaintiff and

8 determine, based on the information he has provided in his

9 pleadings and declarations, whether he satisfies the requirements

10 of Rule 23(a), in particular those of 'typicality' and 'adequacy.'

11 " <u>Id.</u> at 730.  At this stage, the court "must rely on the

12 presumptive lead plaintiff's complaint and sworn certification;

13 there is no adversary process to test the substance of those

14 claims." <u>Id.</u>  A wide ranging analysis "is not appropriate and

15 should be left for consideration of a motion for class

16 certification." <u>Fischler v. AmSouth Bancorp.</u>, 1997 WL 118429, at

17 *2 (M.D. Fla. Feb. 6, 1997).  Moreover, as noted by the Third

18 Circuit in <u>Cendant</u>, "institutional investors and others with large

19 losses will, more often than not, satisfy the typicality and

20 adequacy requirements." <u>Cendant</u>, 264 F.3d at 264.

21

22     **1.**   **Typicality**

23     The typicality inquiry is intended to assess whether the

24 action can be efficiently maintained as a class and whether the

25 lead plaintiffs have incentives that align with those of absent

26 class members so that the absentees' interests will be fairly

27 represented. <u>Baby Neal v. Casey</u>, 43 F.3d 48, 57 (3d Cir. 1994)

28 (citation and ellipses omitted).  Under Rule 23's permissive

1   standards, representative claims are "typical" if they are
2   reasonably co-extensive with those of absent class members; they
3   need not be substantially identical.   <u>Hanlon v. Chrysler Corp.</u>,
4   150 F.3d 1011, 1019 (9th Cir. 1998).   "Typicality entails an
5   inquiry whether the named plaintiff's individual circumstances are
6   markedly different or . . . the legal theory upon which the claims
7   are based differs from that upon which the claims of other class
8   members will perforce be based."   <u>Takeda v. Turbodyne Tech., Inc.</u>,
9   67 F.Supp.2d 1129, 1136-37 (C.D. Cal. 1999) (citations omitted).
10       Here, the NYS Teachers' claims are typical because, just like
11  other proposed class members, NYS Teachers: (1) purchased or
12  acquired New Century securities during the class period, (2) at
13  prices alleged to be artificially inflated by New Century's
14  materially false and misleading statements and omissions, and (3)
15  suffered damage as a result.   <u>See Tanne v. Autobytel, Inc.</u>, 226
16  F.R.D. 659, 667 (C.D. Cal. 2005).   Consequently, NYS Teachers'
17  claims are similar to those of the other proposed class members.
18  Accordingly, the Court finds that NYS Teachers has made a
19  preliminary showing that it satisfies the typicality requirement of
20  Rule 23.

21

22           **2.   Adequacy**

23       Rule 23(a) also requires that the person(s) representing the
24  class be able to "fairly and adequately protect the interests" of
25  all members in the class.   Fed. R. Civ. P. 23(a)(4).   Whether the
26  class representative will adequately represent the class depends on
27  the circumstances of each case.   <u>McGowan v. Faulkner Concrete Pipe</u>
28  <u>Co.</u>, 659 F.2d 554, 559 (5th Cir. 1981).   The Ninth Circuit has held

1 that representation is "adequate" when: (1) the representative's
2 interests are not antagonistic to the interests of absent class
3 members; (2) it is unlikely that the action is collusive; and (3)
4 counsel for the class is qualified and competent. <u>In re Northern</u>
5 <u>Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.</u>, 693 F.2d 847,
6 855 (9th Cir. 1982).

7　　　　In addition, the class representative must have a sufficient
8 interest in the outcome of the case to ensure vigorous advocacy.
9 <u>See</u> <u>Riordan v. Smith Barney</u>, 113 F.R.D. 60, 64 (N.D. Ill. 1986).
10 "Adequacy, for purposes of the lead plaintiff determination, is
11 contingent upon both the existence of common interests between the
12 proposed lead plaintiffs and the class, and a willingness on the
13 part of the proposed lead plaintiff[s] to vigorously prosecute the
14 action." <u>In re Milestone Scientific Sec. Lit.</u>, 183 F.R.D. 404, 416
15 (D. N.J. 1998).

16　　　　Here, NYS Teachers is an adequate plaintiff because it has
17 suffered the greatest financial loss, ensuring vigorous advocacy.
18 It has submitted a certification affirming its understanding of the
19 duties owed to class members through its commitment to oversee the
20 prosecution of this class action. (<u>See</u> Nicholas Decl., Exs. A &
21 F.)  Moreover, NYS Teachers is a classic example of the type of
22 lead plaintiff envisioned by Congress in its enactment of the
23 PSLRA. <u>See, e.g.</u>, <u>Cendant</u>, 404 F.3d at 180 (holding that the PSLRA
24 establishes "a paradigm in which the plaintiff with the largest
25 stake in the case, usually a large and sophisticated institution,
26 is accorded the status of lead plaintiff and assigned the right to
27 appoint and duty to monitor·lead counsel for the class").  Finally,
28

11

1 there is no evidence that NYS Teachers' action is collusive.[6]
2 Accordingly, the Court finds that NYS Teachers has made a
3 preliminary showing that it satisfies the adequacy requirement of
4 Rule 23.

5

6         **3.   Conclusion Regarding Rule 23**

7     NYS Teachers has made a prima facie showing that it satisfies
8 both the typicality and adequacy requirements of Rule 23. The
9 Court concludes that NYS Teachers is presumptively the most
10 adequate lead plaintiff. See <u>Cavanaugh</u>, 306 F.3d at 730.

11

12     **D.   Rebutting the Presumption**

13     Pursuant to the PSLRA, the statutory presumption in favor of
14 the most adequate plaintiff can only be rebutted in two ways. As
15 provided in the statute:

16       The presumption . . . may be rebutted only upon proof by a
17       member  of  the  purported  plaintiff  class  that  the
18       presumptively most adequate plaintiff -

19           (aa)  will  not  fairly  and  adequately  protect  the
20           interests of the class; or

21           (bb) is subject to unique defenses that render such
22           plaintiff incapable of adequately representing the
23           class.

24 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); see also <u>Advanced Tissue</u>
25 <u>Sciences</u>, 184 F.R.D. at 350-51. As noted in <u>Cendant</u>, "once the
26 presumption is triggered, the question is not whether another

27

28       [6]   See discussion at III.D.2, <u>infra</u>.

1  movant might do a better job of protecting the interests of the

2  class than the presumptive lead plaintiff; instead, the question is

3  whether anyone can _prove_ that the presumptive lead plaintiff will

4  not do a fair and adequate job." _Cendant_, 264 F.3d at 267

5  (internal quotations omitted) (emphasis added).

6

7        **1.    Verne**

8        Movant Joe Verne initially requested that the purchasers of

9  Series B Preferred Stock form an independent class or subclass.

10 However, in light of New Century's May 24, 2007 admission that its

11 2005 financial statements can no longer be relied upon, he "no

12 longer sees a conflict between purchasers of the Series A Preferred

13 Stock and purchasers of the Series B Preferred stock." (Response

14 of Lead Plaintiff Movant, Joe Verne, to the Preferred Share

15 Purchaser Group's Motion to Oppose Consolidation, at 1.)

16 Accordingly, Verne no longer opposes NYS Teachers' motion for

17 appointment as lead plaintiff. Thus, the Court finds that Verne

18 has not rebutted the presumption that NYS Teachers should be

19 appointed as lead plaintiff.

20

21       **2.    Hooten**

22       Movant Charles Hooten is the only movant to assert that NYS

23 Teachers is conflicted from serving as lead plaintiff. First, he

24 argues that NYS Teachers may own common stock of Bear Stearns &

25 Co., a large financial institution that could possibly be a

26 defendant in this action. However, he has not submitted any

27 evidence that NYS Teachers owns such stock, and "speculations about

28 possible conflicts do not rebut the statutory presumption that one

                                   13

1  lead plaintiff can vigorously pursue all available causes of action
2  against all possible defendants under all available legal
3  theories." <u>Aronson v. McKesson</u>, 79 F.Supp.2d 1146, 1151 (N.D. Cal.
4  1999) (emphasis omitted).  Furthermore, even if Hooten had
5  submitted evidence that NYS Teachers owned common stock of Bear
6  Stearns & Co., that evidence would likely not constitute "proof" of
7  a conflict.  In enacting the PSLRA, Congress envisioned that large
8  institutional investors would often serve as lead plaintiffs.  Such
9  institutional investors typically hold stock in a large companies.
10 The fact that one of those companies may end up as a defendant at
11 some stage in the litigation is likely not enough to overcome the
12 strong presumption in favor of appointing institutional investors
13 as lead plaintiffs.

14      Hooten also argues that NYS Teachers is conflicted because it
15 is audited by KPMG, the same company that audits New Century.
16 Courts that have addressed this argument, however, have found it
17 "unremarkable" that a large corporation and a large institutional
18 investor use the same large auditing firm.  <u>See, e.g.</u>, <u>In re</u>
19 <u>Electronic Date Systems Corp. Sec. Litig.</u>, 226 F.R.D. 559, 565
20 (E.D. Tex. 2005).  The Court agrees with this reasoning and finds
21 that Hooten's allegations of conflict have failed to rebut the
22 presumption that NYS Teachers should be appointed as lead
23 plaintiff.

24

25          **3.    Barthel**

26     Movant Reinhard Barthel has suffered an alleged loss of
27 $108,293.  He argues that he is the only plaintiff seeking to be
28 appointed solely on behalf of the purchasers of options, and that

1  purchasers of options should be separated into a different
2  subclass.  Thus, he contends that he should be appointed lead
3  plaintiff for the options class.
4      However, district courts throughout the United States have
5  rejected the notion of appointing "niche" lead plaintiffs for
6  options subclasses.  See, e.g., In re XM Satellite Radio Holdings
7  Sec. Litig., 237 F.R.D. 13, 20-21 (D.D.C. 2006) (declining to
8  appoint co-lead plaintiff on behalf of options purchasers where the
9  option movant's "financial loss is so dwarfed by that of the
10 stockholders, the creation of a sub-class and the potential for
11 fragmenting the litigation strategy is not warranted.").  Here,
12 Barthel's loss of is dwarfed by that of the other investors.  The
13 Court therefore finds that the creation of a subclass, and thus the
14 potential for fragmenting the litigation strategy, is not warranted
15 at this stage.

16

17          **4.    PSP Group and Kaufman Trust**

18     The PSP Group and the Kaufman Trust each own preferred shares
19 of New Century stock.  Both movants contend that they have claims
20 under Section 11 of the Securities Act of 1933 ("Securities Act")
21 that are not related to the Section 10(b) fraud actions brought by
22 plaintiffs who own common stock in New Century.  Accordingly, they
23 argue that the Court should create a subclass for the Section 11
24 claimants and appoint one of them as co-lead plaintiff because: (1)
25 the burden of proof for Section 11 claims is lower than that of
26 Section 10 claims; (2) the preferred shareholders can more quickly
27 pursue their claims against the underwriter defendants in this case
28 if afforded co-lead plaintiff status; and (2) strategic conflicts

1 between the interests of the common share purchasers and the
2 preferred share purchasers may prevent NYS Teachers from adequately
3 representing both share purchasers' interests.

4     It is undisputed that the Court has discretion to create a
5 subclass when the claims in the litigation are so different that
6 the interests of the various segments of the class conflict.
7 However, courts typically refuse to appoint co-lead plaintiffs on
8 behalf of "niche" investors in preferred securities when all the
9 claims are predicated on the same allegedly false and fraudulent
10 misrepresentations. In re Delphi Corp. Sec. Deriv. & ERISA Litig.,
11 458 F.Supp.2d 455, 462 (E.D. Mich. 2006). This is because a lead
12 plaintiff need not have standing to bring all causes of action
13 against defendants. As the Central District of California
14 explained in Tanne:

15     Nothing in the PSLRA indicates that district courts must
16     choose a lead plaintiff to sue on every available action.
17     Rather, because the PSLRA mandates that courts must choose
18     a party who has, among other things, the largest financial
19     stake in the outcome of the case, it is inevitable that, in
20     some cases, the lead plaintiff will not have standing to
21     sue on every claim.

22 Tanne, 226 F.R.D. at 669 (citations and quotations omitted). The
23 Tanne court further reasoned that while a lead plaintiff is
24 appointed under the PSLRA to manage and oversee a consolidated
25 securities class action, a named plaintiff with standing to assert
26 each claim available to the class must be approved by the court at
27 the class at the class certification stage. See id. at 670.

28

1    Thus, "lead plaintiffs have a responsibility to identify and
2   include named plaintiffs who have standing to represent the various
3   potential subclasses of plaintiff who may be determined, at the
4   class certification stage, to have distinct interests or claims."
5   In re Global Crossing, Ltd. Sec. Litig., 313 F.Supp.2d 189, 204
6   (S.D.N.Y. 2003); see also In re Initial Pub. Offering Sec. Litig.,
7   214 F.R.D. 117, 122-23 (S.D.N.Y. 2002) (holding that "in order for
8   a claim to be asserted on behalf of a putative class, only the
9   named plaintiffs - but not necessarily the lead plaintiff - must
10  have standing."); Fishbury, Ltd. V. Connetics Corp., 2006 WL
11  3711566 (S.D.N.Y. Dec. 14, 2006) (holding that speculation about
12  potential class standing problems should not be resolved by the
13  appointment of multiple lead plaintiffs, but by the appointment, if
14  necessary and desirable, of additional class representatives as the
15  litigation proceeds).

16      Here, NYS Teachers does not have standing to bring Section 11
17  claims.  However, it has represented that, if appointed as lead
18  plaintiff, it will name additional plaintiffs to pursue all
19  legitimate claims available to the class.  These additional named
20  plaintiffs will have their own legal representation.  Therefore, to
21  the extent that conflicts among the shareholders arise as
22  litigation proceeds, those who own preferred shares will have a
23  means of assuring that their interests are not trumped by those of
24  the common shareholders.

25      Moreover, although the preferred share purchasers argue that
26  they may able to settle their claims against the underwriters more
27  quickly if given co-lead plaintiff status, there is no guarantee
28  that this would actually occur.  It is true that there is a lower

1  burden of proof for Section 11 claims than Section 10 claims, and

2  that it might be more efficient if the preferred shareholders were

3  given the authority to their Section 11 claims against the

4  underwriters on a different discovery schedule.  However, it is

5  more likely that, in order to present their defenses to the Section

6  11 claims, the underwriters will bring cross-complaints against the

7  New Century officers who are defendants on both the Section 10 and

8  11 claims.  In that event, the discovery on both claims would

9  likely turn on the same sets of facts and legal issues and involve

10  the same individuals.  Given this framework, it would be too

11  speculative to say that the Section 11 claims against the

12  underwriters will necessarily be resolved more expediently than the

13  other claims if the preferred shareholders were given lead

14  plaintiff status.

15       Therefore, while the Court appreciates the preferred

16  shareholders concerns, it does not find them sufficient to rebut

17  the presumption that NYS Teachers will "fairly and adequately" act

18  as the lead plaintiff.

19

20            5.    Conclusion Regarding Lead Plaintiff

21       There are at least four different New Century securities at

22  issue in this case.  To appoint four separate co-lead plaintiffs on

23  behalf of each group of investors would likely create an unwieldy,

24  duplicative and multi-headed "litigation by committee," adding

25  little benefit to New Century investors, but interposing several

26  additional law firms between the class and recovery.  It is for

27  this reason that the PSLRA "creates a statutory presumption that

28  one lead plaintiff can vigorously pursue all available causes of

1 action against all possible defendants under all available legal

2 theories." McKesson, 79 F.Supp.2d at 1151 (emphasis in original).

3     No plaintiff has sufficiently rebutted the presumption that

4 NYS Teachers should be lead plaintiff. Accordingly, the Court

5 appoints NYS Teachers as lead plaintiff in this class action suit.

6

7 **IV.   LEAD COUNSEL**

8     The PSLRA directs that once the court has designated a lead

9 plaintiff, that plaintiff "shall, subject to the approval of the

10 court, select and retain counsel to represent the class.". 15

11 U.S.C. § 78u-4(a)(3)(B)(v). A court may disturb the lead

12 plaintiff's choice of counsel only if it appears necessary to

13 "protect the interests of the class." 15 U.S.C. §

14 78u-4(a)(3)(B)(iii)(II)(aa); Cavanaugh, 306 F.3d at 732 n. 11

15 ("Congress gave the lead plaintiff, and not the court, the power to

16 select a lawyer for the class.").

17     NYS Teachers has retained the law firm Bernstein Litowitz to

18 serve as lead counsel. The Court has reviewed the firm's resume

19 and is satisfied that the firm is more than capable of serving

20 competently in the role of lead counsel. The firm has experience

21 litigating securities fraud class actions; since the enactment of

22 the PSLRA, Bernstein Litowitz has served as lead or co-lead counsel

23 in numerous other successful securities class actions in federal

24 district courts within the Ninth Circuit. Further, NYS Teachers'

25 selection of Bernstein Litowitz as lead counsel appears to have

26 resulted from a careful search in which NYS Teachers considered

27 several qualified law firms' proposals, including counsel's

28 proposed fee structures for the case. (Schneider Decl. ¶¶ 4-5.)

1 | Accordingly, the Court appoints Bernstein Litowitz as lead counsel.

2

3 | **V.    CONCLUSION**

4 |     For the foregoing reasons, the Court consolidates the actions,

5 | appoints the NYS Teachers as lead plaintiff, and appoints the law

6 | firm Bernstein Litowitz as lead counsel.  All other pending lead

7 | plaintiff/lead counsel motions will be denied.[7]

8 |     Unless the parties otherwise agree, NYS Teachers shall file an

9 | amended consolidated complaint within thirty days from the date of

10 | entry of this order.  Defendants shall file a responsive pleading

11 | within thirty days from the date the amended consolidated complaint

12 | is filed.

13

14

15 | IT IS SO ORDERED.

16

17

18 | Dated:  6-26-07

19 |                                    DEAN D. PREGERSON
                                       United States District Judge

20

21

22

23

24

25

26

27 | _____

28 |     [7]  To the extent that the motions requested consolidation,
they are granted.

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

A1 CREDIT COMPANY,                      :
f/b/o EILEEN HERSKOWITZ,                :
On Behalf of Itself and All Others      :
Similarly Situated,                     :
        Plaintiff,                      :        CIVIL ACTION
                                        :
    v.                                  :
                                        :
RAIT FINANCIAL TRUST, et al.,           :        NO. 2:07 cv-03148-LDD
        Defendants.                     :

ORDER

Before the court are four motions[1] for the consolidation of related cases, the appointment

of lead plaintiff and the approval of lead counsel in the putative class action securities litigation

against RAIT Financial Trust and various other defendants (collectively, "RAIT"). Motions have

been filed by: (1) Lewis Vernekoff, New Jersey Carpenters Pension Fund and Pengsen Liu (the

"LVC Group"); (2) Brahman Capital Corp. and various related investment entities ("Brahman

Capital"); (3) Iron Workers Local No. 25 Pension Fund, Sonny Bhakta, and the Pistilli Family

(the "Iron Workers Group") and (4) Richard Stevens and Lance Stevens (the "Stevens Group").

Applying the detailed procedures set forth in the Private Securities Litigation Reform Act of

1995 (the "PSLRA"), the Court orders (i) the consolidation of the various related matters; (ii) the

appointment of Brahman Capital as lead plaintiff and (iii) the appointment of Bernstein Litowitz

---

[1]The Employees' Retirement System of the State of Rhode Island, which had also filed a
motion, withdrew its motion on October 15, 2007.

1

Berger & Grossman LLP ("Bernstein Litowitz") as lead counsel.

**I.    Facts**

This case and eight other related matters were filed on behalf of investors who purchased securities of RAIT Financial Trust between June 8, 2006 through and including July 31, 2007.[2] These cases arise out of alleged violations of the federal securities laws, including Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). The plaintiffs claim that during the previously mentioned dates the defendants caused RAIT's stock price to be artificially inflated by making false and misleading statements to the investing public and by failing to disclose material facts related its exposure to American Home Mortgage ("AHM").

**II.    Discussion**

A. Motions to Consolidate

All movants in this case have filed motions requesting that the various matters related to alleged securities law violations by RAIT be consolidated. These motions are unopposed.

Rule 42(a) of the Federal Rules of Civil Procedure provides "[w]hen actions involving a common question of law or fact are pending before the court, . . . it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Fed. R. Civ. P. 42(a). "A court has broad discretion to consolidate actions involving common questions of law or fact for trial or pretrial purposes if it will facilitate the administration of justice." Smithkline Beecham Corp. v. Geneva Pharm, Inc., No. 99-CV-2926 et al., 2001 WL 1249694, at *5 (E.D. Pa. Sept. 26, 2001). Moreover, the PSLRA

---

[2] For the purpose of adjudicating these motions, we assume, without finding, that June 8, 2006 through and including July 31, 2007 is the relevant class period.

directs that cases should be consolidated when there is "more than one action on behalf of a class asserting substantially the same claim or claims." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

Based on the allegations in the complaints, the related matters share significant common issues of law and fact. All the matters allege violations of Section 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5.[3] Furthermore, all the claims in these matters arise from the same set of operative facts related to RAIT's disclosure with respect to its exposure to AHM. Consequently, because the consolidation of the various related actions will facilitate the administration of justice and promote judicial economy without any foreseeable prejudice, the motion to consolidate filed by Brahman Capital is granted.

### B. Motions to Appoint Lead Plaintiff

Having determined that consolidation is appropriate, the PSLRA directs that the court "appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Section 78u-4(b) provides that:

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Based upon the motions submitted by the movants and their presentations at oral argument, this Court finds that Brahman Capital is entitled to the

---

[3] Though the complaints filed by the A1 Credit Company and Theona B. Salkowitz, Case Nos. 2:07-cv-03148-LDD and 2:07-cv-03406-LD, respectively, allege additional violations under the Securities Act of 1933, the common issues of law among the cases predominate.

presumption that it is most adequate plaintiff.

### 1. Motion in Response to Notice

Brahman Capital timely filed it motion to act as lead plaintiff on October 1, 2007. This motion contained the sworn certifications required by 15 U.S.C. § 78u-4(a)(2). Additionally, the notice to members of the purported class, upon which Brahman Capital relies, was timely and adequate.

### 2. Largest Financial Interest

To determine the largest financial interest, the court looks to "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." In re Cendant Corp. Litig., 264 F.3d 201, 262 (3d Cir. 2001). Brahman Capital's submissions indicate that from June 8, 2006 through July 31, 2007, Brahman Capital purchased 1,457,600 net shares of RAIT stocks, this represented a net expenditure of $50,341,314.58 and an approximate loss of $36,578,824.13. Based on the submission of the other movants, it is clear that Brahman Capital has the largest financial interest in the lawsuit.

### 3. Requirements of Rule 23

The final inquiry requires the Court to determine that Brahman Capital has made a *prima facie* showing that "the claims or defenses of [Brahman Capital] are typical of the claims or defenses of the class, and [Brahman Capital] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); Cendant, 264 F.3d at 263 (discussing need of movant to only make a *prima facie* showing).

### a. Typical Claims

4

With respect to typicality, the inquiry is "whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims [of that movant] are based differ[ ] from that upon which the claims of other class members will perforce be based." Cendant, 264 F.3d at 265. (internal citations and quotations omitted). Brahman Capital's circumstances and legal claims are similar to the claims of the other plaintiffs. The claims and injuries of Brahman Capital, like those of the other plaintiffs, arise from the same alleged misconduct by RAIT (i.e. its failure to properly disclose its exposure to AHM). Furthermore, its legal claims, like those of the other plaintiffs, set forth violations of the federal securities laws, namely the Exchange Act.

### b. Adequately Protect

In determining adequacy, the question is whether the movant "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." Id. (citing Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir.1988)). Brahman Capital, an institutional investor that has alleged significant losses, is the type of plaintiff that has both the ability and incentive to vigorously pursue the claims of the class. This analysis is consistent with the legislative history of the PSLRA that notes "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake. The claims of both types of class members generally will be typical." H.R. Conf. Rep. 104-327, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 737. In addition, Brahman Capital's choice of an experience class-action securities law firm as lead counsel supports the finding of Brahman Capital's adequacy.

Furthermore, based on Brahman Capital's submissions,[4] there is no indication that there is a conflict between the claims to be asserted by Brahman Capital and the rest of the class. Accordingly, for the reasons set forth above, the Court finds that Brahman Capital satisfies the requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii) and, consequently, is entitled to the presumption that it is the most adequate plaintiff.

### 4. Rebutting the Presumption

This presumption, however, may be rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interest of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). In considering objections by putative lead plaintiffs "the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[ ] and adequate [ ]' job." Cendant, 264 F.3d at 268.

Here, the Iron Workers Group contends that Brahman Capital would not fairly and adequately protect the interest of the class because it has an interest that conflicts with those of other class members. Specifically, the Iron Workers Group notes that in a registration statement filed on Form S-3 by Atlas Pipeline Partners, L.P. ("Atlas"), Brahman Capital is listed as a selling unitholder. Furthermore, the Iron Workers Group contends that Atlas is a partnership whose founder, chief executive officer and chairman, Edward Cohen, is (a) the husband Betsy

---

[4]In determining, whether a movant is entitled to the rebuttable presumption set forth in 15 U.S.C. § 78u-4, a court only focuses on the materials provided by the movant. Objections to the adequacy of any movant by another putative lead plaintiff are only evaluated by a court in determining whether the presumption has been rebutted. See Cendant, 264 F.3d at 264.

6

Cohen, the chairman, trustee, and until January 2006 chief executive officer of RAIT, and (b) the father to Daniel Cohen, the chief executive offer of RAIT from January 2006. Both Betsy Cohen and Daniel Cohen are defendants in this matter. Additionally, the Iron Workers Group alleges that Jonathan. Cohen, son of Edward and Betsy Cohen is a vice-chairman of Atlas as well as an officer and director of RAIT. Accordingly, the Iron Workers Group contend that because of the close affiliation of Brahman Capital with the interests of the Cohen family and its interest in Atlas, which exceed $40 million, Brahman Capital has a conflict that disqualifies it from acting as lead plaintiff.

Although the Iron Workers Groups' allegations do indicate a potential conflict of interest, the alleged conflict is insufficient to rebut the presumption that the Brahman Capital is the most adequate plaintiff. In <u>In re Cendant Corp. Litigation</u>, the Third Circuit held that the lead plaintiff, who held a substantial investment in the defendant corporation during the litigation, was not disqualified from as acting as lead plaintiff. <u>Id.</u> at 244. The Third Circuit reasoned that by establishing a preference for institutional investors, who often hold a large stake in defendant corporations prior and during litigation, Congress "must have thought that the situation present here does not inherently create an unacceptable conflict of interest." <u>Id.</u> Applying this principle to the present conflict, the existence of a financial interest by Brahman Capital in a non-defendant corporation is clearly not sufficient to rebut the presumption that Brahman Capital is the most adequate plaintiff. Furthermore, neither the alleged familial relationship between the principals of RAIT and Atlas nor the potential negative economic consequence to Brahman Capital's financial interest in Atlas are sufficiently substantial enough to support the disqualification of Brahman Capital.

7

C. Motions to Appoint Lead Counsel

The PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." Cendant, 264 F.3d at 276. Accordingly, it is not a court's responsibility to make the choice itself, but rather to employ a deferential standard and determine whether judicial intervention is "necessary to protect the interest of the plaintiff class." Id. Applying this standard, Brahman Capital's choice of Bernstein Litowitz as lead counsel is reasonable. Based upon Bernstein Litowitz resume and its history of prosecuting various large securities class actions, including In re Cendant Corp. Litigation, Brahman Capital's choice of Bernstein Litowitz, is reasonable.

Accordingly, this 25th of October 2007, upon consideration of the motions, briefs and oral arguments presented by the various movants in this matter and for the reasons set forth above, the following is hereby ORDERED:

1.  Iron Workers Local No. 25 Pension Fund, Sonny Bhakta and the Pistilli Family's Motion for Consolidation, Appointment as Lead Plaintiff and to Approve Lead Plaintiff's Selection of Counsel (Doc. No. 8) is DENIED; Stevens Group's Motion to Consolidate Related Cases, For Appointment of Lead Plaintiff and for Approval of Its Choice of Counsel as Lead and Liaison Counsel for the Class (Doc. No. 9) is DENIED; Motion of Employees' Retirement System of the State of Rhode Island for Consolidation of the Related Actions, Appointment as Lead Plaintiff, and for Approval of Its Selection of Lead Counsel (Doc. No. 10) is DENIED; Motion of the LVC Group for Consolidation, for Their Appointment as Lead Plaintiff and for Approval of Lead Plaintiffs' Selection of Co-Lead Counsel (Doc. No. 12) is DENIED and Motion of Brahman Capital Corporation for Appointment as Lead Plaintiff, Approval of Its Selection of Counsel as Lead Counsel for the Class, and Consolidation of all Related Cases (Doc. No. 13) is GRANTED.

2.  The Court hereby consolidates the following matters Civil Action Nos. 07-3236, 07-3405, 07-3406, 07-3478, 07-3497, 07-3551, 07-3574 and 07-3831 for all purposes including,

8

but not limited to, discovery, pre-trial proceedings and trial proceedings, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure under the following caption:

| | | |
|---|---|---|
| IN RE RAIT FINANCIAL TRUST | : | Master File |
| SECURITIES LITIGATION | : | No 2:07-cv-03148-LDD |
| | : | |

3.  The Clerk of the Court is directed to close Civil Action Nos. 07-3236, 07-3405, 07-3406, 07-3478, 07-3497, 07-3551, 07-3574 and 07-3831 for statistical purposes.

4.  Each new case that arises out of the subject matter of the consolidated action which is filed in this Court or transferred to this Court, shall be consolidated with the consolidated action and this Order shall apply thereto, unless a party object to the consolidation, as provided for herein, or any provision of this Order, within (10) days after the date upon which a copy of this Order is served on counsel for such party, by filing an application for relief and this Court deems it appropriate to grant such application. Nothing in the foregoing shall be construed as a waiver of defendant's right to object to consolidation of any subsequently-filed or transferred related action.

5.  Brahman Capital is APPOINTED to serve as lead plaintiff.

6.  Brahman Capital's selection of lead counsel is APPROVED, and Bernstein Litowitz Berger & Grossman LLP is APPOINTED as lead counsel for the class.

7.  Lead counsel shall file consolidated amended complaint by no later than November 26, 2007 and shall serve this consolidated amended complaint on defendants no later than December 17, 2007.

8.  Lead counsel shall have the following responsibilities and duties, to be carried out either personally or through counsel whom lead counsel shall designate:

    a.  to coordinate the briefing and argument of motions;
    b.  to coordinate the conduct of discovery proceedings;
    c.  to coordinate the examination of witnesses in depositions;
    d.  to coordinate the selection of counsel to act as spokesperson at pretrial conferences;
    e.  to call meetings of plaintiffs' counsel as they deem necessary and appropriate from time to time;
    f.  to coordinate all settlement negotiations with counsel for defendants;
    g.  to coordinate and direct the pretrial discovery proceedings and the preparations for trial and the trial of this matter and to delegate work responsibilities to selected counsel as may be required; and
    h.  to supervise any other matters concerning the prosecution, resolution or

settlement of the consolidated action.

9.  No motion, request for discovery, or other pretrial proceeding shall be initiated or filed by any plaintiff without the approval of lead counsel, so as to prevent duplicative pleadings or discovery by plaintiffs.  No settlement negotiations shall be conducted without the approval of lead counsel.

10. Lead counsel shall have the responsibility of receiving and disseminating the Court's orders and notices.

11. Lead counsel shall be the contact between plaintiffs' counsel and defendants' counsel, as well as the spokesperson for plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs' counsel.

BY THE COURT:

/S/LEGROME D. DAVIS

_____Legrome D. Davis, J.

10