UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE SECURITY CAPITAL
ASSURANCE LTD SECURITIES
LITIGATION

Case No. 07 Civ. 11086
(DAB) (ECF Case)

## XL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

**Cahill Gordon & Reindel LLP**
David G. Januszewski
Thorn Rosenthal
Howard G. Sloane
80 Pine Street
New York, New York  10005
(212) 701-3000
(212) 269-5420 (fax)

Attorneys for Defendants XL Insurance
(Bermuda) Ltd and XL Capital Ltd

## **TABLE OF CONTENTS**

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 4

ARGUMENT ............................................................................................................ 7

I.     PLAINTIFF FAILS TO STATE A CLAIM UNDER § 12(a)(2) OF THE 1933 ACT . 7

    A.   XL Insurance Was Not a Statutory Seller ............................................... 7
    B.   There is No Factual Allegation of any Misrepresentation ..................... 9
    C.   There is No Alleged Loss Causation ....................................................... 14

II.    CONTROL PERSON ALLEGATIONS ...................................................... 17

III.   THIS COURT SHOULD DISMISS WITH PREJUDICE ........................... 21

CONCLUSION ........................................................................................................ 21

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page**

*60223 Trust* v. *Goldman, Sachs & Co.*, 540 F. Supp. 2d 449 (S.D.N.Y.
    2007) ............................................................................................   14

*Aldridge* v. *A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002)...................................   20

*In re Alstom SA Securities Litigation*, 406 F. Supp. 2d 433 (S.D.N.Y.
    2005) ........................................................................................   19n, 20

*Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009)..................................................   9

*Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007)..........................................   9

*Blackmoss Investments Inc.* v. *ACA Capital Holdings, Inc.*, 2010 WL
    148617 (S.D.N.Y. Jan. 14, 2010)........................................................   11

*Chambers* v. *Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)............................   3n

*Craftmatic Securities Litigation* v. *Kraftsow*, 890 F.2d 628 (3d Cir.
    1989) .......................................................................................   13

*Demaria* v. *Andersen*, 153 F. Supp. 2d 300 (S.D.N.Y. 2001) ..............................   19

*Denny* v. *Barber*, 576 F.2d 465 (2d Cir. 1978)......................................   10-11, 21

*In re Deutsche Telekom AG Securities Litigation*, 2002 WL 244597
    (S.D.N.Y. Feb. 20, 2002) ...............................................................   9

*Dura Pharms. Inc.* v. *Broudo*, 544 U.S. 336 (2005)............................................   14-14n

*Garber* v. *Legg Mason, Inc.*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008)....................   11-12

*Grossman* v. *Novell, Inc.*, 120 F.3d 1112 (10th Cir. 1997) ................................   12

*Halperin* v. *eBanker USA.com, Inc.*, 295 F.3d 352 (2d Cir. 2002).......................   12

*Harrison* v. *Rubenstein*, 2007 WL 582955 (S.D.N.Y. Feb. 26, 2007) .................   12, 15, 20

*In re Hutchinson Technology, Inc. Securities Litigation*, 536 F.3d 952
    (8th Cir. 2008)..........................................................................   10n

*Indiana Electrical Workers' Pension Trust Fund IBEW* v. *Shaw Group,
Inc.*, 537 F.3d 527 (5th Cir. 2008) ....................................................   10n

*Jackson National Life Insurance Co.* v. *Merrill Lynch & Co.*, 32 F.3d 697 (2d Cir. 1994) ........................................................................... 8

*Kalin* v. *Xanboo, Inc.*, 526 F. Supp. 2d 392 (S.D.N.Y. 2007) ............................ 17, 21

*Lanza* v. *Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973) ........................................ 17, 18n

*Lapin* v. *Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221 (S.D.N.Y. 2006) ........................................................................... 20

*Ley* v. *Visteon Corp.*, 543 F.3d 801 (6th Cir. 2008) ............................................ 11

*In re Livent, Inc. Noteholders Securities Litigation*, 151 F. Supp. 2d 371, 441 (S.D.N.Y. 2001) ........................................................................... 18

*In re Livent, Inc. Securities Litigation*, 78 F. Supp. 2d 194 (S.D.N.Y. 1999) ........................................................................... 19n, 20

*Medis Investor Group* v. *Medis Technologies, Ltd.*, 586 F. Supp. 2d 136 (S.D.N.Y. 2008) ........................................................................... 17

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 289 F. Supp. 2d 429 (S.D.N.Y. 2003) ................................................. 14n

*In re Merrill Lynch Investment Management Funds Securities Litigation*, 434 F. Supp. 2d 233 (S.D.N.Y. 2006) ........................................ 14n

*In re Morgan Stanley Information Fund Securities Litigation*, 592 F.3d 347 (2d Cir. 2010) ........................................................................... 8

*In re Morgan Stanley Pass-Through Certificates Litigation*, 2010 WL 3239430 (S.D.N.Y. Aug. 17, 2010) ................................................... 8

*P. Stolz Family Partnership, L.P.* v. *Daum*, 166 F. Supp. 2d 871 (S.D.N.Y. 2001) ........................................................................... 18-20

*Pinter* v. *Dahl*, 486 U.S. 622 (1988) ................................................................ 8, 9

*Public Employees' Retirement System* v. *Merrill Lynch & Co.*, 2010 WL 2175875 at *8 (S.D.N.Y. June 1, 2010) ........................................... 18

*In re Rhodia S.A. Securities Litigation*, 531 F. Supp. 2d 527 (S.D.N.Y. 2007) ........................................................................... 15-16

*Rich* v. *Maidstone Financial, Inc.*, 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ........................................................................... 17, 19n

*Rombach* v. *Chang*, 355 F.3d 164 (2d Cir. 2004)................................................ 17

*Rothman* v. *Gregor*, 220 F.3d 81 (2d Cir. 2000) ................................................ 3n

*SEC* v. *Management Dynamics, Inc.*, 515 F.2d 801 (2d Cir. 1975) .................... 18n

*In re Security Capital Assurance, Ltd. Securities Litigation*, 2010 WL
    1372688 (S.D.N.Y. Mar. 31, 2010) ................................................ *passim*

*Shaw* v. *Digital Equipment Corp.*, 82 F.3d 1194 (1st Cir. 1996) ........................ 9

*Steinberg* v. *Ericsson LM Telephone Co.*, 2008 WL 5170640 (S.D.N.Y.
    Dec. 10, 2008)................................................................................ 20-21

*Yu* v. *State Street Corp.*, 686 F. Supp. 2d 369 (S.D.N.Y. 2010).......................... 11

**Regulations**

17 C.F.R. § 230.159A (2010) ................................................................ 8n

**Rules**

Fed. R. Civ. P.

    Rule 9(b) ................................................................................ 1
    Rule 12(b)(1)............................................................................ 1, 8
    Rule 12(b)(6)............................................................................ 1

**Statutes**

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67,
    109 Stat. 737 (1995)

    § 21D(b)(3)(A), 15 U.S.C. § 78u-4(b)(3)(A).................................... 1

Securities Act of 1933

    § 11, 15 U.S.C. § 77k (2006) .................................................... 14n
    § 12(a)(2), 15 U.S.C. § 77l(a)(2) (2006).................................... 1-3, 7-17
    § 15, 15 U.S.C. § 77o (2006) .................................................... 3-4, 17-19

Securities Exchange Act of 1934

    § 10(b), 15 U.S.C. § 78j (b) (2006)............................................ 13, 15
    § 20, 15 U.S.C. § 78t (2006) .................................................... 3-4, 18
    § 20(a), 15 U.S.C. § 78t(a) (2006) ............................................ 1, 17-20

Pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and 15 U.S.C. § 78u-4(b)(3)(A), added to the Securities Exchange Act of 1934 ("1934 Act") by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737 (1995), defendants XL Insurance (Bermuda) Ltd ("XL Insurance") and XL Capital Ltd ("XL Capital" and, together with XL Insurance, "XL Defendants") move to dismiss Plaintiff's First Amended Consolidated Class Action Complaint ("FACC") as against them with prejudice.

## PRELIMINARY STATEMENT

Plaintiff attempts in the FACC to reformulate the allegations previously found by this Court to be deficient in the Consolidated Amended Class Action Complaint ("CAC"). Although plaintiff searches for asserted misrepresentations to use as hooks upon which to hang its purported claims, plaintiff's basic complaint is that Security Capital Assurance, Ltd. ("SCA") was swamped by the same economic tsunami which hit every enterprise involved with mortgage backed securities during 2007.  Plaintiff, thus, continues to plead fraud by hindsight.

### *The FACC Fails to State a Claim Under § 12(a)(2) of the 1933 Act*

Whereas the XL Defendants were named in the CAC solely in their asserted capacities as "control persons" under Section 15 of the Securities Act of 1933 ("1933 Act") and Section 20(a) of the 1934 Act, the FACC purports to state a claim under Section 12(a)(2) of the 1933 Act against XL Insurance as the seller of SCA common stock in a secondary public offering which commenced on June 6, 2007 ("SPO").  As set forth in the prospectus for the

- 1 -

SPO, however, it was underwritten on a firm commitment basis.[1]   Accordingly, the under-writers, not XL Insurance, were the statutory sellers, and XL Insurance cannot be held liable under Section 12(a)(2).

Moreover, the Section 12(a)(2) claim is substantively deficient for want of any allegation of any factual misrepresentation.   Both of the asserted misrepresentations previously found by this Court to have been adequately alleged in the CAC (relating to independent modeling and FICO score criteria) post-dated the SPO and, thus, are irrelevant to the 1933 Act claim.   *In re Security Capital Assurance, Ltd. Securities Litigation ("SCA")*, 2010 WL 1372688, at *28 (S.D.N.Y. Mar. 31, 2010).   The FACC quotes various offering materials and other SEC filings incorporated by reference into the secondary offering materials (principally regarding SCA's underwriting and surveillance procedures) but nowhere alleges any facts which demonstrate the falsity of such quotes.

Further, at least as respects the purported 1933 Act claims, the FACC suffers from the same deficiencies as the CAC regarding allegations of loss causation.   To be sure, plaintiff includes a laundry list of so-called "partial corrective disclosures" which it ties to price declines in SCA stock at paragraphs 223-60.   These events, however, consisted simply of the transpiring of bad news as the mortgage backed securities market tanked and did not relate to "correction" of any prior misrepresentations in the SPO offering materials (of which there were none, as noted above).

---

[1]   June 6, 2007, Prospectus for SPO, Rosenthal Aff. Ex. A at p. 43.

The same SCA filings with the SEC[2] upon which plaintiff relies disclosed and warned of the potential consequences of the exposures which subsequently gave rise to the declines in SCA's stock price cited by plaintiff.  For example, SCA disclosed that as of March 31, 2007, SCA's notional exposure to credit default swaps was $27.1 billion[3] and that SCA had guaranteed (net of reinsurance) $55.7 billion of principal amount of structured finance obligations.[4]  SCA also clearly disclosed the risk that its financial condition would be subject to material adverse changes in the event of significant dislocations in the financial markets.[5] The FACC does not allege any *facts* suggesting that SCA had any more knowledge than other market participants of the dangers of credit default swaps or structured finance obligations generally or advance knowledge of the specific losses it later announced.

### *The FACC Fails to State a Claim Under § 15 of the 1933 Act or § 20 of the 1934 Act*

XL Capital is named in the FACC in its asserted capacity as a "control person" under Section 15 of the 1933 Act and Section 20 of the 1934 Act.  The 1933 Act claim should be dismissed due to the absence of a primary violation of the 1933 Act, as outlined above.

---

[2]  This Court may take judicial notice of SCA's SEC filings (not for the truth thereof but for the fact that such filings were made and that the contents thereof were disclosed) both generally and by virtue of references thereto in the FACC.  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Rothman* v. *Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000).

[3]  March 31, 2007, 10-Q, Rosenthal Aff. Ex. B at Ex. 99.2, note 9 to interim financial statements.

[4]  June 6, 2007, Prospectus for SPO, Rosenthal Aff. Ex. A at p. 3.

[5]  December 31, 2006, 10-K, Rosenthal Aff. Ex. C at pp. 33-37.

While beyond the scope of this brief, for the reasons articulated in SCA's Memorandum of Law in Support of its motion to dismiss, there also is no adequate allegation of a primary violation as respects plaintiff's purported 1934 Act claim.

Further, the FACC contains no factual allegation that any officer, director or employee of XL Capital in any way participated in any of the asserted wrongful conduct committed by SCA or the Individual Defendants. The control person claims in the FACC under both the 1933 Act and 1934 Act, thus, must be dismissed for failure to satisfy the "culpable participation" requirement for control person liability.

## STATEMENT OF FACTS

### The FACC Contains No Substantive Allegations Against the XL Defendants

*None* of the securities at issue here was issued by either of the XL Defendants. *None* of the Individual Defendants is alleged to have held any position or to have otherwise been associated with either of the XL Defendants. *No* officer, director or employee of either of the XL Defendants is alleged to have had any participation in the preparation of the disclosures which are challenged in the FACC. *None* of the unidentified confidential sources referenced in the FACC is alleged to have had any association or communication with either of the XL Defendants.

### SCA Disclosed Its Exposures

SCA's Form 10-K for 2006, cited and quoted in the FACC at paragraphs 155-61, on the *first page of its text* included a prominent subheading, "Financial Guarantee Insurance and Credit Default Swaps." (Rosenthal Aff. Ex. C.) The text thereunder disclosed:

- 4 -

> In addition to financial guarantee insurance products, monoline financial guarantee insurance companies typically also provide customers credit enhancement products in derivative form known as "credit default swaps." Credit default swaps provide credit protection relating to a particular security or pools of specified securities. (at pp. 3-4)

On the fourth and fifth pages of text of the 10-K, SCA under the subheading "U.S. Structured Finance" provided a four paragraph discussion of that market, including the following:

> As of December 31, 2006, $12.9 billion or 10.9% of its consolidated net par outstanding represented insurance of ABS (largely securities backed by pools of mortgages and auto loans) and $23.5 billion or 19.9% of our consolidated net part outstanding represented insurance of CDOs. We also provide guarantees on a variety of other synthetic and funded obligations in the U.S. structured finance market . . . .

Six pages later, SCA disclosed that in the aggregate, "As of December 31, 2006, U.S. structured finance obligations made up 43% of our total net par outstanding [including, without limitation] Pooled debt obligations [consisting of] both synthetic and funded collateralized debt obligations (CDOs), including collateralized bond obligations (CBOs), collateralized loan obligations (CLOs) and collateralized fund obligations." (at p. 12)

Under "Risk Factors," the 10-K included in bold and italicized type the following:

> *Some of our direct financial guarantee products may be riskier than traditional financial guarantee insurance, principally because these less traditional products may require us to make payments of the full guaranteed amount earlier than, or upon the occurrence of events not covered by, traditional products.*

> *Our insurance and reinsurance portfolio and financial guarantee products expose us to concentrations of risk, and a material adverse event or series of events with respect to one or more of these risks could result in significant losses to our business.*

> \*   \*   \*

- 5 -

> *General economic factors . . . may adversely affect our loss experience or the demand for our products.*
>
> *If claims exceed our loss reserves, our financial position and results of operations could be materially adversely affected.*
>
> \*   \*   \*
>
> *Our net income may be volatile because a significant portion of the credit risk we assume must be accounted for as credit derivatives [such that] these instruments [are] marked to market quarterly.*
>
> *Because our financial guarantee insurance and reinsurance products are unconditional and irrevocable, we may incur losses from fraudulent conduct related to the securities that we insure or reinsure.* (at p. 33-37)

The 2006 10-K included an eight-page discussion of the details of SCA's loss reserving methodology (at pp. 56-64), along with appropriate health warnings -- such as:

> Estimates of losses may differ from actual results and such difference may be material, due to the fact that the ultimate dispositions of claims are subject to the outcome of events that have not yet occurred. Examples of these events include changes in the level of interest rates, credit deterioration of insured obligations, and changes in the value of specific assets supporting insured obligations. (at pp. 56-57, repeated at p. 99)

The prospectus for the SPO (Rosenthal Aff. Ex. A), which offering is the asserted predicate for plaintiff's 1933 Act claims, incorporated by reference SCA's December 31, 2006 10-K and March 31, 2007 10-Q (at p. 47) and additionally disclosed:

- SCA had $55.7 billion of consolidated net par outstanding guaranteed structured finance obligations. (at p. 47)

- The maintenance of our triple-A ratings is essential for us to continue to operate . . . . Any decrease in the ratings . . . below current levels . . . would have a material adverse effect on our ability to compete . . . ." (at p. 3)

- If our loss reserves are at any time determined to be inadequate, we will be required to increase our loss reserves at the time of such determination. Such an increase would cause a corresponding increase in our liabilities and a reduction in our profitability, which could have a material adverse effect on our business. (at p. 4)

- 6 -

This prospectus included the usual general "Cautionary Note Regarding Forward-Looking Statements" but supplemented this with specific disclosures of factors which might "cause actual results to differ materially from those indicated in its forward looking statements, including:"

- changes in rating agency policies or practices . . .;

- . . . losses on credit derivatives;

- the timing of claims payments being faster . . . than anticipated by us;

- greater frequency or severity of claims and loss activity, including as a result of natural or man-made catastrophic events, than our underwriting, reserving or investment practices anticipate based on historical experience or industry data . . . . (at p. 10)

Plaintiff and the rest of world, thus, were on notice in connection with the SPO that SCA had exposure to credit derivatives and structured finance obligations and that SCA might sustain material losses in the event that the values of assets supporting asset-backed securities or collateralized debt obligations were to decline. While SCA did not forecast the subprime crisis, it clearly disclosed the exposures and risks to which it would be subject in the event of such an economic dislocation.

## ARGUMENT

## I. PLAINTIFF FAILS TO STATE A CLAIM UNDER § 12(a)(2) OF THE 1933 ACT

### A. XL Insurance Was Not a Statutory Seller

The FACC asserts a new claim that XL Insurance is liable under § 12(a)(2) of the 1933 Act because it "sold SCA stock directly to Plaintiff and the Class members in the [SPO]." FACC ¶ 295. Liability under Section 12(a)(2), however, is confined to defendants

who are "statutory sellers." *See In re Morgan Stanley Information Fund Securities Litigation*, 592 F.3d 347, 359 (2d Cir. 2010). A buyer cannot recover from the seller's seller. *Pinter* v. *Dahl*, 486 U.S. 622, 644 n.21 (1988).

Plaintiff has the burden under Federal Rule of Civil Procedure 12(b)(1) to establish standing to sue the defendant. *See In re Morgan Stanley Pass-Through Certificates Litigation*, 2010 WL 3239430, at *4 (S.D.N.Y. Aug. 17, 2010). Plaintiff has not established that it purchased the stock at issue directly from XL Insurance.

As described in the SPO, XL Insurance sold its shares to the underwriters, who in turn offered the securities to the public.[6] In this type of "firm commitment" underwriting, "the underwriter agrees to purchase an agreed upon percentage of the offering irrespective of whether the securities can be sold in the public market." *Jackson National Life Insurance Co.* v. *Merrill Lynch & Co.*, 32 F.3d 697, 701 (2d Cir. 1994) Plaintiff states that it "bought 100,300 shares of SCA stock in the Secondary Offering," but it does not say, as it is required to, who sold the stock. FACC ¶ 179. In all events, the seller could not have been XL Insurance because it sold its shares to the underwriters.[7] Accordingly, XL Insurance is not liable

---

[6]    June 6, 2007, Prospectus for SPO, Rosenthal Aff. A at p. 43.

[7]    The SEC, through its rule making authority, expanded the definition of "seller" to include issuers who sell stock through a firm commitment underwriting in a public offering. *See* 17 C.F.R. § 230.159A. That rule does not apply to a secondary offering of securities by a selling security holder, which is at issue here. *Id.* at note 2 ("Paragraph (a) of this section shall not affect in any respect the determination of whether any person other than an issuer is a 'seller' for purposes of section 12(a)(2) of the Act.").

as a seller under Section 12(a)(2). *See In re Deutsche Telekom AG Securities Litigation*, 2002 WL 244597, at *4-*5 (S.D.N.Y. Feb. 20, 2002) (motion to dismiss granted as respects purported Section 12(a)(2) claim against selling stockholder in firm commitment secondary offering); *see also Shaw* v. *Digital Equipment Corp.*, 82 F.3d 1194, 1215-16 (1st Cir. 1996) (issuer in firm commitment underwriting held not liable as "seller" under Section 12(a)(2)).

Plaintiff, appropriately, has not alleged that XL Insurance participated in the preparation of the registration statement and prospectus. *See* FACC ¶ 295. Plaintiff hangs its claim on a one-sentence assertion concerning XL Insurance's involvement in the solicitation: "[a]ll of the Defendants named in this Count offered and actively solicited the purchase of SCA shares in the [SPO]." *Id.* Such a cursory allegation is an insufficient basis for establishing liability. *In re Deutsche Telekom AG Securities Litigation*, *supra*, 2002 WL 244597, at *5 ("Plaintiffs' bald allegations of solicitation are insufficient to sustain KfW's section 12(a)(2) liability as a 'seller' pursuant to the second *Pinter* test.").

> B.   There is No Factual Allegation of any Misrepresentation

The United States Supreme Court, citing the potential for abusive discovery, clarified that, even under a notice pleading standard, a plaintiff must allege facts, not conclusions, which "plausibly suggest[]" the existence of grounds for relief under the relevant statute — not just facts that are "merely consistent with" the existence of such grounds. *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555-57 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."); *see also Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009).

The FACC does not cite a single *factual* disclosure from any of the SPO offering materials which is claimed to have been false when made.  Such allegations are the *sine qua non* for a claim under Section 12(a)(2) of the 1933 Act as is apparent from the face of the statute, 15. U.S.C. § 77l(a)(2) ("Any person who . . . offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact . . . .").

Plaintiff does *not* allege that there has been any restatement of any financial statement or withdrawal of any auditor's opinion.[8]  Plaintiff essentially alleges no more than that SCA's disclosures were inaccurate simply because SCA subsequently recognized losses.  This is not enough to state a claim for securities fraud.  *See Denny* v. *Barber*, 576 F.2d 465, 470 (2d Cir. 1978) ("[T]he complaint is an example of alleging fraud by hindsight.  For the most part, plaintiff has simply seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones.  While greater clairvoyance in 1973 might have led to a realization that foreign governments and enterprises might encounter dif-

---

[8]   *See, e.g.*, *Indiana Electrical Workers' Pension Trust Fund IBEW* v. *Shaw Group, Inc.*, 537 F.3d 527, 535-36 (5th Cir. 2008) ("This case is quite unlike most securities fraud cases, which are precipitated when the company announces such revelations as a restatement in earnings due to accounting mistakes or the discovery and correction of material errors or misdeeds in a subsidiary. Here, there was no mea culpa from the company in the form of acknowledged wrongdoing or restated financial reports, nor was there any auditor qualification to those aspects of the reports made the basis of this complaint, nor any publicly expressed reservations by the auditors to the financials."); *In re Hutchinson Technology, Inc. Securities Litigation*, 536 F.3d 952, 960 (8th Cir. 2008) ("Hutchinson has never restated its financials, and there are no people, documents or sources that say Hutchinson's numbers were false.").

ficulties, particularly in consequence of the dramatic increase in petroleum prices . . ., failure
to make such perceptions does not constitute fraud.").

In *Yu v. State Street Corp.*, 686 F. Supp. 2d 369 (S.D.N.Y. 2010), the court
dismissed 1933 Act claims arising out of valuations of mortgage backed securities, stating:

> "Of course, from our vantage point on the other side of the financial
> crisis, it is conventional wisdom that highly rated, investment grade securities
> were exposed to risks that the rating agencies did not perceive. . . . And not
> surprisingly, the Fund sustained most of its calamitous losses on securities with
> the highest investment ratings. . . . But the accuracy of offering documents
> must be assessed in light of information available at the time they were pub-
> lished. . . . A backward-looking assessment of the infirmities of mortgage-
> related securities, therefore, cannot help plaintiffs' case.
>
> \*       \*       \*
>
> "But the simple fact of a write-down does not stand for the proposition that
> values stated before the write-down were inaccurate, and the write-downs cer-
> tainly do not substitute for facts about the supposedly false valuations them-
> selves. . . . At best, they raise the 'mere possibility' that previous values were
> inaccurate, but that possibility -- standing, as it does, against the competing in-
> ference that the write-downs accurately tracked the declining value of the secu-
> rities during a precipitous market crash -- is not enough to withstand a motion
> to dismiss. *Id.* at 376-77, 380 (*vacated on other grounds by Yu v. State Street
> Corp.,* 2010 WL 2816259 (S.D.N.Y. Jul. 14, 2010.).

As quoted above, SCA's SEC filings specifically disclosed the facts and
amounts of SCA's exposures to credit default swaps and structured financial obligations. *See,
e.g., Blackmoss Investments Inc.* v. *ACA Capital Holdings, Inc.*, 2010 WL 148617 (S.D.N.Y.
Jan. 14, 2010) (dismissing 1933 Act claims against a competitor of SCA based on adequacy
of disclosure in the prospectus of the same types of information disclosed by SCA here); *Ley*
v. *Visteon Corp.*, 543 F.3d 801, 813 (6th Cir. 2008) (affirming dismissal of complaint where
disclosure of facts and risks, while different in form than advocated by plaintiff, was suffi-

cient); *Garber* v. *Legg Mason, Inc.*, 537 F. Supp. 2d 597, 612-13 (S.D.N.Y. 2008) (court dismissed 1933 Act claims on the basis that the prospectus adequately disclosed the risks in question).   SCA's filings further cautioned that various economic dislocations might have a material adverse effect on SCA's financial condition as respects these exposures, which is exactly what occurred.   SCA's disclosures and warnings were more than sufficient to defeat plaintiff's purported securities fraud claims.  *See, e.g., Halperin* v. *eBanker USA.com, Inc.*, 295 F.3d 352, 360 (2d Cir. 2002) (affirming dismissal of complaint where offering memoranda "not only bespeak caution, but shout it from the rooftops" with respect to the relevant risk); *Grossman* v. *Novell, Inc.*, 120 F.3d 1112, 1120 (10th Cir. 1997); *Harrison* v. *Rubenstein*, 2007 WL 582955, at * 12 (S.D.N.Y. Feb. 26, 2007).

While the FACC quotes various offering materials and other SEC filings incorporated by reference into the secondary offering materials, principally regarding SCA's underwriting and surveillance procedures (at paragraphs 154-61, 164, 167, 170, 179), there are no allegations about any facts which demonstrate the falsity of such quotes.  Paragraph 162 contains the principal allegations which purport to demonstrate falsity, but these allegations are insufficient because:

- they are conclusory;

- they mischaracterize the quoted material (*e.g.*, regarding SCA's internal risk models being "distinct" from and "superior" to those used by the ratings agencies); and

- they inject adverbs and adjectives (*e.g.*, "appropriately," "negligent" and "reliable") which (a) were not used in the original quotes, (b) would have been matters of opinion if they had been used, and (c) at most establish mismanagement, not violations of the securities law.

This Court previously has found that the majority of plaintiff's allegations of misstatements in the CAC, which are repeated in the FACC, are statements of opinion, puffery, business judgment or involve mismanagement, all of which are not actionable under Section 10(b) of the 1934 Act. *SCA*, 2010 WL 1372688 at *28. These types of statements are not actionable under Section 12(a) (2) of the 1933 Act for the same reasons. *See Craftmatic Securities Litigation* v. *Kraftsow*, 890 F.2d 628, 637-40 (3d Cir. 1989).

The two categories of misrepresentations that this Court previously found to be potentially viable in the CAC (relating to the FICO score criteria and modeling independent of the rating agencies) are not alleged to have been incorporated in the registration statement or prospectus. *See* FACC ¶¶ 174-75, 181-90 (describing SCA executives' comments on conference calls with analysts). These asserted misrepresentations, thus, are irrelevant to the 1933 Act claim.

Two statements in SCA's 2006 10-K filing, which was incorporated by reference in the SPO registration statement and prospectus, relate to SCA's modeling. The FACC excerpts them as follows:

> "Underwriters generally apply computer-based models to stress test cash flows in their assessment of the risk inherent in a particular transaction . . . . Stress models may also be developed internally by our underwriting department and reflect both empirical research as well as information gathered from third parties, such as rating agencies, investment banks or servicers." FACC ¶ 157.

> "We have created computerized models to track performance of certain other large direct business lines including CDOs and credit derivatives on corporate debt. These systems incorporate risk tracking tools such as credit spreads and ratings which are obtained from third parties and incorporated into computerized risk tracking systems." FACC ¶ 159.

Neither of these statements says anything about SCA's computerized models being independent, distinct from or superior to other models for measuring default risk.  Indeed, the statements emphasize that SCA relied on data from third parties, including rating agencies, to assess risk.

       C.       <u>There is No Alleged Loss Causation</u>

          In order to prevail on its purported 1933 Act claims, plaintiff must adequately allege loss causation.  *See Dura Pharms. Inc.* v. *Broudo*, 544 U.S. 336 (2005) (dismissing complaint for failure to plead loss causation);[9] *SCA*, 2010 WL 1372688, at *29; 60223 *Trust* v. *Goldman, Sachs & Co.*, 540 F. Supp. 2d 449, 461 (S.D.N.Y. 2007) (dismissing complaint on loss causation grounds where the "loss in value of the stock occurred gradually over the course of the entire class period" and "during the time when the alleged false and misleading comments of an optimistic nature were being issued").

          Plaintiff's attempt to narrow the event window by a few months to close the class period on December 20, 2007 fails to cure the fundamental defect that this Court identified in the CAC.  Dismissal on the pleadings for failure to allege loss causation remains appropriate here because: "[W]hen the plaintiff's loss coincides with a marketwide phenome-

---

[9]     *Dura* was a 1934 Act case, but courts in this district have held that, although absence of loss causation is an affirmative defense under Sections 11 and 12(a)(2) of the 1933 Act, when "'it is apparent from the face of the complaint that the plaintiff cannot recover her alleged losses, dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6) is proper.'"  *In re Merrill Lynch Investment Management Funds Securities Litigation*, 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006) (quoting *In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 289 F. Supp. 2d 429, 437 (S.D.N.Y. 2003)); *SCA*, 2010 WL 1372688 at *32.

non causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases . . . ." *In re Rhodia Securities Litigation*, 531 F. Supp. 2d 527, 548 (S.D.N.Y. 2007) (citations and internal quotation marks omitted); *Harrison* v. *Rubenstein*, 2007 WL 582955, at *14 (S.D.N.Y. Feb. 26, 2007).

Even if the two asserted misrepresentations that this Court found were potential violations of Section 10(b) of the 1934 Act had been made -- which they were not -- in the SPO offering materials, plaintiff has not established a loss traceable to those statements. The Securities Act Class Period ended on December 20, 2007, well before plaintiff claims that the "truth" about the FICO score criteria alleged misrepresentations was revealed to the market on March 17, 2008. FACC ¶ 176. Thus, there is no loss causation during the asserted class period tied to those statements.

Likewise, plaintiff has not alleged adequate loss causation for the independent modeling category of statements in the 2006 10-K. Plaintiff asserts that on July 24, 2007, during an earnings conference call, the "truth" was disclosed that "SCA did not . . . apply cautious, conservative and strict propriety risk models . . . because it admitted that it did not have visibility into much of the highest-risk underlying collateral [the RMBS and ABS CDO portfolios]." FACC ¶ 226. This alleged revelation, however, does not contradict the above quoted statements in paragraphs 157 and 159 of the FACC regarding SCA's use of computerized models to assess risk.[10] *In re Rhodia*, 531 F. Supp. 2d at 545 ("[L]oss causation re-

---

[10]    Other asserted "revelations" similarly were consistent with the SPO offering materials. *See*,

Footnote continued on next page.

quirement is satisfied only if the public disclosure causing injury addressed the specific fact allegedly concealed.").

The "partial corrective disclosures" asserted in the FACC which were associated with the declines in SCA's stock price do not correspond to the alleged misrepresentations in the offering materials as respects the SPO. This disconnect is telling — the fact that the asserted "corrective disclosures" consisted primarily of losses on derivatives or writedowns or downgrades of securities demonstrates that plaintiff actually is complaining about the level of losses/reserves shown on SCA's prior financial statements. *See, e.g.*, FACC ¶¶ 227 (SCA mark to market loss of $22.2 million caused 15% drop in stock price from July 23-24, 2007), 241 (SCA mark to market loss of $145 million caused 17% drop in stock price from October 17-19, 2007), 245 (S&P downgrade of RMBS classes caused 9% drop in stock price from October 19-23, 2007), 246 (Merrill Lynch writedown of CDO and subprime mortgage assets caused 20% drop in stock price from October 23-24, 2007), 250-56 (Fitch downgrade of two insured ABS CDO tranches with Fitch and Moody's putting others on review caused 44% drop in stock price from November 13-21, 2007), 258 (rating agency downgrades of SCA caused 29% drop in stock price from December 12-20, 2007). This Court previously found that allegations of inadequate loss reserves are not actionable. *SCA*, 2010 WL 1372688, at *28.

---

Footnote continued from previous page.

> *e.g.*, FACC ¶¶ 228 (re: collateral underlying CDOs), 235 (re: insurance of mezzanine tranches), 237 (re: use of 10% stress test).

The asserted misrepresentations, thus, merely are pretexts for plaintiff's purported claims.  Simply put, plaintiff really is claiming that SCA should have been prescient in foreseeing and recognizing its losses arising out of the meltdown of the market for mortgage backed securities.  As this Court noted in its prior opinion:

> "Plaintiffs have not with this Complaint effectively shown that it was the incremental revelation of Defendants' fraudulent misrepresentations, and not the actions of third parties or other circumstances of the market, that caused the decline in SCA's share price over the Class Period."  *SCA*, 2010 WL 1372688, at *32.

## II.   CONTROL PERSON ALLEGATIONS

To state a claim against an asserted control person under either Section 15 of the 1933 Act or Section 20(a) of the 1934 Act, Plaintiffs must allege, *inter alia*, a primary violation *and* that the control person exercised "actual control" over the wrongdoing and had "culpable participation" in the wrongdoing.  *Lanza* v. *Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973); *Rombach* v. *Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004); *Medis Investor Group* v. *Medis Technologies, Ltd.*, 586 F. Supp. 2d 136, 142, 147-48 (S.D.N.Y. 2008); *Kalin* v. *Xanboo, Inc.*, 526 F. Supp. 2d 392, 406 n.5 (S.D.N.Y. 2007);  *Rich* v. *Maidstone Financial, Inc.*, 2002 WL 31867724, at *11-*12 (S.D.N.Y. Dec. 20, 2002).

As outlined above, there was no primary violation of the 1933 Act because plaintiff has not adequately alleged that any of the statements in the SPO offering materials was false or that any loss was caused by disclosure of the "truth" as respects any such statement.  Similarly, for the reasons set forth in SCA's Memorandum of Law in Support of its

- 17 -

Motion to Dismiss, there was no primary violation of the 1934 Act. Accordingly, the control person claims against XL Capital again must be dismissed. *SCA*, 2010 WL 1372688, at *32.

Even assuming for the sake of argument that plaintiff adequately alleged a primary violation of either the 1933 Act or 1934 Act, the control person claims must be dismissed for failure to allege XL Capital's culpable participation in the violation. The "culpable participation" requirement applies with equal force to Section 15 of the 1933 Act as to Section 20 of the 1934 Act.[11] *See, e.g., Public Employees' Retirement System* v. *Merrill Lynch & Co.*, 2010 WL 2175875, at *8 (S.D.N.Y. June 1, 2010) (plaintiffs must allege culpable participation to make out a Section 15 claim); *In re Livent, Inc. Noteholders Securities Litigation*, 151 F. Supp. 2d 371, 416, 441 (S.D.N.Y. 2001) (dismissing Sections 15 and 20(a) control person allegations for failure to plead culpable participation); *P. Stolz Family Partnership, L.P.* v. *Daum*, 166 F. Supp. 2d 871, 873 (S.D.N.Y. 2001) (dismissing Section 15 control person claim

---

[11]   As noted in this Court's earlier opinion, there is a split in the Southern District of New York as to whether "culpable participation" must be pled to state a claim under Section 15 of the 1933 Act. *SCA*, 2010 WL 1372688, at *32 n.6 (S.D.N.Y. 2010). The Second Circuit has not squarely ruled on this issue, but the indications from the Second Circuit are that culpable participation must be pled to state a claim under Section 15 of the 1933 Act. *See, e.g., Lanza* v. *Drexel & Co.*, 479 F.2d 1277, 1298-99 & n.65 (2d Cir. 1973) (under Section 15 of the 1933 Act, the "mere existence of control is not made a basis for liability unless that control is effectively exercised to bring about the action upon which liability is based," and the 1933 Act and 1934 Act "are to be construed *in pari materia*"); *SEC* v. *Management Dynamics, Inc.*, 515 F.2d 801, 812 (2d Cir. 1975) (Section 20(a) "was consciously modelled after § 15 of the 1933 Act"). The Second Circuit cited the relevant legislative history and expressly relied upon the fact that at the same time that Congress enacted § 20(a), which contains the limitation, "unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action," it amended § 15 to add a comparable proviso, *i.e.*, "unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist." *Id.*

- 18 -

for failure to allege "meaningful culpable conduct") (citation and internal quotation marks omitted); *Demaria* v. *Andersen*, 153 F. Supp. 2d 300, 314 (S.D.N.Y. 2001) (Section 15 claim requires allegation of "particularized facts as to the controlling person's culpable participation in the violation of the controlled person.").

The XL Defendants are mentioned, often just in passing, in only the following paragraphs of the FACC: ¶¶ 26-30, 34, 36, 91-92, 170, 257, 261, 295, 304-06, 308, 319, 342-43. None of the officers, directors or employees of XL Insurance is alleged to have participated in the drafting or otherwise in the disclosures or lack of disclosures which are alleged to have been false in the FACC.[12]

The only non-conclusory allegation in the FACC which suggests that XL Capital or any of its officers, directors or employees had anything to do with the disclosures or lack of disclosures which are alleged to have been false in the FACC is that certain of SCA's directors were appointed by XL Capital and also were directors of XL Capital (¶¶ 26-28, 304,

---

12   Prior to the SPO, the XL Defendants owned approximately 63% of SCA's stock, which was reduced in the SPO to approximately 46%. FACC ¶¶ 26-28. Solely for the purposes of this motion, the XL Defendants do not challenge that the FACC alleges that the XL Defendants had the power to direct or cause the direction of the management of the policies of SCA. That XL Defendants were shareholders in SCA, however, is insufficient to establish culpable participation. *Rich* v. *Maidstone Financial, Inc.*, 2002 WL 31867724, at *12 (S.D.N.Y. Dec. 20, 2002) (dismissing control person allegation against shareholder; "[i]t is clear that ownership alone is not enough to infer knowledge or recklessness"); *In re Livent, Inc. Securities Litigation*, 78 F. Supp. 2d 194, 221-22 (S.D.N.Y. 1999) (20(a) claim dismissed, finding control but no culpable participation); *In re Alstom SA Securities Litigation*, 406 F. Supp. 2d 433, 501 (S.D.N.Y. 2005) (same). Note that XL Capital Assurance Inc. and XL Financial Assurance Ltd., despite having "XL" in their names, were and are wholly-owned subsidiaries of SCA (FACC ¶ 4), and the XL Defendants had no direct ownership interest in either of these entities during the asserted class period.

342).  Allegations that XL Capital appointed, or shared common directors with, a minority of SCA's board are not sufficient.  *Aldridge* v. *A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002) (allegation that putative control person had ability to elect two-thirds of directors not suffi- cient in absence of indicia of exercise of control over the entity primarily liable); *Lapin* v. *Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221, 245-46 (S.D.N.Y. 2006) (dismissing 20(a) claims against Goldman Chairman and CEO Hank Paulson); *Harrison* v. *Rubenstein*, 2007 WL 582955, at *19 (S.D.N.Y. Feb. 26, 2007) ("[p]leading officer or director status alone is not enough" for control person liability); *Livent, supra*, 78 F. Supp. 2d at 221-22 (holding that plaintiffs had not "allege[d] particularized facts as to the Outside Directors' 'culpable partici- pation' in the fraud" as required by § 20(a), collecting cases).

The fact that XL Capital personnel signed certain SCA SEC filings in their ca- pacity as SCA board members does not establish culpable participation even as to the indi- viduals, let alone as respects XL Capital.  *Alstom, supra*, 406 F. Supp. 2d at 501 (dismissing 20(a) allegations against defendant who "signed several documents containing materially false or misleading statements" for failure to show intent or recklessness with particularity regarding purported fraud); *P. Stolz, supra*, 166 F. Supp. 2d at 873.

Plaintiff's conclusory allegations that XL Capital "exercised its influence to cause SCA to" commit the purported primary violations (FACC ¶ 305) and that XL Capital knew or recklessly disregarded the falsity of the statements (FACC ¶ 308) are not sufficient to establish culpable participation.  *Steinberg* v. *Ericsson LM Telephone Co.*, 2008 WL 5170640, at *13 (S.D.N.Y. Dec. 10, 2008) ("allegations that defendants had access to adverse undis- closed information because of their senior positions with the company are insufficient," and

- 20 -

collecting cases) (citation and internal quotation marks omitted); *Kalin* v. *Xanboo, Inc.*, 526 F.

Supp. 2d 392, 407 (S.D.N.Y. 2007) (allegations that defendant company had overlapping

principals with the primary violator were insufficient).[13]

## III.   **THIS COURT SHOULD DISMISS WITH PREJUDICE**

This Court clearly put plaintiff on notice of the deficiencies in the CAC

"On these inter- and intra-indsutry-wide phenomena, it is not likely that Plain-
tiffs will be able to establish loss causation. . . . Plaintiffs are on notice of the
difficulties they face establishing proximate loss based on specific misrepre-
sentations of individuals in this company, which is one of hundreds dealt a
deadly blow by the quicksand of RMBS and CDOs" *SCA*, 2010 WL 1372688,
at *33.

Having failed to surmount these difficulties, the FACC should be dismissed with prejudice.

*See Denny* v. *Barber, supra*, 576 F.2d at 471.


## **CONCLUSION**

For the reasons set forth above, the FACC should be dismissed as against the

XL Defendants with prejudice.


Dated: New York, New York
        September 9, 2010

Respectfully submitted,

---

[13]   That former XL officers became senior SCA officers is not probative of continued control, let
alone culpable participation.  That XL entities provided certain support services to SCA
(FACC ¶ 29) also is irrelevant to either control or culpable participation in  SCA's allegedly
deficient disclosure in the absence of specific allegations of wrongdoing.

DEFENDANTS XL INSURANCE
(BERMUDA) LTD and XL CAPITAL LTD

**Cahill Gordon & Reindel** LLP
    David G. Januszewski
    (djanuszewski@cahill.com)
    Thorn Rosenthal
    (trosenthal@cahill.com)
    Howard G. Sloane
    (psloane@cahill.com)
80 Pine Street
New York, New York  10005
(212) 701-3000
(212) 269-5420 (fax)

- 22 -